**EXHIBIT A**

WHEN RECORDED RETURN TO
BWAB Limited Liability Company
475 17th Street
Suite 1600
Denver, Colorado 80202-4026

95-004`~~`    | Rec Fee    28.00
            | AU2       2.00
  Recorded  | Check     28.00
Official Records |
  County of  |
Santa Barbara |
Kenneth A Pettit |
  Recorder  |
8:02am 25-Jan-95 |    PUBL    BF   8

FEB 0 3 1995    ASSIGNMENT OF OVERRIDING ROYALTY

THIS ASSIGNMENT made and entered into this _16_ day of December, 1994, between **WHITING PETROLEUM CORPORATION**, a Delaware corporation, whose address is 1700 Broadway, Suite 2300, Denver, Colorado 80290-2301 ("Whiting"), and **BWAB LIMITED LIABILITY COMPANY**, a Colorado limited liability company, whose address is 475 Seventeenth Street, Denver, Colorado 80202 ("BWAB"):

## RECITALS

A.    Whiting, as Buyer, has entered into a certain Asset Purchase and Sale Agreement with Union Pacific Resources Company ("UPRC"), as Seller, dated October 6, 1994, as supplemented by a letter agreement dated October 6, 1994, and amended by an Amendment to Asset Purchase and Sale Agreement dated November 4, 1994 (as supplemented and amended, the "UPRC Agreement"). In the UPRC Agreement, UPRC agreed to sell and Whiting agreed to buy certain producing, non-producing, and undeveloped oil and gas properties, including the Leases, Wells, and Units which are described on Exhibit A attached hereto and made a part hereof. The Leases, Wells, and Units described on Exhibit A are referred to herein as the "Subject Properties."

B.    The conveyances and assignments of interests from UPRC and Whiting contemplated by the UPRC Agreement are effective as between those parties as of 7:00 a.m. local time with respect to such interests on January 1, 1994 (the "Effective Date").

C.    Whiting and BWAB Incorporated entered into a certain Letter Agreement dated July 28, 1994, and amendments to Sections 2(iv), 8, and 2(iii) thereto (the "Letter Agreement"), in anticipation of the transactions contemplated by the UPRC Agreement. BWAB has succeeded to the interests of BWAB Incorporated under the Letter Agreement. The Letter Agreement gives BWAB certain alternative means of participation in the properties which are the subject of the UPRC Agreement. BWAB has elected to acquire a 3.5 percent overriding royalty interest, subject to certain third party costs, in the net revenue interests attributable to the Subject Properties as provided herein.

NOW, THEREFORE, for Ten Dollars and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Whiting and BWAB agree as follows:

012\07800.5



EXHIBIT

_A_

1.    Assignment of Interest.  Whiting does hereby grant, convey, assign, set over and deliver to BWAB an overriding royalty consisting of an undivided Three and One-Half Percent (3.5%) interest in Whiting's Net Revenue Interest from the Subject Properties, to be determined as set forth below.  As used herein, the term "Net Revenues" to the BWAB Interest shall mean the difference between (A) the gross revenues received by Whiting from the sale of its fractional or percentage share of Hydrocarbons from the Subject Properties, after the deduction of all lessors royalties, overriding royalties, and other burdens and payments out of gross production that burden Whiting's fractional or percentage share, and (B) the sum of Whiting's fractional or percentage share of third party (i) transportation expenses, (ii) treatment and processing expenses, (iii) compression expenses, and (iv) severance taxes, occupation taxes, and other like taxes based on the production of Hydrocarbons.  The deductions set forth in items 1(B)(i), (ii), (iii), and (iv) will not include expenses or tariffs charged by the Point Arguello Pipeline Company (PAPCO), the Point Arguello Natural Gas Line Company (PANGL), Gaviota Gas Plant Company (GGP) or by Whiting or its Affiliates.  As used herein the term "Hydrocarbons" shall mean crude oil, natural gas, casinghead gas, coalbed methane, condensate, helium, sulphur, $SO_2$, $CO_2$, natural gas liquids, and other gaseous and liquid hydrocarbons or any combination thereof.  The interest conveyed and assigned to BWAB in this paragraph 1 is referred to herein as the "BWAB Interest."

