# EXHIBIT C

SECURITIES AND EXCHANGE COMMISSION

Washington, D.C.  20549

FORM 8-K

Pursuant to Section 13 or 15(d) of
The Securities Exchange Act of 1934

DECEMBER 1, 1999

DELTA PETROLEUM CORPORATION
(Exact name of registrant as specified in its charter)

| Colorado | 0-16203 | 84-1060803 |
|---|---|---|
| (State of | Commission | (I.R.S. Employer |
| Incorporation) | File No. | Identification No.) |

Suite 3310
555 17th Street
Denver, Colorado                                    80202
(Address of principal executive offices)       (Zip Code)

Registrant's telephone number, including area code: (303) 293-9133

ITEM 2.    ACQUISITION OF ASSETS

On  December 1, 1999, the Company completed the acquisition
of  interests in the offshore California Point Arguello Unit, with its
three  producing platforms and related facilities, and in the adjacent
undeveloped  Rocky  Point  Unit  from  Whiting  Petroleum  Corporation
("Whiting")  pursuant  to a Purchase and Sale Agreement dated  June  9,
1999.  (See Exhibit 99.1 to Form 8-K dated June 9, 1999).   The Company
acquired  a  net  operating interest in the Point  Arguello  Unit  and
related  facilities which covers 100% of a 6.07% working  interest  as
described  in  the  Conveyance  and Assignment  from  Whiting  to  the
Company,  a  copy of which is incorporated herein  as  Exhibit  10.1.
Delta  also acquired an 11.11% interest in the adjacent OCS Block  451
(E/2)  and  100%  interest  in OCS Blocks 452  and  453  which  leases
comprise  the undeveloped Rocky Point Unit.  The Rocky Point  Unit  is
operated  by  Whiting  which also holds the interest  as  nominee  for
Delta.  Under the terms of the agreements between the parties, Whiting
has  retained all liability for abandonment costs associated with  the
Point Arguello Unit and related facilities.

The  purchase  price of $6,000,000, less net proceeds  from
revenues  after  the  April 1, 1999 effective date was  paid  in  three
installments on June 9, 1999  ($1,000,000), August 2, 1999 ($2,000,000),
and December 1, 1999 (approximately $2,480,000).  The Company borrowed
the funds to purchase the properties.  These financing arrangements
as well  as  other aspects of the acquisition
are described in Forms  8-K dated June 9, 1999, as amended,
and August 25, 1999 and in Item 5 herein.

ITEM 5.  OTHER EVENTS

        On  December 1, 1999, the Company borrowed $8,000,000  from
Kaiser-Francis Oil Company.  The loan agreement (without exhibits) and
promissory note, both dated December 1, 1999, are incorporated  herein
as Exhibits 10.2 and 10.3.  The loan agreement provides for a four and
one-half year loan  with  certain  "prepayment penalties" as described
therein  and permitted  Kaiser-Francis Oil Company to acquire for its
own account certain mid-continent oil and gas properties which Delta had
previously agreed to acquire.  The Company also issued warrants to
purchase 250,000 shares of its common stock for two years at $2.00 per
share to Kaiser-Francis Oil Company.  Proceeds from this loan were
used to discharge and/or reduce principal and accrued interest on
previous loans from others used to make the first and second
installment payments for the acquisition of the Whiting interests in
Point Arguello and Rocky Point and to discharge a previous loan used
to acquire properties from Whiting in New Mexico and Texas (see Form 8-
K dated November 1, 1999).

ITEM 7.   FINANCIAL STATEMENTS AND EXHIBITS.

        Proforma Financial information and any other exhibits
required will be filed by amendment to this Form 8-K within sixty (60)
days.

    10.1 Conveyance and Assignment from Whiting Petroleum Corporation
         dated December 1, 1999.
    10.2 Loan Agreement (without exhibits) between Kaiser-Francis Oil
         Company and Delta Petroleum Corporation dated December 1, 1999.
    10.3 Promissory Note dated December 1, 1999.

     Pursuant to the requirements of the Securities and Exchange  Act
of  1934,  the Registrant has duly caused this report to be signed  on
its behalf by the undersigned hereunto duly authorized.


                    DELTA PETROLEUM CORPORATION
                    (Registrant)

Date:  December 9, 1999      By:s/Aleron H. Larson, Jr.
                             Aleron H. Larson, Jr.
                             Chairman/C.E.O.


                    INDEX TO EXHIBITS

(1)  Underwriting Agreement.  Not applicable.

(2)  Plan of Acquisition, Reorganization, Arrangement, Liquidation  or
     Succession.  Not applicable.

(3)  (i)  Articles of Incorporation. Not applicable.
     (ii) Bylaws. Not applicable.

(4)  Instruments  Defining the Rights of Security  Holders,  including
     Indentures.  Not applicable.

(5)  Opinion: re: Legality.  Not applicable.

(6)  Opinion: Discount on Capital Shares.  Not applicable.

(7)  Opinion: re: Liquidation Preference. Not Applicable.

(8)  Opinion: re: Tax Matters.  Not Applicable.

(9)  Voting Trust Agreement.  Not Applicable.

(10) Material Contracts. Not Applicable.

     10.1 Conveyance and Assignment from Whiting Petroleum Corporation
          dated December 1, 1999.
     10.2 Loan Agreement (without exhibits) between Kaiser-Francis Oil
          Company and Delta
          Petroleum Corporation dated December 1, 1999.
     10.3 Promissory Note dated December 1, 1999.

(11) Statement re: Computation of Per Share Earnings.
      Not Applicable.

(12) Statement re: Computation of Ratios.  Not Applicable.

(13) Annual Report to Security Holders, etc. Not Applicable.

(14) Material Foreign Patents.  Not Applicable.

(15) Letter re: Unaudited Interim Financial Information.
     Not Applicable.

(16) Letter re: Change in Certifying Accountant.
     Not applicable.

(17) Letter re: Director Resignation.  Not applicable.

(18) Letter re: Change in Accounting Principles.  Not Applicable.

(19) Report Furnished to Security Holders.  Not Applicable.

(20) Other Documents or Statements to Security Holders.
     Not applicable.

(21) Subsidiaries of the Registrant.  Not Applicable.

(22) Published Report Regarding Matters Submitted to Vote of Security
     Holders.  Not Applicable.

(23) Consents of Experts and Counsel.  Not applicable.

(24) Power of Attorney. Not applicable.

(25) Statement of Eligibility of Trustee.  Not Applicable.

(26) Invitations for Competitive Bids.  Not Applicable.

(27) Financial Data Schedule.  Not Applicable.

(99) Additional Exhibits.

