**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - -   x
                                                         :
In re:                                                   :          Chapter 11
                                                         :
DELTA PETROLUEM, et al.,                                 :          Case No. 11-14006 (KJC)
                                                         :
        Debtors.                                         :          Jointly Administered
                                                         ::
- - - - - - - - - - - - - - - - - - - - - - - - - - -   x
DELTA PETROLEUM GENERAL                                   :
RECOVERY TRUST and PAR                                    :
PETROLEUM CORPORATION,                                    :
                                                         :
                                                         :          Adv. Pro No. 12-50877 (KJC)
        Plaintiffs,                                      :
v.                                                       :
                                                         :
ALERON LARSON, JR.,                                      :
                                                         :
        Defendant, Counterclaimant.                      :
                                                         x

**ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS
TO AMENDED COMPLAINT FOR AVOIDANCE AND/OR DISCHARGE
OF INTEREST, ENFORCEMENT OF BAR DATE ORDER, AND
RECOVERY OF PROPERTY OF THE ESTATE**

Aleron Larson, Jr. ("Defendant") by and through his attorneys, for his Answer to the

Amended Complaint ("Complaint") in this proceeding, states and alleges as follows:

**SUMMARY OF ACTION**

1.      Paragraph 1 of the Complaint contains no factual or legal allegations to which a

response is necessary or required.  Nevertheless, Defendant denies the factual and legal

conclusions contained in Plaintiffs' purported summary of this proceeding.

2.      Paragraph 2 of the Complaint contains no factual or legal allegations to which a response is necessary or required.  Nevertheless, Defendant denies the factual and legal conclusions contained in Plaintiffs' purported summary of this proceeding.

3.      Paragraph 3 of the Complaint contains no factual or legal allegations to which a response is necessary or required.  Nevertheless, Defendant denies the factual and legal conclusions contained in Plaintiffs' purported summary of this proceeding.

4.      Paragraph 4 of the Complaint contains no factual or legal allegations to which a response is necessary or required.  Nevertheless, Defendant denies the factual and legal conclusions contained in Plaintiffs' purported summary of this proceeding.

JURISDICTION AND VENUE

5.      Defendant admits that counts arising in or arising under the Bankruptcy Code are core proceedings.  To the extent that any of the counts are determined to be non-core, Defendant consents to the entry of final judgment by the Bankruptcy Court.  Defendant admits the remaining allegations contained in paragraph 5 of the Complaint.

6.      Defendant admits the allegations contained in paragraph 6 of the Complaint.

7.      Defendant admits the allegations contained in paragraph 7 of the Complaint.

8.      Defendant admits the allegations contained in paragraph 8 of the Complaint.

9.      Defendant admits the allegations contained in paragraph 9 of the Complaint.

10.     Defendant admits the allegations contained in paragraph 10 of the Complaint.

11.     Except for the allegations contained in the last sentence of paragraph 11of the Complaint, Defendant admits the allegations contained in paragraph 11 of the Complaint. Defendant denies that such Plaintiff is authorized to bring Counts II and III below.

2

12.     Defendant admits the allegations contained in paragraph 12 of the Complaint.

## FACTUAL BACKGROUND

**A.     The Bankruptcy Cases**

13.     Defendant admits the allegations contained in paragraph 13 of the Complaint.

14.     Defendant admits the allegations contained in paragraph 14 of the Complaint.

15.     Defendant admits the allegations contained in paragraph 15 of the Complaint.

16.     Defendant admits that the Bar Date Notice was filed on February 14, 2012, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 16 of the Complaint and the same are therefore deemed denied.

17.     Defendant admits that the Plan and Confirmation Hearing Notice were filed on July 6, 2012, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 17 of the Complaint and the same are therefore deemed denied.

18.     Defendant admits that the Plan and an Amended Disclosure Statement were filed on August 13, 2012, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 18 of the Complaint and the same are therefore deemed denied.

19.     Defendant admits the allegations contained in paragraph 19 of the Complaint.

20.     Defendant admits the allegations contained in paragraph 20 of the Complaint.

21.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 21 of the Complaint and the same are therefore deemed denied.

3

22.     Defendant admits that the Effective Date Notice was filed on August 31, 2012, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 22 of the Complaint and the same are therefore deemed denied.

23.     Defendant admits that paragraph 23 of the Complaint contains a partial quotation of some of the language contained in Section 10.1 of the Plan, but denies the remaining allegations contained in such paragraph.