2.    Payment.  It is intended that Whiting will receive the full fractional or percentage share acquired by Whiting from UPRC of all net revenues payable by the operator(s) of the Subject Properties and by the purchaser(s) of production from the Subject Properties.  BWAB agrees to execute such division orders, transfer orders, and other agreements and instruments as may reasonably be required by any such operator or purchaser to effect payment of all such revenues to Whiting.

a.    Payment has been made to BWAB for the BWAB Interest with respect to the Subject Properties for the period from the Effective Date through August 31, 1994, concurrently with the execution hereof.  BWAB acknowledges receipt of such payment.

b.    On or before the 15th day of each calendar month commencing January 15, 1995, Whiting shall remit to BWAB, at the address set forth above, BWAB's Interest attributable to the Subject Properties as to revenues received by Whiting prior to the 25th day of the prior calendar month.  (The payment due January 15, 1995, shall cover revenues received by Whiting during the period September 1, 1994, through December 25, 1994.)

c.    Paragraph 2(b) above notwithstanding, BWAB shall have the right to require, where practicable, direct payments to BWAB by the operator(s) or purchaser(s) if (i) David A. Frawley is no longer the President of Whiting, or (ii) Whiting

is late in making payments to BWAB under Paragraph 2(b) for three consecutive months.

3. Inspection. BWAB and its authorized employees, agents and consultants shall have the right, at BWAB's cost and expense, during normal office hours and on reasonable notice, to inspect, audit and copy all records of Whiting relating to the Subject Properties and the determination of Net Revenues attributable thereto.

4. Preferential Right of Purchase. Whiting shall have a preferential right of purchase as to the BWAB Interest, or any portion thereof, which preferential right of purchase shall apply to all the transfers, assignments or conveyances by BWAB other than transfers, assignments or conveyances to a BWAB Affiliate. If at any time, BWAB shall receive a bona fide offer from a third party to purchase the BWAB Interest, or any part thereof, which offer BWAB desires to accept, BWAB shall promptly deliver a full and complete copy of such offer to Whiting. Whiting may, at any time, within five (5) business days following receipt of such offer, elect to purchase the BWAB Interest, or such portion thereof, on the same terms and conditions as set forth in such offer. If Whiting does not elect to purchase the BWAB Interest, or such portion thereof, within the specified period, BWAB shall be free for a period of sixty (60) days thereafter to accept the third-party offer. BWAB shall simultaneously provide Whiting with a copy of any offer made by BWAB to a third party (other than an Affiliate) to sell, transfer, assign, or convey the BWAB Interest, or any part thereof, and Whiting shall have the same preferential right of purchase as if such offer were an acceptable offer made to BWAB by such third party. If an acceptable third-party offer to BWAB, or an offer by BWAB, shall include property in addition to the BWAB Interest, or any portion thereof, the purchase price for the BWAB Interest, or such portion thereof, shall be that part of the purchase price set forth in such offer which the value of the BWAB Interest, or such portion thereof, shall bear to the value of all of the property subject to such offer. As used in this paragraph, the term "Affiliate" shall mean a corporation or other entity that controls, is controlled by, or is under common control with BWAB.

5. Powers Reserved to Whiting. Whiting reserves to itself both power and right, at its option, to pool or combine the Subject Properties, or any part thereof, with other properties, leases, wells, and units.

6. Special Warranty of Title. Whiting warrants title to the BWAB Interest herein conveyed as against all persons claiming by, through or under Whiting, but not otherwise.

7. Tax Partnership. Notwithstanding that the rights and liabilities of the parties hereunder shall be several and not joint or collective or that this assignment and all activities hereunder shall not constitute a partnership, the parties agree that this agreement results in a partnership for United States Federal Income Tax purposes. The

012\67800.5

3

parties agree not to elect to be, or have the arrangement evidenced hereby excluded from, the application of all or any part of Sub-chapter K of Chapter I of Sub-title A of the Internal Revenue Code of 1986, as amended, or similar provisions of any applicable United States state law. Whiting shall cause annual returns to be prepared with regard to the tax partnership and will provide BWAB with all returns and reports filed by it with the Internal Revenue Service in connection therewith. BWAB shall reimburse Whiting for all costs incurred by it in connection with the preparation and filing of such returns and reports.

   8.    Further Assurances. Whiting and BWAB agree to execute and deliver such other and additional instruments and documents as may reasonably be required to effectuate the understandings set forth herein.

   9.    Successors. This agreement shall be binding upon and inure to the benefit of the successors and assigns of the parties hereto.

   10.    Governing Law. This agreement shall be governed by and construed in accordance with the laws of the State of Colorado.

   IN WITNESS WHEREOF, the parties hereto have caused this Assignment to be executed on the date set forth above.

WHITING PETROLEUM CORPORATION,
A Delaware corporation

By _____
   John R. Hazlett, Vice President - Land


BWAB LIMITED LIABILITY COMPANY,
A Colorado limited liability company

By _____
   Randall C. Rouiler, Manager

STATE OF COLORADO )
                  : ss.
COUNTY OF Denver )

    The foregoing instrument was acknowledged before me this 16th day of December, 1994, by John R. Hazlett, the Vice President, of Whiting Petroleum Corporation, a Delaware corporation.