CONVEYANCE AND ASSIGNMENT

WHITING PETROLEUM CORPORATION, a Delaware corporation, and WHITING PROGRAMS, INC., a Delaware corporation (collectively, the "Assignor") whose address is 1700 Broadway, Suite 2300, Denver, Colorado 80290, for TEN DOLLARS ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, hereby grant, convey, transfer and assign to DELTA PETROLEUM CORPORATION, a Colorado corporation ("Assignee"), whose address is 3310 Qwest Tower, 555 Seventeenth Street, Denver, Colorado 80202, a net operating interest (as herein defined) in, to and under the following:

(a)  The oil, gas and mineral leases described on Exhibit "A" attached hereto (collectively, the "Leases"), including, without limitation working interests, overriding royalty interests, royalty interests and any other interests of a similar nature affecting the lands covered by the Leases (collectively, the "Lands".)

(b)  The wells described on Exhibit "A" or which are located on the Lands (collectively, the "Wells").

(c)  All unitization, communitization, pooling, agreements, working interest units created by operating agreements, partnership agreements and orders covering the Leases and Lands, or any portion thereof, and the units and pooled or communitized areas created thereby, including the Federal units created by the Unit Agreements described on Exhibit "A" (collectively, the "Units") and the four partnerships created by the Partnership Agreements described on Exhibit "A" i.e., PAPCO, PANGL, GGP and PATC (collectively, the "Partnerships").

(d)  The tangible personal property, tools, machinery, materials, pipelines, plants, gathering systems, equipment, fixtures and improvements, which are incident or attributable to the Leases, Lands, Wells or Units with the production, treatment, sale or disposal of hydrocarbons or water produced therefrom or attributable thereto, on the Effective Time (collectively, the "Equipment").

(e)  The licenses, permits, contracts, agreements and other instruments owned by Seller (other than bonds posted by Seller) which concern and relate to any of the Leases, Lands, Wells, Units and/or Equipment, INSOFAR AND ONLY INSOFAR as same concern or relate to the Leases, Lands, Wells, Units and/or Equipment, or the operation thereof; including, without limitation, oil, gas and condensate purchase and sale contracts; permits,; rights-of-way; easements; licenses; servitudes; estates; surface leases; farmin and farmout agreements; division orders and transfer orders; bottomhole agreements; dry hole agreements; area-of-mutual interest agreements; salt water disposal agreements; acreage contribution agreements; operating agreements; balancing agreements and unit agreements; pooling agreements; pooling orders; communitization agreements; processing, gathering, compression and transportation agreements; facilities or equipment leases relating thereto or used or held for use in connection with the ownership or operation thereof or with the production, treatment, sale or disposal of hydrocarbons; and all other contracts and agreements related to the Leases, Lands, Wells, Units and/or Equipment.

(f)  Originals or copies of all computer tapes and discs, files,

records, information or data relating to the Interests in the possession of Seller, including, without limitation, title records (including abstracts of title, title opinions, certificate of title and title curative documents), accounting records and files, contracts, correspondence, production records, electric logs, core data, pressure data, decline curves, graphical production curves, drilling reports, well completion reports, drill stem test charts and reports, engineering reports, regulatory reports, and all related materials, INSOFAR AND ONLY INSOFAR as the foregoing items constitute materials that may be lawfully conveyed to Buyer (i.e., the materials are not subject to a proprietary agreement precluding their transfer to Buyer), and, to the extent transferable, all other contract rights, intangible rights (excluding Seller's trademarks and service marks), inchoate rights, choses in action, rights under warranties made by prior owners, manufacturers, vendors or other third parties, and rights accruing under applicable statutes of limitation or prescription, attributable to the Interests.

     (g)  All payments, and all rights to receive payments, with respect to the ownership of the production of hydrocarbons from or the conduct of operations on the Interests accruing after the Effective Time.

All of the properties, rights, and interests described in paragraphs (a) through (g) above are referred to herein as the "Interests."

This Conveyance and Assignment shall be effective as of April 1, 1999, at 7:00 a.m., local time (referred to herein as the "Effective Time").

The net operating interest ("NOI") herein conveyed and assigned is defined as the monthly payable positive or negative cash flow resulting to the Interests from the following eight step calculation:

       (i)   oil and gas sales revenue;
       (ii)  less royalties and overriding royalties;
       (iii) less Unit lease operating expenses;
       (iv)  less severance, production or ad valorem taxes, if any;
       (v)   less capital expenditures;
       (vi)  less Unit fees to the Unit operator; and
       (vii) plus the positive or less the negative cash flow from
             the Partnerships.
     (viii) plus or minus any other miscellaneous
             costs or revenues that may be related to
             these interests or operations

After taking into account Assignor's retention of net abandonment costs (i.e. cost of abandonment less equipment salvage value) under Section 9.1 of that certain Purchase and Sale Agreement dated as of June 8, 1999, as amended by an Amendment to Purchase and Sale Agreement dated as of June 8, 1999, between Assignor and Assignee (as amended, the "Agreement"), and the maximum payment of $2,000,000 by Assignor to purchase the Preferred Stock to fund the Deficit as such terms are defined in Section 9.2 of such Agreement, the above eight step calculation may result in positive cash flow or negative cash flow.  In the event of positive cash flow, Assignor will pay the excess to Assignee; in the event of a negative cash flow, Assignee will pay the deficit to Assignor.

This Conveyance and Assignment is delivered pursuant to and subject to the Agreement.  The Agreement contains certain

covenants and obligations which survive the delivery of, and
shall not be deemed merged into, this Conveyance and Assignment
as and to the extent provided in the Agreement.


      Dated this 1st day of December, 1999, but effective as of
the Effective Time.

Attest:                          WHITING PETROLEUM CORPORATION

s/Patricia J. Miller             By:s/John R. Hazlett
Patricia J. Miller                  John R. Hazlett, Vice President
Corporate Secretary


Attest:                          WHITING PROGRAMS, INC.

s/Patricia J. Miller             By:s/John R. Hazlett
Patricia J. Miller                  John R. Hazlett, Vice President
Corporate Secretary


Attest:                          DELTA PETROLEUM CORPORATION

s/Aleron H. Larson, Jr.          By:s/Roger A. Parker
Aleron H. Larson, Jr.               Roger A. Parker, President


STATE OF COLORADO        )
     CITY AND            )    ss.
COUNTY OF DENVER         )


      The foregoing instrument was acknowledged before me this 1st
day of  December, 1999, by John R. Hazlett, Vice President of
Whiting Petroleum Corporation and Whiting Programs, Inc.,  both
Delaware corporations.

My Commission Expires: February 28, 2003


                              s/Jean E. Solot
                              Notary Public



STATE OF COLORADO        )
     CITY AND            ) ss.
COUNTY OF DENVER         )


      The foregoing instrument was acknowledged before me this 1st
day of December, 1999, by Roger A. Parker as the President of
Delta Petroleum Corporation, a Colorado corporation.


My Commission Expires: February 28, 2003


                              s/Jean E. Solot
                              Notary Public



                    EXHIBIT "A"
               POINT ARGUELLO FIELD
                Offshore California


Attached to and made a part of that certain CONVEYANCE AND
ASSIGNMENT between Whiting Petroleum Corporation, Assigor,

and Delta Petroleum Corporation, Buyer, effective April 1,
1999.