24.     Defendant admits that paragraph 24 of the Complaint contains a quotation from paragraph 15 of the Confirmation Order, but denies all other allegations contained in such paragraph.

25.     Defendant admits the allegations contained in paragraph 25 of the Complaint.

26.     Defendant admits the allegations contained in paragraph 26 of the Complaint.

27.     Defendant admits that paragraph 27 of the Complaint contains a partial quotation of the language contained in paragraph 19 of the Confirmation Order, but denies the remaining allegations contained in such paragraph.

**B.      Oil and Gas Leases and Overriding Royalty Interests**

28.     Defendant admits that Delta Petroleum Corporation ("Delta") owned and/or operated natural gas and crude oil producing assets and held leasehold interests (the "Leases") in certain lands that contain oil and gas producing wells. Defendant admits that some of the Leases in which Delta had an ownership interest included certain offshore oil and gas leases on the outer continental shelf of the United States.  Defendant admits that Whiting Petroleum delivered an Assignment and Conveyance dated December 1, 1999, of property described as a net operating interest ("NOI Assignment") in or relating to some offshore oil and gas properties, a sample copy

4

of which is part of Exhibit C to the Complaint.  Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 28 of the Complaint and the same are therefore deemed denied.

29.     Defendant admits that Delta and Whiting entered into a purchase agreement ("Purchase Agreement") relating to some or all of the property described in the NOI Assignment that is attached to the Complaint as part of Exhibit A.  Defendant also admits that on or about August 25, 1999, Whiting and Delta entered into an amendment to the Purchase Agreement ("Amendment") which is attached to the Complaint as part of Exhibit B.  Defendant admits that Whiting did not convey legal ownership of the OCS Leases to Delta.  Defendant admits that Whiting conveyed the NOI Assignment to Delta.  Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 29 of the Complaint and the same are therefore deemed denied.

30.     Defendant admits that Delta received the NOI Assignment pursuant to the Purchase and Agreement dated June 8, 1999 and Amendment dated effective June 8, 1999.  Defendant also admits that the Purchase Agreement and Amendment are described in an SEC form 8-K/A attached to the Complaint as Exhibit B.  Defendant denies the remaining allegations contained in paragraph 30 of the Complaint.

31.     Defendant admits that the NOI Assignment was a conveyance of property to Delta, as described therein.  Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 31 of the Complaint and the same are therefore deemed denied.

7491664 v2

32.    Defendant admits that in connection with Delta's acquisition of the NOI Assignment, immediately thereafter Delta executed and delivered to Defendant a 1% overriding royalty interest dated December 1, 1999, ("A. LARSON ORRI"), a copy of which is attached to the Complaint as Exhibit D.  Defendant denies the remaining allegations contained in paragraph 32 and affirmatively states that the A. LARSON ORRI speaks for itself.

33.    Defendant admits that Delta executed and delivered to Defendant the A. LARSON ORRI.  Defendant admits that under California law, an overriding royalty interest is an interest in real property.  Defendant also admits that the A. LARSON ORRI was conveyed out of the property acquired by Delta from Whiting pursuant to the NOI Assignment.  Defendant denies all other allegations contained in paragraph 33 of the Complaint.

34.    Defendant admits that for almost 13 years prior to the Petition Date Delta remitted to Defendant the amounts due to Defendant as a result of his ownership of the A. LARSON ORRI.  Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 34 of the Complaint and the same are therefore deemed denied.

35.    Defendant admits that subsequent to the Petition Date, Delta continued to remit to Defendant the amounts Delta determined to be owing to Defendant as a result of his ownership of the A. LARSON ORRI (the "Larson 1% Payments").  Defendant denies all other allegations contained in paragraph 35 of the Complaint and affirmatively states that Plaintiffs wrongfully converted his property and interfered in his rights to receive payment from Whiting.

36.    Defendant denies the allegations contained in paragraph 36 of the Complaint and asserts instead that Plaintiffs seek to convert Defendant's property.

## COUNT I

37.    For his response to paragraph 37 of the Complaint, Defendant hereby repeats and realleges his responses above to the allegations as though fully set forth herein.

38.    Defendant admits paragraph 38 of the Complaint contains a quotation from Section 544(a)(3) of the Bankruptcy Code, albeit with a typographical error.