                        _____
                  NOTARY PUBLIC
                  Residing at:  GLORIA L VASQUEZ
                            1700 BROADWAY, SUITE 2300
                            DENVER, COLORADO 80290-2301

My Commission Expires:
  MARCH 02 1996

STATE OF COLORADO       )
                          : ss.
COUNTY OF DENVER    )

    The foregoing instrument was acknowledged before me this 16th day of December, 1994, by Randall C. Roulier, the Manager of BWAB Limited Liability Company, a Colorado limited liability company.

                  _____
                  NOTARY PUBLIC
                  Residing at:  Judith K. Daylon
                            1700 Broadway, Suite 2300
                            Denver, CO  80290
                            My Commission Expires October 31, 1998

My Commission Expires:
  10/31/98

012\67000. 5

                       5

EXHIBIT "A"
POINT ARGUELLO FIELD
Offshore California

Attached to and made a part of Assignment of Overriding Royalty between WHITING PETROLEUM CORPORATION, Assignor, and BWAB LIMITED LIABILITY COMPANY, Assignee, dated this 16th day of December, 1994.

I.

Well Name

OCS P-0452 - No Wells Committed
              to Rocky Point Unit

Lease

A. Oil and Gas Lease dated July 1, 1981 from Bureau of Land Management to Chevron U.S.A. Inc. and Phillips Petroleum Company, bearing Serial No. OCS-P 0452

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING DESCRIBED LAND:

Block 466, All that certain portion seaward of the three geographical mile line, OCS Official Protraction Diagram NI 10-6, Santa Maria.

Subject to the following:

a. Unit Operating Agreement dated February 1, 1985 between Chevron, operator and Phillips and Champlin as non-operators covering the Rocky Point Unit;

b. Unit Agreement dated February 1, 1985 between Chevron, operator and Phillips and Champlin as non-operators, covering the Rocky Point Unit;

c. Letter Agreement dated February 6, 1985 between Chevron, Champlin and Phillips amending the Unit Operating Agreement.

II.

Well Name

OCS P-0451 - Well C-7
OCS P-0451 - Well C-8
OCS P-0451 - Well B-7

Lease

A.   Oil and Gas Lease dated July 1, 1981 from Bureau of Land Management to Chevron U.S.A. Inc. and Phillips Petroleum Company bearing Serial No. OCS-P 0451

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING DESCRIBED LAND:

Block 465, All that portion seaward of the three geographical mile line, OCS Official Protraction Diagram NI 10-6, Santa Maria.

Subject to the following:

a.    Offset Development Well and Linewell Agreement dated September 12, 1988 between Chevron, Phillips and Union Pacific Corp.;

b.    Unit Operating Agreement dated February 1, 1985 between Chevron, operator and Phillips and Champlin, as non-operators, covering the Rocky Point Unit;

c.    Unit Agreement dated February 1, 1985 between Chevron, Phillips and Champlin covering the Rocky Point Unit;

d.    Letter Agreement dated February 8, 1985 between Chevron, Champlin and Phillips amending the Unit Operating Agreement of Rocky Point Unit.

III.

Well Name

OCS P-0316
Wells B-1, B-2, B-3, B-4, B-5, B-6,
B-8, B-9, B-10, B-11, B-12, B-13

Hermosa Platform

Lease

     A. Oil and Gas Lease dated September 1, 1979 from Bureau of Land Management to Chevron U.S.A. Inc., Phillips Petroleum Company, Champlin Petroleum Company and ICI Delaware Inc. bearing Serial No. OCS-P 0316

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING DESCRIBED LAND:

     All Block 55N-84W, OCS Leasing Map, Channel Island Area, CAL-Map No. 64.

Subject to the following:

a. Operating Agreement dated July 1, 1979 between Chevron, operator and Phillips and Champlin as non-operators, covering all of Block 55 N-84W and the Hermosa Platform;

**EXHIBIT B**

*Ph. A*

## ASSIGNMENT OF OVERRIDING ROYALTY INTEREST
### (The "ASSIGNMENT")

This Assignment is made and entered into this 1st day of December, 1999, between DELTA PETROLEUM CORPORATION, a Colorado corporation, whose address is 555 17th Street, Suite 3310, Denver, Colorado, 80202, hereinafter referred to as Assignor, and BWAB LIMITED LIABILITY COMPANY, a Colorado limited liability company, whose address is 475 17th Street, Suite 1390, Denver, Colorado, 80202, hereinafter referred to as Assignee.