I.

All of Seller's right, title and interest in and to the
following described partnerships:

1.   Partnership Agreement-Point Arguello Pipeline Company
     dated August 2, 1984; Partnership Interest 5.8036%.

2.   Partnership Agreement-Point Arguello Natural Gas
     Company dated September 1, 1984; Partnership Interest
     6.0652%

3.   Partnership Agreement for Ownership of Facilities-
     Gaviota Gas Plant Company dated October 1, 1984; Partnership
     Interest 5.7013%

II.

| PROPERTY NAME | WORKING INTEREST | NET REVENUE INTEREST |
|---|---|---|
| Point Arguello Unit | .06065210 | .04842500 |

All of Seller's right title and interest in and to the
leasehold estate created by the following described oil and
gas leases:

   A.   Oil and Gas Lease dated July 1, 1981 from Bureau of
        Land Management to Chevron U.S.A. Inc. and Phillips
        Petroleum Company bearing Serial No. OCS-P 0451

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS
THE FOLLOWING DESCRIBED LAND:

        The W/2 of Block 465, All that portion seaward of
        the three geographical mile line, OCS Official
        Protraction Diagram N1 10-6 Santa Maria (CA 3-
        1055).

   B.   Oil and Gas Lease dated September 1, 1979 from Bureau
        of Land Management to Chevron U.S.A. Inc., Phillips
        Petroleum Company, Champlin Petroleum Company and ICI
        Delaware Inc. bearing Serial No. OCS-P 0316.

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS
THE FOLLOWING DESCRIBED LAND:

        All of Block 55N-84W, OCS Leasing Map, Channel
        Island Area, CAL-Map No. 64 (CA 300316).

WELLS:

        A-1, A-2, A-3, A-4, A-5, A-6, A-7, A-8, A-9, A-10, A-
        11, A-12, A-13, A-14, A-15, A-16, A-16WB01, A-17, A-18,
        A-18WB01, A-19, B-1, (B-1WB-1, B-2, B-2WB01, B-3, B-6,
        B-8, B-9, B-9WB01, B-10, B-11, B-12, B-13, B-14, B-15,
        B-16, B-17, B-18, C-1, C-2, C-3, C-4, C-5, C-7, C-8, C-
        9, C-10 and C-11.

Subject to the following:

a.   Offset Development and Well and Linewell Agreement

dated September 12, 1988 between Chevron, Phillips and Union
Pacific Corp.;

b.   Unit Agreement for Outer Continental Shelf Exploration,
     Development and Production Operations on the Point Arguello
     Unit dated effective October 1, 1996 between Chevron U.S.A.,
     operator and Phillips Petroleum, Whiting Petroleum, Texaco
     Exploration and Production, Sun Operating Limit Partnership,
     Pennzoil Exploration and Production, Koch Industries, and
     Oxbow Energy parts of Blocks 5rN-84W and 55N-85W, Channel
     Island Area and Parts of Blocks 464 and 465, Santa Maria
     Basin Area, Offshore, California.

c.   Unit Operating Agreement Point Arguello Unit, Pacific
     Offshore, California, dated effective October 1, 1996
     between Chevron U.S.A. Inc., Phillips Petroleum Company,
     Whiting Petroleum Corporation, Texaco Exploration and
     Production Inc., Sun Operating Limited Partnership, by Oryx
     Energy Company, its Managing General Partner, Pennnzoil
     Exploration & Production Company and Oxbow Energy, Inc.

LOAN AGREEMENT


KAISER-FRANCIS OIL COMPANY
(Lender)


and


DELTA PETROLEUM CORPORATION
(Borrower)



December 1, 1999



Loan Agreement

   This loan agreement ("Agreement") is made this _____ day
of November 1999 (the "Agreement Date") among the following
parties (the "Parties"):

      (i)  Kaiser-Francis Oil Company, a Delaware corporation ("Kaiser-
           Francis"); and,

      (ii) Delta Petroleum Corporation, a Colorado corporation
           ("Delta").

   In exchange for the mutual promises hereafter made and other
good and valuable consideration the receipt and adequacy of which
the Parties hereby acknowledge, and intending to be legally bound
hereby, Kaiser-Francis and Delta hereby agree as follows:

(1)  Background and Purpose of this Agreement.  The background
     and purpose of this Agreement is as follows:

   (a)  Delta is a party to the following agreements:

      (i)  Purchase and Sale Agreement dated June 8, 1999 between
           Whiting Petroleum Corporation ("Whiting") and Delta respecting
           certain oil and gas properties in the Point Arguello Unit and the
           Rocky Point Unit (the "Offshore Agreement"); and,

      (ii) Purchase and Sale Agreement dated July 1, 1999 between
           Whiting and Delta respecting certain oil and gas properties in
           the East Carlsbad Field, Eddy County, New Mexico and the Duncan
           Slough SW Field, Matagorda County, Texas (the "New Mexico
           Agreement").

   (b)  Delta and Kaiser-Francis have heretofore entered into a
        letter agreement dated November 5, 1999 respecting the Offshore
        Agreement and the New Mexico Agreement (the "Letter Agreement").

   (c)  The Purpose of this Agreement is to implement and supersede
        those provisions of the Letter Agreement respecting a loan from
        Kaiser-Francis to Delta (as set forth in the second, third, and
        fourth bullet denominated paragraphs of the Letter Agreement).

(2)  Kaiser-Francis Commitment To Lend Monies to Delta.  On the
     terms and conditions set forth in this Agreement, Kaiser-Francis
     shall loan monies (the "Loan") to Delta:

   (a)  Maximum Amount of Loan.  The maximum amount of principal of

the Loan shall be Eight Million United States Dollars
(US$8,000,000). The Loan shall be made contemporaneously with the
execution and delivery of the Note (as hereafter defined).

(b)  Loan Evidenced by Negotiable Promissory Note.  The Loan
     shall be evidenced by the execution and delivery
     contemporaneously herewith by Delta of a negotiable promissory
     note in the form and content of either Exhibit A-1 (Floating
     Rate) or Exhibit A-2 (Fixed Rate) in the discretion of Delta as
     determined at the time of the execution and delivery of the Note
     (the "Note").

(c)  Security for Repayment of the Note.  Delta shall
     contemporaneously with the execution and delivery of this
     Agreement execute and deliver to Kaiser-Francis an oil and gas
     mortgage in the form and content of Exhibits B-1 through B-3
     (collectively, the "Mortgage") and a security agreement in the
     form and content of Exhibit B-4 (the "Security Agreement").

(3)  Prepayment Compensation.  The Loan may be pre-paid as
provided in the Note. In the event of a prepayment of the Note by
Delta or a default in payment of the Note by Delta, Delta shall
compensate Kaiser-Francis as follows:

(a)  Prepayment On or Before September 1, 2000.  In the event,
     Delta prepays the Note on or before September 1, 2000 no
     prepayment compensation shall be paid by Delta.