39.    Defendant admits that paragraph 39 of the Complaint contains a partial quotation of some of the language of Section 550(a), but denies all other allegations contained in such paragraph.

40.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 40 of the Complaint, and the same are therefore deemed denied.

41.    Defendant denies that he was required to record the A. LARSON ORRI in any recording office for the purpose of providing potential bona fide purchasers with notice of such interest.  Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 41 of the Compliant and the same are therefore deemed denied.

42.    Defendant admits that the A. LARSON ORRI was not recorded in the Santa Barbara County, California recording office prior to the Petition Date, but denies all other allegations contained in paragraph 42 of the Complaint.

43.    Defendant denies the allegations contained in paragraph 43 of the Complaint.

44.    Defendant denies the allegations contained in paragraph 44 of the Compliant.

7

## COUNT II

45.     For his response to paragraph 45 of the Complaint, Defendant hereby repeats and realleges his responses above to the allegations as though fully set forth herein.

46.     Defendant admits the quoted language contained in paragraph 46 of the Complaint is part of the language of 11 U.S.C. § 1141(a) of the Bankruptcy Code.

47.     Defendant admits the allegations contained in paragraph 47 of the Complaint.

48.     In response to paragraph 48 of the Complaint, Defendant states that the Confirmation Order and the Plan speak for themselves and specifically states that the two documents are not identical.

49.     In response to paragraph 49 of the Complaint, Defendant states that the Confirmation Order and the Plan speak for themselves and specifically states that the two documents are not identical.

50.     Defendant admits that he received the Bar Date Notice, Plan and Confirmation Date Notice and Effective Date Notice, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 50 of the Complaint and the same are therefore deemed denied.

51.     Defendant denies the allegations contained in paragraph 51 of the Complaint.

52.     Defendant denies the allegations contained in paragraph 52 of the Complaint.

## COUNT III

53.     For his response to paragraph 53 of the Complaint, Defendant hereby repeats and realleges his responses above to the allegations as though fully set forth herein.

54.     Defendant admits the allegations contained in paragraph 54 of the Complaint.

8

55.     Defendant admits that he did not file a proof of claim in the Debtors' Chapter 11 cases, but denies the remaining allegations contained in paragraph 55 of the Complaint.

56.     Defendant admits the allegations contained in paragraph 56 of the Complaint.

57.     Defendant admits that Debtor's schedules filed with the Court and dated January 6, 2012, listed Defendant as a creditor and indicated that the amount of his pre-petition claim was unliquidated because the amount was unknown.  Defendant denies that Bankruptcy Rule 3003(c)(2) has any application or relevance to him since to the extent that Defendant had a pre-petition claim, such claim was later  liquidated and paid by the Debtors before the Bar Date.  The reason Defendant could not vote on the Plan or receive a distribution is because he did not have a pre-petition claim.  Defendant also denies that Plaintiffs properly state the language of Bankruptcy Rule 3003(c)(2).

58.     Defendant denies the allegations contained in paragraph 58 of the Complaint.

## COUNT IV

59.     For his response to paragraph 59 of the Complaint, Defendant hereby repeats and realleges his responses above to the allegations as though fully set forth herein.

60.     Paragraph 60 of the Complaint makes legal conclusions to which no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 60 of the Complaint and the same are therefore deemed denied.

61.     Defendant denies the allegations contained in paragraph 61 of the Complaint.

62.     Defendant admits that from the Petition Date to the Effective Date, Delta paid $74,243.39 to Defendant, but denies all other allegations contained in paragraph 62 of the Complaint.

63.     Defendant denies the allegations contained in paragraph 63 of the Complaint.

## COUNT V

64.     For his response to paragraph 64 of the Complaint, Defendant hereby repeats and realleges his responses above to the allegations as though fully set forth herein.

65.     Paragraph 65 of the Complaint makes legal conclusions to which no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 65 of the Complaint and the same are therefore deemed denied.

66.     Defendant admits that from the Petition Date to the Effective Date, Debtor paid $74,243.49 to Defendant.  Defendant denies the allegations contained in the second sentence of paragraph 66 of the Complaint.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 66 of the Complaint and the same are therefore deemed denied.

67.     Defendant denies the allegations contained in paragraph 67 of the Complaint.

## COUNT VI

68.     For his response to paragraph 68 of the Complaint, Defendant hereby repeats and realleges his responses above to the allegations as though fully set forth herein.