NOW THEREFORE, IN CONSIDERATION of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, Assignor does, by these presents, assign, transfer and convey unto Assignee, an OVERRIDING ROYALTY INTEREST of three percent (3.0%) in and to the oil and gas leases and lands described on Exhibit "A" attached hereto and by this reference made a part hereof (the "Leases"), which shall burden all the oil, gas and other leased minerals produced, saved and sold from or allocated to the lands covered by said Leases, and any extensions or renewals thereof. Said Overriding Royalty Interest shall be subject to the following terms and conditions:

1.    The Overriding Royalty Interest shall be free and clear of all development, production and operating expenses, however, said interests shall bear and pay currently its portion of the costs of transportation, compression, dehydration, and similar costs, gross production, severance, ad valorem taxes and all other taxes assessed against the gross production subject to said Overriding Royalty Interest.

2.    It is agreed that nothing contained herein shall impose upon Assignor, or its successors or assigns, any duty or obligation to develop or operate the Leases or any wells located thereon, or maintain the Leases by payment of delay rentals, minimum royalties, shut-in royalty payments or any other similar payments necessary to keep the Leases in effect.

3.    Assignor shall have the exclusive right, as set forth in the Leases, to pool said Leases and the lands covered thereby, or any part thereof, with other lands and leases into voluntary units, or units established by any governmental agency having jurisdiction over said Leases and lands, and if said Leases are so pooled, the Overriding Royalty Interest shall burden only the production allocated to the Leases and lands by virtue of the allocation provisions of the pooling and/or unitization agreements governing the development of the unit or pooled area.

4.    The Overriding Royalty Interest conveyed herein shall burden only the interest of Assignor, and its successors and assigns, in the Leases and shall be reduced to the proportion that the leasehold interest of Assignor in said Leases bears to the total leasehold estate in the lands covered by the Leases. In addition, the Overriding Royalty Interest shall be subject to further proportionate reduction should the Leases cover less than the full, undivided oil, gas and mineral estate in the lands covered thereby.

-1-



**EXHIBIT**

*B*

5.    This Assignment is made with no representations or warranties of title either express or implied and shall be binding upon and inure to the benefit of Assignor and Assignee and their respective successors, representatives and assigns.

6.    In the event Assignor is required to assign in an arms length transaction some fractional undivided interest in the Leases in order to obtain access to Point Arguello Unit offshore drilling platform(s) for the drilling of wells on the Leases, the Overriding Royalty Interest shall be proportionately reduced; provided, however, that any oil and gas interest or other thing of value of any nature, whether similar or dissimilar, received by Delta in any such transaction shall be subject to this Overriding Royalty Interest.

7.    In the event any action of any governmental unit (whether federal or state and whether legislative, executive or judicial) precludes the orderly development of, and production of hydrocarbons and other minerals from, the Leases and Assignor receives compensation therefor, Assignee shall receive in respect of the Overriding Royalty Interest a proportionate part of such compensation which proportion shall be in the same ratio as the value of the Overriding Royalty Interest in the Leases reasonably expected had orderly development and production not been interrupted bears to the value of the expense interest in the Leases giving consideration to the expenses which would have been incurred by Assignor in deriving the value attributable to the expense interest had orderly development and production not been interrupted.

EXECUTED this___day of December, 1999, but effective for all purposes as of April 1, 1999 at 7:00 AM at the location of the Leases, hereinafter referred to as the EFFECTIVE DATE.

ASSIGNOR:

DELTA PETROLEUM CORPORATION

By: _____

Title: __President_____

Attest:
(Seal)
By: _____

Title: __Secretary_____

ASSIGNEE:

BWAB LIMITED LIABILITY
COMPANY

By: _____
      Steven A. Roitman
      Manager

-2-

## ACKNOWLEDGMENTS

State of Colorado        }
                                 }
County of Denver        }

     The foregoing instrument was acknowledged before me this 1st day of December, 1999 by Roger A. Parker to me known to be the President of DELTA PETROLEUM CORPORATION, a Colorado corporation, for the purposes and in the capacity stated therein as the free act and deed of said Corporation.

     My Commission Expires: ___5/18/01_____

                                           _Sheryl K. Shelton_____
                                           Notary Public: Sheryl K. Shelton_____
                                           Address: 9800 S. Rock Dove Lane_____
                                           Highlands Ranch, Colorado 80126_____

State of Colorado        }
                                 }
County of Denver        }

     The foregoing instrument was acknowledged before me this 1th day of December, 1999 by Steven A. Roitman, to me known to be the Manager of BWAB LIMITED LIABILITY COMPANY, a Colorado Limited Liability Company, for the purposes and in the capacity stated therein as the free act and deed of said Limited Liability Company.