(b)  Prepayment After September 1, 2000 and On or Before June 1,
     2001.  In the event Delta prepays the Note after September 1,
     2000 and on or before June 1, 2001, Delta shall assign to Kaiser-
     Francis an oil and gas overriding royalty interest ("ORRI") equal
     to two and one-half percent (2.5%) of the all of the oil and gas
     properties acquired by Delta pursuant to the Offshore Agreement
     (the "Offshore Properties") including those described in Exhibit
     A to the Offshore Agreement.

     (i)   The ORRI shall be assigned by the execution and delivery of
           an assignment of ORRI in the form and content of Exhibit C
           ("Assignment").

     (ii)  Delta shall execute and deliver the ORRI on June 1, 2001.

     (iii) The effective date of the ORRI shall be December 1,
           1999, notwithstanding the date it is executed and delivered.

(c)  Prepayment After June 1, 2001 and On or Before June 1, 2002.
     In the event Delta prepays the Note after June 1, 2001 and on or
     before June 1, 2002, Delta shall assign to Kaiser-Francis an ORRI
     equal to two and one-half percent (2.5%) of all of the Offshore
     Properties in addition to the ORRI assigned pursuant to the
     preceding subparagraph (the "Additional ORRI").

     (i)   The Additional ORRI shall be assigned by the execution and
           delivery of the Assignment.

     (ii)  Delta shall execute and deliver the Additional ORRI on June
           1, 2001.

     (iii) The effective date of the Additional ORRI shall be
           December 1, 1999, notwithstanding the date it is executed and
           delivered.

(d)  Prepayment After June 1, 2002 and On or Before June 1, 2003.
     In the event Delta prepays the Note after June 1, 2002 and on or

before June 1, 2003, Delta shall, in addition to the ORRI and the
Additional ORRI  assigned to Kaiser-Francis assigned to Kaiser-
Francis in accordance with subparagraphs (b) and (c) above,  pay
Kaiser-Francis Two Hundred Fifty-Thousand United States Dollars
($250,000).  Delta shall pay the $250,000 on June 1, 2003 in
funds immediately available in Tulsa, Oklahoma

(e)   Prepayment After June 1, 2003 and On or Before June 1, 2004.
In the event Delta prepays the Note after June 1, 2003 and on or
before June 1, 2004, Delta shall, in addition to the ORRI and the
Additional ORRI then previously assigned to Kaiser-Francis and
the $250,000 paid in accordance with the preceding subparagraph,
pay Kaiser-Francis an additional Two Hundred Fifty-Thousand
United States Dollars ($250,000).  Delta shall pay the additional
$250,000 on June 1, 2004 in funds immediately available in Tulsa,
Oklahoma

(f)   When Prepayment Is Deemed Made.  Prepayment of the Note
shall be deemed made only when Kaiser-Francis receives
full payment of all principal and interest due on the
Note in United States Dollars immediately available in
Tulsa, Oklahoma and the prepayment compensation set
forth in the preceding subparagraphs (b) through (e).
In the event Delta defaults in payment of the Note,
Delta shall be deemed to have prepaid the Note after
June 1, 2004 for the purposes of, but solely for the
purposes of, determining the compensation to be paid to
Kaiser-Francis by Delta in accordance with
subparagraphs (b), (c), (d), and (e) above.

(g)   Offshore Properties and New Mexico Properties Defined.
Offshore Properties means all those oil and gas
properties acquired by Delta pursuant to the Offshore
Agreement at any time without reduction for any
interests therein which Delta may, after receipt,
assign.  New Mexico Properties means all those oil and
gas properties acquired by Delta pursuant to the New
Mexico Agreement at any time without reduction for any
interest therein which Delta may, after receipt assign.
Any Offshore Property or New Mexico Property assigned
by Delta shall remain subject to the lien of the
Mortgage.

(h)   Proportionate Reduction of ORRI and Additional ORRI.  In the
event Delta is required to assign in an arms length transaction
some fractional undivided interest in the Offshore Properties in
order to obtain access to Point Arguello Unit offshore drilling
platform(s) for the drilling of wells on the Offshore Properties,
the ORRI and the Additional ORRI shall be proportionately
reduced; provided, however, (i) such reduction shall subject to
the prior written approval of Kaiser-Francis (which approval
shall not be unreasonably withheld, delayed or denied) and (ii)
any oil and gas interest or other thing of value of any nature,
whether similar or dissimilar,  received by Delta in any such
transaction shall be subject to the ORRI and the Additional ORRI.

(i)   Special Circumstances Respecting ORRI and Additional ORRI.
In the event any action of any governmental unit (whether federal
or state and whether legislative, executive or judicial)
precludes the orderly development of, and production of
hydrocarbons and other minerals from, the Offshore Properties and
Delta receives compensation therefor, Kaiser-Francis shall
receive in respect of the ORRI (and the Additional ORRI, if
applicable) a proportionate part of such compensation which
proportion shall be in the same ratio as the value of the ORRI

(and Additional ORRI, if applicable) in the Offshore Properties reasonably expected had orderly development and production not been interrupted bears to the value of the expense interest in the Offshore Properties giving consideration to the expenses which would have been incurred by Delta in deriving the value attributable to the expense interest had orderly development and production not been interrupted. Kaiser-Francis and Delta shall negotiate in good faith to determine the share of Kaiser-Francis in such compensation for a period twenty business days after one or both of Kaiser-Francis first requests such negotiations (the "negotiating period", as provided in paragraph 5(b)(i)). In the event the Parties do not reach agreement, the determination of the Kaiser-Francis share of such compensation shall be made in the same manner, mutatis mutandi, hereafter provided in paragraph 5(e).

(j)  Further Assurances.  If Delta has not received commercially marketable title to any of the Offshore Properties or New Mexico Properties, Delta shall from and after the Agreement Date use its best efforts to obtain commercially marketable title and, upon receipt of such title, shall execute and deliver such documents as Kaiser-Francis may reasonably require in order that the Mortgage shall constitute a first lien of record thereon, subject only to such encumbrances as are described in the Mortgage.

(k)  Release of Mortgage.  Subject to approval by Kaiser-Francis (which shall be unreasonably withheld, delayed or denied), Kaiser-Francis shall release the lien of the Mortgage to the extent of any fractional undivided interest in any Offshore Property Delta is required to assign in an arms length transaction in order to obtain access to Point Arguella Unit offshore drilling platform(s) for the drilling of wells on the Offshore Properties.

(4)  Option to Acquire Delta Common Stock and Registration Rights Agreement.  Contemporaneously herewith, Delta and Kaiser-Francis shall execute and deliver (i) an option agreement granting Kaiser-Francis the right to acquire 250,000 shares of common stock of Delta (the "Stock Option") and (ii) a registration rights agreement respecting any shares of common stock of Delta acquired pursuant to the Stock Option ("Registration Rights Agreement"). The Stock Option shall be in the form and content of Exhibit D.