7491664 v2

69.    Defendant admits the allegations contained in paragraph 69 of the Complaint.

70.    Defendant admits that Delta made payments of money belonging to Defendant during the Chapter 11 Cases to which Defendant was entitled under the A. LARSON ORRI. Defendant denies all other allegations contained in paragraph 70 of the Complaint.

71.    Defendant denies the allegations contained in paragraph 71 of the Complaint.

## COUNT VII

72.    For his response to paragraph 72 of the Complaint, Defendant hereby repeats and realleges his responses above to the allegations as though fully set forth herein.

73.    Defendant admits that the quoted language contained in paragraph 73 of the Complaint appears in the language of 11 U.S.C. § 542(a) of the Bankruptcy Code.

74.    Defendant denies the allegations contained in paragraph 74 of the Complaint.

75.    Defendant denies the allegations contained in paragraph 75 of the Complaint.

## COUNT VIII

76.    For his response to paragraph 76 of the Complaint, Defendant hereby repeats and realleges his responses above as though fully set forth herein.

77.    Defendant denies the allegations contained in paragraph 77 of the Complaint.

78.    Defendant admits that section 10.3 of the Plan and paragraph 19 of the Confirmation Order contain provisions relating to the binding effect of the Plan, but denies all other allegations contained in paragraph 78 of the Complaint.

79.    Defendant admits that section 10.10(a) of the Plan and paragraph 45 of the Confirmation Order contain provisions as set forth therein relating to an injunction, but deny that

7491664 v2

such injunction is applicable to Defendant since he did not have any claim against the Debtors as of the Effective Date.

80.     Defendant denies the allegations contained in paragraph 80 of the Complaint.

## AFFIRMATIVE DEFENSES

1.      Any unpaid amounts which may have been owed to Defendant as of the Petition Date or as of Effective Date because of oil and gas production relating to the A. LARSON ORRI were paid by Debtors to Defendant before the Bar Date or before the Effective Date, respectively.

2.      Debtors at no time informed Defendant or provided any notice in its Plan, its disclosure materials, other notices, or filings with the Bankruptcy Court, that it disputed Defendant's A. LARSON ORRI, or that the purpose or effect of the Plan was to convert his property.

3.      None of the amounts paid by Delta to Defendant on account of the A. LARSON ORRI was paid under protest.

4.      Defendant relied upon the payments of his pre and post-petition royalties by Delta when Defendant did not file a proof of claim, did not file a request for allowance of administrative claim, and did not participate in the Delta bankruptcy case.

5.      Plaintiffs are not entitled to recover any funds paid by Delta to Defendant as Delta affirmatively sought and obtained the Court's permission to make the post-petition payments to Defendant.

6.      Based upon the facts and events described in paragraphs 1 through 5 above, Counts II, III, IV, V, VI, VII and VIII are barred by estoppel, laches, unclean hands, waiver, and violations of the due process clause of the United States Constitution.

7.      Based upon the facts and events described in paragraphs 1 through 5 above, it would be inequitable and against public policy for the Plaintiffs to recover any sums based upon actions that Defendant was induced not to take as a result of the payments voluntarily and without objection made by Delta to Defendant.

8.      Plaintiffs are not entitled to recover any funds paid to Defendant because the funds were paid by Delta as a mere conduit on behalf of Whiting Petroleum Corporation.

9.      Plaintiffs are not entitled to recover any funds paid to Defendant because any funds paid by Delta to Defendant were the property of Defendant which were merely held in trust for Defendant by Delta.

10.     Plaintiffs are not entitled to recover any funds paid by Delta to Defendant as such funds were ear marked for Defendant when paid to Delta by Whiting.

11.     Plaintiffs are factually and judicially estopped from denying that the A. LARSON ORRI is an interest in real property.

12.     The A. LARSON ORRI is not and was not property of the estate under 11 U.S.C. § 541.

13.     The Complaint fails to state any claim upon which relief can be granted.

**WHEREFORE**, Defendant ALERON LARSON, JR. prays that this Court issue its Order dismissing all of Plaintiffs' claims with prejudice, awarding said Defendant his

reasonable attorney's fees and costs incurred in the above-captioned action, and for such other and further relief as the Court may deem proper.