     My Commission Expires: _____

                                             _William G. Mills II_____
                                           Notary Public: William G. Mills II_____
                                           7946 East Mexico Avenue_____
                                           Denver, Colorado 80231_____

NOTARY PUBLIC
WILLIAM G. MILLS II
STATE OF COLORADO

My Commission Expires Dec. 10, 2001

-3-

EXHIBIT "A"
POINT ARGUELLO FIELD
Offshore California

Attached to and made a part of that certain PURCHASE AND SALE AGREEMENT between Whiting
Petroleum Corporation, Seller, and Delta Petroleum Corporation, Buyer, dated the ___ day of June, 1999.

I.

All of Seller's right, title and interest in and to the following described partnerships:

1. Partnership Agreement-Point Arguello Pipeline Company dated August 2, 1984; Partnership
Interest 5.8036%.

2. Partnership Agreement-Point Arguello Natural Gas Company dated September 1, 1984;
Partnership Interest 6.0652%.

3. Partnership Agreement for  Ownership of Facilities-Gaviota Gas Plant Company dated
October 1, 1984; Partnership Interest 5.7013%.

II.

LEASE:

All of Seller's right, title and interest in and to the leasehold estate created by the following described oil
and gas lease:

A. Oil and Gas Lease dated July 2, 1981 from Bureau of Land Management to
Chevron U.S.A. Inc. and Phillips Petroleum Company, bearing Serial No.
OCS-P 0452

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING
DESCRIBED LAND:

Block 466, All that certain portion seaward of the three geographical mile-line,
OCS Official Protraction Diagram NI 10-6, Santa Maria, (CA3-2056),

Subject to the following:

a. Unit Operating Agreement dated February 1, 1985 between Chevron, operator and Phillips
and Champlin as non-operators covering the Rocky Point Unit;

b. Unit Agreement dated February 1, 1985 between Chevron, operator and Phillips and
Champlin as non-operators, covering the Rocky Point Unit;

c. Letter Agreement dated February 5, 1985 between Chevron, Champlin and Phillips amending
the Unit Operating Agreement.

LEASE:

All of Seller's right, title and interest in and to the leasehold estate created by the following described oil
and gas lease:

    A.    Oil and Gas Lease dated May 19, 1981 from Bureau of Land Management
        To Chevron U.S.A. Inc. and Phillips Petroleum Company bearing Serial
        No. OCS-P 0453.

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING
DESCRIBED LAND:

        Block 467, all that certain portion seaward of the three geographical mile line,
        OCS Official Protraction Diagram NI 10-6, Santa Maria

Subject to the following:

a.    Lease Operating Agreement dated July 1, 1981;

b.    Unit Agreement dated February 15, 1985;

c.    Rocky Point Unit Operating Agreement dated February 1, 1985.

LEASE:

    A.    Oil and Gas Lease dated July 1, 1981 from Bureau of Land Management to
        Chevron U.S.A. Inc. and Phillips Petroleum Company bearing Serial No.
        OCS-P 0451.

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING
DESCRIBED LAND:

        The E/2 of Block 465, All that portion seaward of the three geographical mile line;
        OCS Official Protraction Diagram NI 10-6 Santa Maria (CA 3-1055).

Subject to the following:

a.    Offset Development Well and Linewell Agreement dated September 12, 1988 between Chevron,
    Phillips and Union Pacific Corp.;

b.    Unit Operating Agreement dated February 1, 1985 between Chevron, operator and Phillips and
    Champlin, as non-operators, covering the Rocky Point Unit;

c.    Unit Agreement dated February 1, 1985 between Chevron, Phillips and Champlin covering
    the Rocky Point Unit;

d.    Letter Agreement dated February 1, 1985 between Chevron, Champlin and Phillips amending
    the Unit Operating Agreement of Rocky Point Unit.

III.

| PROPERTY NAME | Working Interest | Net Revenue Interest |
|---|---|---|
| Point Arguello Unit | .06065210 | .04842500 |

All of the Seller's right title and interest in and to the leasehold estate created by the following described oil
and gas leases:

    A.    Oil and Gas Lease dated July 1, 1981 from Bureau of Land Management
        To Chevron U.S.A. Inc. and Phillips Petroleum Company bearing

Serial No. OCS-P 0451.

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING
DESCRIBED LAND:

> The W/2 of Block 465, All that portion seaward of the three geographical mile line,
> OCS Official Protraction Diagram NI 10-6 Santa Maria (CA 3-1055).