(5)  Right of First Refusal.  Delta hereby grants Kaiser-Francis the right to acquire any part and all parts of the Offshore Properties and/or New Mexico Properties which Delta desires to transfer to any person or entity other than Delta (including any affiliate of Delta, as hereafter defined) on the following terms and conditions:

(a)  Delta shall by notice (the "disposition notice") advise Kaiser-Francis of its intention to make any disposition of the Offshore Properties and/or New Mexico Properties or any part thereof. Delta shall include in the disposition notice:

(i)  a description of the interest proposed to be disposed;

(ii)  the identity of party to whom the disposition is proposed;

(iii)  a description of the consideration to be received by Delta for the proposed disposition;

(iv)  a description of the material terms of the proposed disposition including, without limitation, and time requirements for performance of any obligation which may be a term of the proposed disposition;

(v)   the proposed effective date and closing date of the proposed disposition; and,

(vi)  any other material information which Delta believes, in its discretion reasonably exercised, would be material to a decision whether a party would acquire the interest proposed to be disposed.

(b)  In the event the consideration or any part thereof described in the disposition notice is of such a nature that Kaiser-Francis is unable to match such consideration in kind and the disposition notice does not include Delta's good faith estimate of the value in cash of such consideration, Kaiser-Francis may within five business days of receipt of the disposition notice request Delta provide, and Delta shall provide within five business days of the Kaiser-Francis request, an estimate of the value in cash of such consideration in Delta's discretion exercised in good faith.

(i)  In the event of a disagreement, the Parties shall, during the three (3) business days next following the receipt by Kaiser-Francis of Delta's good faith estimate of the cash value of such consideration (the "negotiating period"), negotiate in good faith to resolve the disagreement.

(ii) If, after such good faith negotiations, the Parties fail to agree, the value in cash of such consideration shall be determined as hereafter provided in this Agreement (the "arbitration determination").

(c)  Within the later of (i) thirty (30) calendar days from the receipt of the disposition notice or (ii) the receipt by both Delta and Kaiser-Francis of the arbitration determination, Kaiser-Francis may give notice (the "notice of acceptance") to Delta that Kaiser-Francis elects to acquire the interest which Delta proposes to dispose for the applicable price (which shall include the value in cash of any in kind consideration which Kaiser-Francis cannot match). The notice of acceptance shall create between Delta and Kaiser-Francis a binding contractual obligation upon Delta to dispose and Kaiser-Francis to acquire the interests proposed to be disposed in the notice for the applicable price and on the other terms and conditions set forth in the disposition notice.

(d)  In the event that Kaiser-Francis does not timely give the notice of acceptance:

(i)  Kaiser-Francis shall be deemed to have rejected the disposition notice; and,

(ii) the proposed disposition shall be subject to the prior written approval of Kaiser-Francis which Kaiser-Francis may withhold in the event, but only in the event, Kaiser-Francis determines in its discretion exercised in good faith that the disposition would be likely to have a material adverse effect of the value of the interest to be disposed as security for repayment of the Loan.

(A)  Without limiting the generality of the foregoing, in exercising its discretion, Kaiser-Francis may consider the financial ability of the proposed assignee to meet any obligations of the proposed assignee which may constitute part of the terms and conditions of the proposed disposition.

(B)  In the event Kaiser-Francis does not give Delta notice that Kaiser-Francis does not approve the proposed disposition

within the same period of time within which Kaiser-Francis
could give a notice of acceptance, Kaiser-Francis shall be
deemed to have approved the proposed disposition.

(iii)     In the event the proposed disposition is not
          consummated within ninety (90) days of the notice of
          disposition, any proposed disposition of the interests
          proposed to be disposed
          shall once again apply to any proposed disposition.

(e)   In the event Kaiser-Francis and Delta are unable to agree to
      the value in cash of any in kind consideration (as discussed in
      subparagraph (b) above),  Kaiser-Francis and Delta shall each
      forthwith (forthwith and in no event later than the business day
      next following the expiration of the negotiating period) engage
      an individual with experience in the industry in evaluating
      similar transactions, who shall select a third such individual,
      and the three individuals (the "arbitrators") shall each
      determine the value in cash of such consideration.

      (i)   The third arbitrator (that is, the arbitrator engaged) by
            the two arbitrators engaged by Delta and Kaiser-Francis) shall,
            upon his engagement administer the proceedings of the three
            arbitrators including giving notice to the Parties of the
            determination of the cash value of the in kind consideration.

      (ii)  Each of the arbitrators shall be engaged to make their
            determination within five (5) business days following the
            expiration of the negotiating period.

      (iii) The value in cash shall be the mean of the two values
            thus established which are nearest to each other.

      (iv)  Delta and Kaiser-Francis shall each pay one half of all
            costs of the arbitration determination, including the
            compensation to the three arbitrators.

      (v)   The times specified in this paragraph shall be suspended for
            a period of time equal to the period of time from the date the
            two individuals are designated until the three individuals
            give notice of the determination of the cash value to both
            of Kaiser-Francis and Delta.

(6)   Conditions Precedent to Obligation of Kaiser-Francis To Make
      the Loan.  Each of the following shall be conditions precedent to
      the obligation of Kaiser-Francis to make the Loan or any advance
      on the Loan:

(a)   Delta shall have executed and delivered the Note to Kaiser-
      Francis.

(b)   Delta shall have executed and delivered the Mortgage to
      Kaiser-Francis.

(c)   Delta shall have executed and delivered to Kaiser Francis
      all documents, in addition to the Note and Mortgage, which Kaiser-
      Francis may reasonably request to give full effect to the
      provisions of this Loan Agreement including, without limitation
      the Note and the Mortgage.

(d)   Kaiser-Francis shall have received evidence, sufficient in
      the opinion of counsel to Kaiser-Francis, that:

(i)   Delta has acquired commercially marketable title to the
      Offshore Properties and New Mexico Properties, free and clear of

all liens and encumbrances except (a) those identified on Exhibit A to the Offshore Agreement, (b) those identified on Exhibit A to the New Mexico Agreement, (c) the overriding royalty interest held by BWAB Limited Liability Company ("BWAB") pursuant to agreement dated April 1, 1999 with Delta provided such BWAB overriding royalty interest is the same in content as the ORRI and does not exceed three percent (3%) proportionately reduced, and (d) the overriding royalty interests held by Messrs. Parker & Larson provided such Parker & Larson overriding royalty interests shall be in the same content as the ORRI and do not in the aggregate exceed two percent (2%); and,

(ii)  The Mortgage constitutes a first and prior lien on the Offshore Properties and the New Mexico Properties, subject to only (a) those liens and encumbrances identified on Exhibit A to the Offshore Agreement, (b) Exhibit A to the New Mexico Agreement, and (c) the overriding royalty interest held by BWAB Limited Liability Company ("BWAB") pursuant to agreement dated April 1, 1999 with Delta provided such BWAB overriding royalty interest is the same in content as the ORRI and does not exceed three percent (3%) proportionately reduced, and (d) the overriding royalty interests held by Messrs. Parker & Larson provided such Parker & Larson overriding royalty interests shall be in the same content as the ORRI and do not in the aggregate exceed two percent (2%).