## COUNTERCLAIMS

Defendant/Counterclaimant Aleron Larson, Jr. ("Larson"), by and through his undersigned counsel hereby alleges the following counterclaims set forth below.  Unless otherwise defined in the counterclaims, capitalized terms shall have the meaning set forth in Larson's Answer above.

### Summary of Counterclaims

1.      PAR's Complaint seeks a declaration that confirmation of the Plan stripped Defendant of real or personal property owned by him since 1999 as a result of the conveyance to him of an overriding royalty interest by the A. LARSON ORRI (attached to the Complaint as Exhibit D).  PAR's self-help retention of monies presently due to Larson on account of the A. LARSON ORRI and its intent to retain monies to become due thereunder in the future is wrongful and gives rise to the Counterclaims alleged herein.

### Jurisdiction and Venue

2.      The Court has jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 157, 1334, and 2201. These counterclaims are non-core and Larson consents to entry of final orders or judgment by the bankruptcy judge.

3.      Venue is proper under 28 U.S.C. § 1409.

**Parties**

4.     On the Effective Date of Debtor Delta Petroleum Corporation's ("Delta") Plan—August 31, 2012—Delta emerged from chapter 11 as Par Petroleum Corporation ("PAR").  PAR is a plaintiff in this proceeding.

5.     Plaintiff Delta Petroleum Trust ("Trust") is a general recovery trust created for the benefit of the Reorganized Debtors.

6.     Larson is an individual who resides in Colorado.

**Background**

7.     Off the shore of California—adjacent to the County of Santa Barbara, and on the outer continental shelf—there exists an area of oil drilling development known as the Point Arguello Field ( "Point Arguello").  Whiting Petroleum Corporation ("Whiting") is the record owner of various leases and other agreements that afford it the right, along with other co-lessees, to explore, develop and produce oil and gas from the Point Arguello properties.

8.     The Point Arguello properties are governed by the Outer Continental Shelf Lands Act (the "Act"), 43 U.S.C. § 1331 *et seq*.  The Act incorporates the law of the adjacent state as "surrogate" federal law.  43 U.S.C. § 1333(a)(2)(A).

9.     In 1999, Whiting and Delta negotiated a Purchase Agreement whereby Whiting was to convey to Delta all of its right, title and interest in and to the Point Arguello properties. The Purchase Agreement was amended ("Amended Purchase Agreement") and pursuant to the Amended Purchase Agreement, Whiting executed and delivered to Delta a conveyance and assignment dated December 1, 1999 ("NOI Assignment"), a sample copy of which is attached to the Complaint as part of Exhibit C.  The NOI Assignment conveyed a net operating interest as

15

defined therein in Point Arguello to Delta.  Under the terms of the NOI Assignment, but

excluding certain exceptions specified therein, Delta received the economic equivalent of

Whiting's right, title and interest in the Point Arguello properties excepting only that Delta did

not receive record legal title.

10.     Neither Whiting nor Delta recorded the NOI Assignment in the real property

records of the County of Santa Barbara or any other County in the State of California.

11.     As record owner, Whiting has received and continues to receive proceeds from

the sale of oil produced from the Point Arguello properties, and has delivered certain monies

derived therefrom to Delta (and now PAR) for distribution to various royalty and overriding

royalty owners and certain other monies derived therefrom for retention by PAR pursuant to a

formula set forth in the NOI Assignment.

12.     On December 1, 1999, after receiving the NOI Assignment, Delta assigned

portions of such interest to multiple parties pursuant to multiple assignments.  One such

assignment was an assignment of an overriding royalty interest, free and clear of all

development, production and operating expenses to Larson (the "A. LARSON ORRI", attached

as Exhibit D to the Complaint).

13.     The NOI Assignment and the A. LARSON ORRI entitle the owners thereof to all

the economic and beneficial rights to explore, develop and produce oil and gas by virtue of the

leases and other agreements entered into by Whiting and the co-lessees of the mineral interests in

the Point Arguello properties.

14.     For almost twenty years and perhaps longer, Whiting and its other co-lessee

partners have produced and sold oil from the Point Arguello properties.  For the last thirteen

7491664 v2

years, Whiting delivered the monies payable to Larson pursuant to the A. LARSON ORRI, and

monies payable to other overriding royalty owners  pursuant to their interests in Point Arguello,

to Delta for distribution to Larson and the other overriding royalty owners.