B.    Oil and Gas Lease dated September 1, 1979 from Bureau of Land Management to
Chevron U.S.A. Inc., Phillips Petroleum Company, Champlin Petroleum Company and
ICI Delaware Inc. bearing
Serial No. OCS-P 0316.

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING
DESCRIBED LAND:

> All of Block 55N-84W, OCS Leasing Map, Channel Island Area, CAL-
> Map No. 64 (CA 300316).

WELLS:

> A-1, A-2, A-3, A-4, A-5, A-6, A-7, A-8, A-9, A-10, A-11, A-12, A-13, A-14,
> A-15, A-16, A-16WB01, A-17, A-18, A-18WB01, A-19, B-1, B-1WB01, B-2,
> B-2WB01, B-3, B-6, B-8, B-9, B-9WB01, B-10, B-11, B-12, B-13, B-14, B-15,
> B-16, B-17, B-18, C-1, C-2, C-3, C-4, C-5, C-7, C-8, C-9, C-10, and C-11.

Subject to the following:

a.    Offset Development Well and Linewell Agreement dated September 12, 1988
between Chevron, Phillips and Union Pacific Corp.;

b.    Unit Operating Agreement dated February 1, 1985 between Chevron, operator
and Phillips and Champlin, as non-operators, covering the Rocky Point Unit;

c.    Unit Agreement dated February 1, 1985 between Chevron, Phillips and Champlin
covering the Rocky Point Unit;

d.    Letter Agreement dated February 6, 1985 between Chevron, Champlin and
Phillips amending the Unit Operating Agreement of Rocky Point Unit;

e.    Operating Agreement dated July 1, 1979 between Chevron, operator and Phillips and Champlin as
non-operators, covering all of Block 55N-84W and the Hermosa
Platform;

f.    Unit Agreement for Outer Continental Shelf Exploration, development and
Production Operations on the Point Arguello Unit dated effective October 1, 1996
between Chevron U.S.A., operator and Phillips Petroleum, Whiting Petroleum,
Texaco Exploration and Production, Sun Operating Limited Partnership,
Pennzoil Exploration and Production, Koch Industries, and Oxbow Energy
parts of Blocks 55N, 84W and 55N, 85W, Channel Islands Area and Parts of
Blocks 464 and 465, Santa Maria Basin Area, Offshore California.

**EXHIBIT C**

## ASSIGNMENT OF OVERRIDING ROYALTY INTEREST
### (The "ASSIGNMENT")

This Assignment is made and entered into this 1st day of December, 1999, between DELTA PETROLEUM CORPORATION, a Colorado corporation, whose address is 555 17th Street, Suite 3310, Denver, Colorado, 80202, hereinafter referred to as Assignor, and ALERON H. LARSON, JR., an individual, whose address is 25598 Foothills Drive North, Golden, Colorado 80401, hereinafter referred to as Assignee.

NOW THEREFORE, IN CONSIDERATION of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, Assignor does, by these presents, assign, transfer and convey unto Assignee, an OVERRIDING ROYALTY INTEREST of one percent (1.0%) in and to the oil and gas leases and lands described on Exhibit "A" attached hereto and by this reference made a part hereof (the "Leases"), which shall burden all the oil, gas and other leased minerals produced, saved and sold from or allocated to the lands covered by said Leases, and any extensions or renewals thereof. Said Overriding Royalty Interest shall be subject to the following terms and conditions:

1.    The Overriding Royalty Interest shall be free and clear of all development, production and operating expenses, however, said interests shall bear and pay currently its portion of the costs of transportation, compression, dehydration, and similar costs, gross production, severance, ad valorem taxes and all other taxes assessed against the gross production subject to said Overriding Royalty Interest.

2.    It is agreed that nothing contained herein shall impose upon Assignor, or its successors or assigns, any duty or obligation to develop or operate the Leases or any wells located thereon, or maintain the Leases by payment of delay rentals, minimum royalties, shut-in royalty payments or any other similar payments necessary to keep the Leases in effect.

3.    Assignor shall have the exclusive right, as set forth in the Leases, to pool said Leases and the lands covered thereby, or any part thereof, with other lands and leases into voluntary units, or units established by any governmental agency having jurisdiction over said Leases and lands, and if said Leases are so pooled, the Overriding Royalty Interest shall burden only the production allocated to the Leases and lands by virtue of the allocation provisions of the pooling and/or unitization agreements governing the development of the unit or pooled area.

4.    The Overriding Royalty Interest conveyed herein shall burden only the interest of Assignor, and its successors and assigns, in the Leases and shall be reduced to the proportion that the leasehold interest of Assignor in said Leases bears to the total leasehold estate in the lands covered by the Leases. In addition, the Overriding Royalty Interest shall be subject to further proportionate reduction should the Leases cover less than the full, undivided oil, gas and mineral estate in the lands covered thereby.