(e)  Kaiser-Francis shall have received evidence, sufficient in the opinion of counsel to Kaiser-Francis, that the execution, delivery, consummation, and performance of the Loan Agreement and all documents in connection therewith including the Note and the Mortgage has been authorized by Delta in accordance with all requirements of law, the Articles of Incorporation and By-laws of Delta, and all other agreements by which Delta is bound.

(f)  The representations and warranties set for the Paragraph (7) of this Agreement shall be true and correct.

(7)  Delta Representation and Warranties.  Delta represents and warrants to Kaiser-Francis that:

(a)  Delta is a duly organized, legally existing corporation in good standing under the laws of the State of Colorado and is duly qualified in all jurisdictions where it does business or owns or leases property except to the extent that failure to so qualify would not have a materially adverse affect thereon.

(b)  The execution and delivery of this Agreement, the Note, the Mortgage and all other agreements and instruments executed in connection herewith by Delta and its performance of any obligations hereunder and thereunder are:  (a) within its enumerated powers; (b) duly authorized; (c) not in contravention of any law or of the terms of any provision, indenture, agreement or undertaking to which Delta or its property is bound; (d) do not require any consent or approval (including governmental) which has not been given; (e) do not contravene any statute, rule or regulation or any contractual or governmental restriction; (f) not subject to prior approval by any state or federal agency or regulatory authority having jurisdiction; and (g) will not result in the imposition of liens, charges or encumbrances on any of Delta's properties or assets other than those contemplated under this Agreement.

(c)  This Agreement, the Note, the Mortgage, and all other documents executed and delivered by Delta to Kaiser-Francis are legal, valid and binding obligations of Delta  as represented in

such documents and are enforceable in accordance with their
terms, except as may be limited by bankruptcy, insolvency or
similar laws affecting creditors' rights generally.

(d)   Delta shall acquire contemporaneously with any advance being
made on the Loan, commercially marketable title to the Offshore
Properties and New Mexico Properties, free and clear of all liens
and encumbrances except those identified in subparagraph
(6)(d)(i);

(i)   The Mortgage will constitute, prior to any advance being
made on the Loan, a first and prior lien on the Offshore
Properties and the New Mexico Properties, subject to only those
liens and encumbrances identified on Exhibit A to the Offshore
Agreement and in Exhibit A to the New Mexico Agreement subject to
only (a) those liens and encumbrances identified on Exhibit A to
the Offshore Agreement, (b) Exhibit A to the New Mexico
Agreement, and (c) the overriding royalty interest held by BWAB
Limited Liability Company ("BWAB") pursuant to agreement dated
April 1, 1999 with Delta provided such BWAB overriding royalty
interest is the same in content as the ORRI and does not exceed
three percent (3%) proportionally reduced, and (d) the
overriding royalty interests held by Messrs. Parker & Larson
provided such Parker & Larson overriding royalty interests shall
be in the same content as the ORRI and do not in the aggregate
exceed two percent (2%).

(e)   Kaiser-Francis shall have received evidence satisfactory to
it that Delta is fully bonded and qualified to own federal
leases, both offshore and onshore.

(8)   Provisions Respecting Non-Consent Operations.   The following
provisions shall govern operations on the Offshore Properties:

(a)   In the event any operations are proposed by third parties on
any of the Offshore Properties (the "proposed operations"), Delta
shall forthwith give notice of such proposed operations to Kaiser-
Francis (the "proposed operations notice").

(b)   The proposed operations notice shall include all information
received by Delta from the third party with respect to the
proposed operations.

(c)   Delta shall use its best efforts to make a determination
whether Delta will participate in the proposed operations as soon
as practicable and in not event later than six (6) business days
preceding any date by which Delta is required to give notice of
any election to participate in such operations.

(d)   Delta shall give Kaiser-Francis notice of any determination
that Delta will not participate in proposed operations at least
six (6) business days preceding any date by which Delta is
required to give notice of any election to participate in such
operations to any party.

(e)   In the event Delta determines not to participate in any
proposed operation, Kaiser-Francis shall have the right to
participate for its own account in the proposed operation on the
following terms and conditions:

(i)   Delta shall upon request from Kaiser-Francis forthwith
deliver or make available to Kaiser-Francis at Kaiser-Francis
cost all information reasonably pertinent to a determination
whether to participate in the proposed operations which is in the
possession or control of Delta.

(ii) Kaiser-Francis may, but shall not be obligated to, give Delta notice of its election to participate in the proposed operation (the "election to participate").

(iii) The Kaiser-Francis election to participate shall constitute a binding contractual obligation between Delta and Kaiser-Francis, the terms and conditions of which shall be those set forth in this paragraph.

(iv) Delta shall forthwith assign to Kaiser-Francis all of Delta's right, title and interest in the interest subject to the proposed operations (the "subject interest") by an assignment with special warranty of title against all claims made by through, and under Delta.  Delta shall execute and deliver such further instruments, and take such further actions, as Kaiser-Francis may reasonably require to evidence, give effect and implement the assignment and enable Kaiser-Francis to participate in the proposed operations.

(v) In the event, the subject interest cannot be assigned by virtue of any provision of any agreement or instrument which is a burden on the subject interest, Delta shall participate in the proposed operation as nominee for the sole account of Kaiser-Francis.

(vi) Kaiser-Francis shall, and does hereby agree to, defend, indemnify, and hold harmless Delta against all loss, cost, and expense arising out of the proposed operations, including reimbursement, upon reasonable substantiation thereof, of the reasonable costs of Delta (excluding general and administrative expense) of complying with the obligations of Delta to (i) participate in the proposed operation as nominee for the account of Kaiser-Francis and (ii) evidencing, giving effect to and implementing the assignment as contemplated by the second sentence of clause (iv) above.