15.    Based upon information only recently disclosed by Plaintiffs, a dispute has

arisen with PAR as to whether the monies owed under the A. LARSON ORRI and other

overriding royalties have been properly calculated.  Upon information and belief, the A.

LARSON ORRI royalty payments have been underpaid for some part or all of the past 13 years.

Larson is not seeking to recover the amount of these past underpayments for the period prior to

the Effective Date, but seeks a declaration of the proper calculation of the amounts due since the

Effective Date and of future payments that will become due as a result of future oil production.

16.    Pursuant to the NOI Assignment and the Amended Purchase Agreement by which

Delta acquired the NOI Assignment, Delta agreed to indemnify Whiting from any claims that

parties like Larson might bring if Delta did not distribute their revenues to them.  *See* Purchase

Agreement ¶ 10.2, contained in Exhibit B to the Complaint.

17.    Delta filed bankruptcy in December 2011.

18.    Delta's bankruptcy schedules dated January 6, 2012 characterized Larson as an

unsecured creditor and indicated that the amount of his prepetition claim was unliquidated

because the amount was unknown.  Delta did not dispute Larson's ownership of the A. LARSON

ORRI and did not dispute that Larson was entitled to payment of monies received on account

thereof, if and when received by Delta from Whiting.  Delta sought and obtained approval of the

Bankruptcy Court to pay the amounts earned by Larson from the A. LARSON ORRI (along with

other overriding royalties), whether such amounts were the result of amounts owed for his

17

prepetition claim relating thereto, or for new, post-petition claims relating thereto arising later because of subsequent oil production.   When the amount of Larson's prepetition claim became known to Delta, Delta paid such amount in full, as it did other royalty and overriding royalty owners.

19.     Every month following the bankruptcy filing through the Effective Date, including after the confirmation order was entered on August 16, 2012, Delta paid Larson the monies it received from Whiting as a result of subsequent oil production for distribution to him in satisfaction of new post-petition claims as they arose.  The last payment received by Larson from Delta in payment of monies due him on the A. LARSON ORRI was dated August 21, 2012. The Plan had an Effective Date of August 31, 2012.

20.     On information and belief, as of August 31, 2012, Delta did not owe Larson any money under the A. LARSON ORRI (aside from the possible underpayment of monies due on account of Delta's miscalculation of monies due on the A. LARSON ORRI described above).

21.     In September 2012, the Delta Recovery Trust filed an adversary proceeding to avoid the A. LARSON ORRI.  By the filing of the Amended Complaint on January 4, 2013, PAR joined as a plaintiff.  Since filing the adversary proceeding, Plaintiffs have not distributed any of the monies they have received from Whiting for distribution to Larson, despite doing so for thirteen years, a period which included the pendency of the Delta bankruptcy.

22.     No order of any Court authorized PAR to discontinue the payment of the monies owed under the A. LARSON ORRI from its receipt of funds from Whiting.

23.    Despite demand by Larson, PAR has refused to pay Larson the monies to which he is entitled pursuant to the A. LARSON ORRI that have been due and owing since September 1, 2012.

24.    PAR's refusal to pay Larson monies due him first occurred after the Plan Effective Date.

25.    On November 21, 2012, Larson sent Whiting notice that PAR refused to pay Larson the monies to which he is entitled pursuant to the A. LARSON ORRI that have been due and owing and/or accruing since September of 2012 ("Whiting Notice").  The Whiting Notice requested that Whiting pay Larson directly, rather than through PAR, because of PAR's wrongful retention of the monies belonging to Larson.

26.    PAR objected to the Whiting Notice.  To resolve their differences on this issue, on December 21, 2012, the parties agreed to place certain future monies received by PAR from Whiting into escrow (the "Escrow") with the Court.  PAR refused, however, to place into the Escrow any monies owed to Larson which it had received from Whiting after the Effective Date but before December 21, 2012.  As of January 9, 2013, PAR had placed $6,319.86 into the Escrow, representing PAR's calculation of the monies payable solely for the October, 2012 oil production pursuant to the A. LARSON ORRI.

27.    On information and belief, the Point Arguello properties are continuing to produce revenues from oil production, to which Larson is entitled to a portion pursuant to the A. LARSON ORRI.  PAR continues to refuse to pay Larson those monies.  Therefore, new claims against PAR in favor of Larson continue to accrue.