-1-



5.    This Assignment is made with no representations or warranties of title either express or implied and shall be binding upon and inure to the benefit of Assignor and Assignee and their respective successors, representatives and assigns.

6.    In the event Assignor is required to assign in an arms length transaction some fractional undivided interest in the Leases in order to obtain access to Point Arguello Unit offshore drilling platform(s) for the drilling of wells on the Leases, the Overriding Royalty Interest shall be proportionately reduced; provided, however, that any oil and gas interest or other thing of value of any nature, whether similar or dissimilar, received by Delta in any such transaction shall be subject to this Overriding Royalty Interest.

7.    In the event any action of any governmental unit (whether federal or state and whether legislative, executive or judicial) precludes the orderly development of, and production of hydrocarbons and other minerals from, the Leases and Assignor receives compensation therefor, Assignee shall receive in respect of the Overriding Royalty Interest a proportionate part of such compensation which proportion shall be in the same ratio as the value of the Overriding Royalty Interest in the Leases reasonably expected had orderly development and production not been interrupted bears to the value of the expense interest in the Leases giving consideration to the expenses which would have been incurred by Assignor in deriving the value attributable to the expense interest had orderly development and production not been interrupted.

EXECUTED this 1ˢᵗ day of December, 1999, but effective for all purposes as of August 1, 1999 at 7:00 AM at the location of the Leases, hereinafter referred to as the EFFECTIVE DATE.

ASSIGNOR:

DELTA PETROLEUM CORPORATION                    Attest:
                                                (Seal)

By: _____                    By: _____

Title:  President _____              Title: Assistant Secretary

ASSIGNEE:

By: _____
      Aleron H. Larson, Jr.

-2-

## ACKNOWLEDGMENTS

State of Colorado        }
                         }
County of Denver         }

The foregoing instrument was acknowledged before me this 1st day of December, 1999 by Roger A. Parker, to me known to be the President of DELTA PETROLEUM CORPORATION, a Colorado corporation, for the purposes and in the capacity stated therein as the free act and deed of said Corporation.

My Commission Expires:    5/18/01

Cheryl K. Shelton
Notary Public: Sheryl K. Shelton
Address: 9800 S. Rock Dove Lane
Highlands Ranch, Colorado 80126


State of Colorado        }
                         }
County of Denver         }

The foregoing instrument was acknowledged before me this 1st day of December, 1999 by ALERON H. LARSON, JR., for the purposes and in the capacity stated herein as the free act and deed of said individual.

My Commission Expires:    5/18/01

Cheryl K. Shelton
Notary Public: Sheryl K. Shelton
Address: 9800 S. Rock Dove Lane
Highlands Ranch, Colorado 80126

EXHIBIT "A"
POINT ARGUELLO FIELD
Offshore California

Attached to and made a part of that certain PURCHASE AND SALE AGREEMENT between Whiting Petroleum Corporation, Seller, and Delta Petroleum Corporation; Buyer, dated the 18ᵗʰ day of June, 1999.

I.

      All of Seller's right, title and interest in and to the following described partnerships:

1.    Partnership Agreement-Point Arguello Pipeline Company dated August 2, 1984; Partnership Interest 5.8036%.

2.    Partnership Agreement-Point Arguello Natural Gas Company dated September 1, 1984; Partnership Interest 6.0652%.

3.    Partnership Agreement for Ownership of Facilities-Gaviota Gas Plant Company dated October 1, 1984; Partnership Interest 5.7013%.

II.

LEASE:

All of Seller's right, title and interest in and to the leasehold estate created by the following described oil and gas lease:

      A.    Oil and Gas Lease dated July 2, 1981 from Bureau of Land Management to Chevron U.S.A. Inc. and Phillips Petroleum Company, bearing Serial No. OCS-P 0452

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING DESCRIBED LAND:

      Block 466, All that certain portion seaward of the three geographical mile line, OCS Official Protraction Diagram NI 10-6, Santa Maria. (CA3-2056).

Subject to the following:

a.    Unit Operating Agreement dated February 1, 1985 between Chevron, operator and Phillips and Champlin as non-operators covering the Rocky Point Unit;

b.    Unit Agreement dated February 1, 1985 between Chevron, operator and Phillips and Champlin as non-operators, covering the Rocky Point Unit;

c.    Letter Agreement dated February 6, 1985 between Chevron, Champlin and Phillips amending the Unit Operating Agreement.