(9) Miscellaneous Provisions.  The following miscellaneous provisions shall apply to this Agreement:

(a) All notices or advices required or permitted to be given by or pursuant to this Agreement, shall be given in writing.  All such notices and advices shall be (i) delivered personally, (ii) delivered by facsimile or delivered by U.S. Registered or Certified Mail, Return Receipt Requested mail, or (iii) delivered for overnight delivery by a nationally recognized overnight courier service.  Such notices and advices shall be deemed to have been given (i) the first business day following the date of delivery if delivered personally or by facsimile, (ii) on the third business day following the date of mailing if mailed by U.S. Registered or Certified Mail, Return Receipt Requested, or (iii) on the date of receipt if delivered for overnight delivery by a nationally recognized overnight courier service.  All such notices and advices and all other communications related to this Agreement shall be given as follows:

        If to Delta:   Mr. Aleron H. Larson, Jr.
                        Delta Petroleum Corporation
                        555 17th Street, Suite 3310
                        Denver CO 80202
                        303-293-9133- Telephone
                        303-298-8251 - Facsimile

        If to Kaiser-Francis:   Mr. George B. Kaiser
                        Kaiser-Francis Oil Company
                        P.O. Box 21468

```
                              Tulsa, OK 74121-1468
                              918-491-4501 - Telephone
                              918-491-4694- Facsimile

With Copy to:                 Frederic Dorwart
                              Old City Hall
                              124 East Fourth Street
                              Tulsa, OK 74103-5010
                              (918) 583-9945 - Telephone
                              (918) 583-8251 - Facsimile
```

or to such other address as the party may have
furnished to the other parties in accordance
herewith, except that notice of change of
addresses shall be effective only upon receipt.

(b)   This Agreement is made and executed in Tulsa County,
      Oklahoma.

(c)   This Agreement shall be subject to, and interpreted by and
      in accordance with, the laws (excluding conflict of law
      provisions) of the State of Oklahoma.

(d)   This Agreement is the entire Agreement of the parties
      respecting the subject matter hereof except those written
      agreements described herein and executed and delivered as
      provided herein.  There are no other agreements, representations
      or warranties, whether oral or written, respecting the subject
      matter hereof except those written agreements described herein
      and executed and delivered as provided herein.

(e)   No course of prior dealings involving any of the parties
      hereto and no usage of trade shall be relevant or advisable to
      interpret, supplement, explain or vary any of the terms of this
      Agreement, except as expressly provided herein.

(f)   This Agreement, and all the provisions of this Agreement,
      shall be deemed drafted by all of the parties hereto.

(g)   This Agreement shall not be interpreted strictly for or
      against any party, but solely in accordance with the fair meaning
      of the provisions hereof to effectuate the purposes and intent of
      this Agreement.

(h)   Each party hereto has entered into this Agreement based
      solely upon the agreements, representations and warranties
      expressly set forth herein and upon his own knowledge and
      investigation.  Neither party has relied upon any representation
      or warranty of any other party hereto except any such
      representations or warranties as are expressly set forth herein.

(i)   Each of the persons signing below on behalf of a party
      hereto represents and warrants that he or she has full requisite
      power and authority to execute and deliver this Agreement on
      behalf of the parties for whom he or she is signing and to bind
      such party to the terms and conditions of this Agreement.

(j)   This Agreement may be executed in counterparts, each of
      which shall be deemed an original.  This Agreement shall become
      effective only when all of the parties hereto shall have executed
      the original or counterpart hereof.  This agreement may be
      executed and delivered by a facsimile transmission of a
      counterpart signature page hereof.

(k)   In any action brought by a party hereto to enforce the

obligations of any other party hereto, the prevailing party shall
be entitled to collect from the opposing party to such action
such party's reasonable litigation costs and attorneys fees and
expenses (including court costs, reasonable fees of accountants
and experts, and other expenses incidental to the litigation).

(l)   This Agreement shall be binding upon and shall inure to the
      benefit of the parties and their respective successors and
      assigns.

(m)   This is not a third party beneficiary contract.  No person
      or entity other than a party signing this Agreement shall have
      any rights under this Agreement.

(n)   This Agreement may be amended or modified only in a writing
      which specifically references this Agreement.

(o)   This Agreement may not be assigned (including performance by
      subcontract) by any party hereto; provided, however, Kaiser-
      Francis may (i) assign all its rights and obligations to a wholly-
      owned subsidiary, without recourse to Kaiser-Francis provided the
      Loan is fully advanced as provided in paragraph (2) by either
      Kaiser-Francis or such subsidiary and (ii) Kaiser-Francis or such
      subsidiary may assign a fractional undivided interest, not
      exceeding fifty percent (50%), in its rights and obligations
      arising under this Agreement.

(p)   Nothing in this Agreement shall be construed to create a
      partnership or joint venture, nor to authorize any party hereto
      to act as agent for or representative of any other party hereto.
      Each party hereto shall be deemed an independent contractor and
      no party hereto shall act as, or hold itself out as acting as,
      agent for any other party hereto.

(q)   A party to this Agreement may decide or fail to require full
      or timely performance of any obligation arising under this
      Agreement. The decision or failure of a party hereto to require
      full or timely performance of any obligation arising under this
      Agreement (whether on a single occasion or on multiple occasions)
      shall not be deemed a waiver of any such obligation. No such
      decisions or failures shall give rise to any claim of estoppel,
      laches, course of dealing, amendment of this Agreement by course
      of dealing, or other defense of any nature to any obligation
      arising hereunder.

(r)   The repudiation, breach, or failure to perform any
      obligation arising under this Agreement by a party after
      reasonable notice thereof shall be deemed a repudiation, breach,
      and failure to perform all of such party's obligations arising
      under this Agreement.

(s)   Time is of the essence with respect to each obligation
      arising under this Agreement. The failure to timely perform an
      obligation arising hereunder shall be deemed a failure to perform
      the obligation.

(t)   Any  cause of action for a breach or enforcement of, or a
      declaratory judgment respecting, this Agreement shall be
      commenced and maintained only in the United States District Court
      for the Northern District of Oklahoma or the applicable Oklahoma
      state trial court sitting in Tulsa, Oklahoma and having subject
      matter jurisdiction.

Dated and effective as of the Agreement Date.

DELTA PETROLEUM CORPORATION

By  s/Aleron H. Larson, Jr.
              Signature
       Aleron H. Larson, Jr.
            Printed Name
            Chairman/CEO
               Title


KAISER-FRANCIS OIL COMPANY

By s/James A. Willis
            Signature
        James A. Willis
            Printed Name
       Executive Vice President
               Title

PROMISSORY NOTE

Floating Interest Rate

| DEBTOR(S) NAME ADDRESS | NOTE NO. | DATE OF NOTE | MATURITY DATE | PRINCIPAL AMOUNT |
|---|---|---|---|---|
| | | December 1, | June 1, | |
| Delta Petroleum | 001 | 1999 | 2004 | $8,000,000 |
| Corporation | | | | |
| 555 17th Street | | | | |
| Suite 3310 | | | | |
| Denver CO 80202 | | | | |
| 303-293-9133-Telephone | | | | |
| 303-298-8251 -Facsimile | | | | |

INTEREST RATE

National Prime (as Published by Wall Street Journal) plus One and One Half Percent (1.5%), FLOATING, Adjusted Monthly and Established On First Day of Each Month Based Upon Immediately Preceding Business Day Published Rate, compounded annually

COLLATERAL CATEGORIES:                SSN/TIN NUMBER:
Oil and Gas Properties and
Contractual Rights

PAYMENT TERMS:

Payment Required on the First Calendar Day of Each Month Equal to the Greater of (i) One Hundred Fifty-thousand United States Dollars (US$150,000) or (ii) Seventy-Five Percent (75%) of Net Cash Flow from Offshore Properties and New Mexico Properties (As Herein Defined and Determined), Payable in United States Dollars Immediately Available in Tulsa, Oklahoma

FOR VALUE RECEIVED, the undersigned Debtor(s), jointly and severally if more than one, agree to the terms of this Note and promise to pay to the order of Lender named below at its place of business as indicated herein or at such other place as may be designated in writing by holder, the Principal Amount of this Note together with interest until maturity at the per annum interest rate or rates stated above. Interest on this Note is calculated on the actual number of days elapsed on a basis of a 360 day year unless otherwise indicated herein. For purposes of computing interest and determining the date principal and interest payments are received, all payments made under this Note will not be deemed to have been made until such payments are received in collected funds.