7491664 v2

## First Counterclaim
## Money Had and Received

28.     Larson incorporates the foregoing allegations as if set forth fully herein.

PAR has received monies from Whiting which belong to Larson pursuant to the A. LARSON

ORRI.  PAR has placed some, but not all, of such monies into the Escrow.

29.     Equity and good conscience require that PAR pay Larson these monies as they are

rightfully his property under the A. LARSON ORRI.

30.     Larson is entitled to an order that the monies in Escrow deposited therein with

respect to the A. LARSON ORRI—$6,319.86 as of January 9, 2013—be paid to Larson, and also

for a judgment against PAR for all other monies owed to Larson received after the Effective Date

which are owed to Larson but which PAR has not placed in Escrow.

## Second Counterclaim
## Conversion

31.     Larson incorporates the foregoing allegations as if set forth fully herein.

32.     PAR's wrongful acts of refusing and failing to distribute monies it received from

Whiting payable to Larson constitute unlawful dominion and control over Larson's property with

the intent to permanently deprive him of the benefits and use thereof.   PAR's wrongful acts

therefore amount to the common law tort of conversion of Larson's property.

33.     PAR's acts are accompanied by fraud, malice, recklessness and a willful and

wanton disregard of Larson's rights.

34.     Larson has been, and will continue to be, damaged by PAR's wrongful acts.

20

35.     Larson has been damaged in an amount to be determined at trial—but at least $6,319.86, representing the amount in Escrow as of January 9, 2013—in addition to any such other damages to which Larson may be entitled as result of PAR's wrongful conversion.

### Third Counterclaim
### Restitution based on Unjust Enrichment

36.     Larson incorporates the foregoing allegations as if set forth fully herein.

37.     PAR has received a benefit at the expense of Larson.  Namely, PAR has received monies owed to Larson due to the A. LARSON ORRI from Whiting that it has refused to tender to Larson.

38.     As between PAR and Larson, it is unjust for PAR to retain the benefit of the monies it received from Whiting for distribution to Larson pursuant to the A. LARSON ORRI.

39.     Larson has been damaged due to PAR's unjust refusal to pay Larson the monies PAR received from Whiting for distribution to Larson pursuant to the A. LARSON ORRI.

40.     In equity, the Court should award Larson with restitution damages due to the injuries he has suffered because of PAR's unjust refusal to pay.

### Fourth Counterclaim
### Declaratory Judgment

41.     Larson incorporates the foregoing allegations as if set forth fully herein.

42.     Unless the Court determines the parties' rights with respect to the A. LARSON ORRI, the parties will continue to dispute the right to payments due thereunder.  There is an absolute adversity of interest between the parties with respect to Larson's right to payment for his interest under the A. LARSON ORRI, a declaratory judgment would conclusively settle the issue, and a declaratory judgment would provide immense practical help or utility in avoiding

future disputes related to the A. LARSON ORRI.  Therefore, this dispute is ripe for declaratory judgment.

43.     Larson respectfully requests that the Court enter an order declaring that the A. LARSON ORRI was not extinguished, stripped or otherwise avoided by the Confirmation Order in Delta's bankruptcy, and that the interests it describes are still owned by Larson and are in full effect.

44.     Furthermore, Larson respectfully requests that the Court enter an order declaring the proper calculation for payments under the A. LARSON ORRI since the Effective Date and in the future.

**WHEREFORE**, Defendant ALERON LARSON, JR. prays that this Court grant Defendant the relief prayed-for in the above counterclaims including damages, pre- and post-judgment interest as authorized by law, for an order awarding said Defendant his reasonable attorneys' fees and costs incurred in this proceeding and for such other and further relief as the Court may deem proper.

Dated:  January 18, 2013

                                              **BENESCH, FRIEDLANDER, COPLAN
                                                  & ARONOFF LLP**

                          By:    */s/ Raymond H. Lemisch*
                                       Raymond H. Lemisch, Esquire (No. 4204)
                                        222 Delaware Avenue, Suite 801
                                        Wilmington, DE 19801
                                        (302) 442-7010 telephone
                                        (303) 442-7012 facsimile
                                        rlemisch@beneschlaw.com

                                        - and -

Barry L. Wilkie, Esq.
Stuart N. Bennett, Esq.
**JONES & KELLER, P.C**
1999 Broadway, Suite 3150
Denver, CO  80202
(303) 573-1600 telephone
(303) 573-8133 facsimile

*Counsel to Aleron Larson, Jr.*