LEASE:

All of Seller's right, title and interest in and to the leasehold estate created by the following described oil and gas lease:

    A.    Oil and Gas Lease dated May 19, 1981 from Bureau of Land Management
          To Chevron U.S.A. Inc. and Phillips Petroleum Company bearing Serial
          No. OCS-P 0453.

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING
DESCRIBED LAND:

        Block 467, all that certain portion seaward of the three geographical mile line,
        OCS Official Protraction Diagram NI 10-6, Santa Maria

Subject to the following:

a.    Lease Operating Agreement dated July 1, 1981;

b.    Unit Agreement dated February 15, 1985;

c.    Rocky Point Unit Operating Agreement dated February 1, 1985.

LEASE:

    A.    Oil and Gas Lease dated July 1, 1981 from Bureau of Land Management to
          Chevron U.S.A. Inc. and Phillips Petroleum Company bearing Serial No.
          OCS-P 0451.

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING
DESCRIBED LAND:

        The E/2 of Block 465, All that portion seaward of the three geographical mile line,
        OCS Official Protraction Diagram NI 10-6 Santa Maria (CA 3-1055).

Subject to the following:

a.    Offset Development Well and Linewell Agreement dated September 12, 1988 between Chevron,
       Phillips and Union Pacific Corp.;

b.    Unit Operating Agreement dated February 1, 1985 between Chevron, operator and Phillips and
       Champlin, as non-operators, covering the Rocky Point Unit;

c.    Unit Agreement dated February 1, 1985 between Chevron, Phillips and Champlin covering
       the Rocky Point Unit;

d.    Letter Agreement dated February 1, 1985 between Chevron, Champlin and Phillips amending
       the Unit Operating Agreement of Rocky Point Unit.

III.

| PROPERTY NAME | Working Interest | Net Revenue Interest |
| --- | --- | --- |
| Point Arguello Unit | .06065210 | .04842500 |

All of the Seller's right title and interest in and to the leasehold estate created by the following described oil
and gas leases:

    A.    Oil and Gas Lease dated July 1, 1981 from Bureau of Land Management
          To Chevron U.S.A. Inc. and Phillips Petroleum Company bearing

Serial No. OCS-P 0451.

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING DESCRIBED LAND:

The W/2 of Block 465, All that portion seaward of the three geographical mile line, OCS Official Protraction Diagram NI 10-6 Santa Maria (CA 3-1055).

B.  Oil and Gas Lease dated September 1, 1979 from Bureau of Land Management to Chevron U.S.A. Inc., Phillips Petroleum Company, Champlin Petroleum Company and ICI Delaware Inc. bearing Serial No. OCS-P 0316.

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING DESCRIBED LAND:

All of Block 55N-84W, OCS Leasing Map, Channel Island Area, CAL-Map No. 64 (CA 300316).

WELLS:

A-1, A-2, A-3, A-4, A-5, A-6, A-7, A-8, A-9, A-10, A-11, A-12, A-13, A-14, A-15, A-16, A-16WB01, A-17, A-18, A-18WB01, A-19, B-1, B-1WB01, B-2, B-2WB01, B-3, B-6, B-8, B-9, B-9WB01, B-10, B-11, B-12, B-13, B-14, B-15, B-16, B-17, B-18, C-1, C-2, C-3, C-4, C-5, C-7, C-8, C-9, C-10, and C-11.

Subject to the following:

a.  Offset Development Well and Linewell Agreement dated September 12, 1988 between Chevron, Phillips and Union Pacific Corp.;

b.  Unit Operating Agreement dated February 1, 1985 between Chevron, operator and Phillips and Champlin, as non-operators, covering the Rocky Point Unit;

c.  Unit Agreement dated February 1, 1985 between Chevron, Phillips and Champlin covering the Rocky Point Unit;

d.  Letter Agreement dated February 6, 1985 between Chevron, Champlin and Phillips amending the Unit Operating Agreement of Rocky Point Unit;

e.  Operating Agreement dated July 1, 1979 between Chevron, operator and Phillips and Champlin as non-operators, covering all of Block 55N-84W and the Hermosa Platform;

f.  Unit Agreement for Outer Continental Shelf Exploration, development and Production Operations on the Point Arguello Unit dated effective October 1, 1996 between Chevron U.S.A., operator and Phillips Petroleum, Whiting Petroleum, Texaco Exploration and Production, Sun Operating Limited Partnership, Pennzoil Exploration and Production, Koch Industries, and Oxbow Energy parts of Blocks 55N, 84W and 55N, 85W, Channel Islands Area and Parts of Blocks 464 and 465, Santa Maria Basin Area, Offshore California.