PAYMENTS NOT MADE WHEN DUE. Any principal and/or interest amount not paid when due shall bear interest at a rate six percent (6%) per annum greater than the per annum interest rate prevailing on this Note at the time the unpaid amount became due. In no event shall the interest rate and related charges either before or after maturity be greater than permitted by law.

ALL PARTIES PRINCIPALS. All parties liable for payment hereunder shall each be regarded as a principal and each party agrees that any party hereto with approval of holder and without notice to other parties may from time to time renew this Note or consent to

one or more extensions or deferrals of Maturity Date for any term
or terms, and all parties shall be liable in same manner as on
original note.  All parties liable for payment hereunder waive
presentment, notice of dishonor and protest and consent to
partial payments, substitutions or release of collateral and to
addition or release of any party or guarantor.

ADVANCES AND PAYMENTS.  It is agreed that the sum of all advances
under this Note may exceed the Principal Amount as shown above,
but the unpaid balance exclusive of interest shall never exceed
said Principal Amount.  Advances and payments on Note shall be
recorded on records of Lender and such records shall be prima
facie evidence of such advances, payments and unpaid principal
balance.  Subsequent advances and the procedures described herein
shall not be construed or interpreted as granting a continuing
line of credit for Principal Amount.  Lender reserves the right
to apply any payment by Debtor, or for account of Debtor, toward
this Note or any other obligation of Debtor to Lender.

COLLATERAL.  This Note and all other obligations of Debtor to
Lender, and all renewals or extensions thereof, are secured by
all collateral securing this Note and by all other security
interests heretofore or hereafter granted to Lender as more
specifically described in Mortgage (as hereafter defined)and
other securing documentation.

ACCELERATION.  At option of the Lender, the unpaid balance of
this Note and all other obligations of Debtor to Lender, whether
direct or indirect, absolute or contingent, now existing or
hereafter arising, shall become immediately due and payable
without notice or demand upon the occurrence or existence of any
of the following events or conditions: (a) any payment required
by this Note is not made when due or  (b) appointment of a
receiver over any part of the property of Debtor, the assignment
of property by any debtor for the benefit of creditors, or the
commencement of any proceeding under any bankruptcy or insolvency
laws by or against Debtor.

WAIVERS.  No waiver by holder of any payment or other right under
this Note or any related agreement or documentation shall operate
as a waiver of any other payment or right.

GOVERNING LAW.  This Note and the obligations evidenced hereby
are made, entered into, to be construed and governed by the laws
of the state indicated in the address of Lender shown below.
Debtor(s) consent to, and agree that the exclusive jurisdiction
and venue of any litigation arising under this Note shall be a
Court sitting in the State indicted in the address of Lender.

COLLECTION COSTS.  All parties liable for payment hereunder agree
to pay reasonable costs of collection.

RIGHT OF OFFSET.  Any indebtedness due from holder hereof to
Debtor or any party hereto including, but without limitation, any
deposits or credit balances due from holder, is pledged to secure
payment of this Note and any other obligation to holder of Debtor
or any party hereto, and may at any time while the whole or any
part of such obligation remains unpaid, either before or after
Maturity hereof, be appropriated, held or applied toward the
payment of this Note or any other obligation to holder of Debtor
or any party hereto.

PURPOSE.  Debtor affirms that the proceeds of this Note are to be
used for a business or agricultural purpose and not for a
personal, family or household purpose.

LOAN AGREEMENT.  This Note is executed and delivered pursuant to that certain Loan Agreement between Debtor and Lender dated November _____, 1999.  This Note is subject to the Pre-payment Provisions of the Loan Agreement. Mortgage as used herein has the meaning as set forth in the Loan Agreement.

NET CASH FLOW. As used in this Note Net Cash Flow from Offshore Properties and New Mexico Properties shall be determined as follows:

    (a)  Offshore Properties and New Mexico Properties: Offshore Properties and New Mexico Properties means the all right, title and interest of Borrower in those properties described on Exhibit A to the Mortgage (Exhibits B-1, B-2, and B-3 to the Loan Agreement).

    (b)  Net Cash Flow Determined Monthly.  New Cash Flow shall be determined monthly on or before the twentieth day of the month next following the month in respect of which the determination is being made.

    (c)  Cash Basis of Accounting. The cash basis of accounting shall be used to determine Net Cash Flow. No reserves or suspended accounts shall be maintained.

    (d)  Cumulative and Aggregate Determination.  Net Cash Flow shall be determined on a cumulative basis from and after December 1, 1999.  Net Cash Flow shall be determined on an aggregate basis of all Offshore Properties and New Mexico Properties.

    (e)  Capitalized and Expensed Disbursements.  All disbursements which are normally expensed shall be deducted.  All disbursements which are normally capitalized shall not be deducted.

    (f)  Determination Without Consideration of Payments on this Note.  No payments on this Note shall be considered in determining Net Cash Flow.

    (g)  Determination Without Consideration of Cost of Acquisition of Offshore Properties.  No costs of acquisition of the Offshore Properties or the New Mexico Properties shall be deducted in determining Net Cash Flow.

    (h)  Proceeds of Disposition.  All proceeds of any disposition of the Offshore Properties or New Mexico Properties or any part thereof shall be included in the determination of Net Cash Flow.

    (i)  GAAP.  Except as herein provided, Net Cash Flow shall be determined in accordance with generally accepted accounting principles.

ENTIRE AGREEMENT.  All parties acknowledge that this Note and related documents contain the complete and entire agreement between Debtor and Lender,  except and related documentation pursuant to which this Note is executed and delivered. No variation, modification, changes or amendments to this Note or related documents shall be binding unless in writing and signed by all parties.  No legal relationship is created by the execution of this Note and related documents except that of debtor and creditor or as stated in writing.

LENDER NAME AND ADDRESS:                    DEBTOR(S) SIGNATURE(S):

Kaiser-Francis Oil Company                  DELTA PETROLEUM CORPORATION
Post Office Box 21468
Tulsa, Oklahoma 74121-1468

                                            By:a/Aleron H. Larson, Jr.
                                            its Chairman/CEO