# Exhibit A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
- - - - - - - - - - - - - - -  - - - - - - - - - - - - -  x
                                          :
In re:                                    :    Chapter 11
                                          :
DELTA PETROLUEM, et al.,                  :    Case No. 11-14006 (KJC)
                                          :
          Debtors.                        :    Jointly Administered
                                          :
- - - - - - - - - - - - - - - - -  - - - - - - - - - -  x
DELTA PETROLEUM GENERAL                    :
RECOVERY TRUST, and PAR                    :
PETROLEUM CORPORATION,                     :
                                          :
          Plaintiffs,                      :    Adv. Pro. No. 12-50898 (KJC)
                                          :
v.                                         :
                                          :
BWAB LIMITED LIABILITY COMPANY,            :
                                          :
          Defendant, Counterclaimant.      :
- - - - - - - - - - - - - - - - -  - - - - - - - - - -  x
DELTA PETROLEUM GENERAL                    :
RECOVERY TRUST, and PAR                    :
PETROLEUM CORPORATION,                     :
                                          :    Adv. Pro No. 12-50877 (KJC)
          Plaintiffs,                      :
                                          :
v.                                         :
                                          :
ALERON LARSON, JR.,                        :
                                          :
          Defendant, Counterclaimant.      :
- - - - - - - - - - - - - - - - -  - - - - - - - - - -  x
```

## DECLARATION OF STEVEN ROITMAN IN SUPPORT OF BWAB's MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56 AND FED. R. BANKR. P. 7056

I, Steven Roitman, hereby declare that the following is true to the best of my

knowledge, information and belief.

1

1.    I am the sole managing member of BWAB Limited Liability Company, a Colorado limited liability company ("BWAB"). BWAB's office headquarters and principal place of business is, and always has been, located in Denver, Colorado. I have been a managing member since its inception in 1994. I have been a 50% co-owner and Secretary-Treasurer of BWAB Incorporated since September 15, 1992. For over 30 years I have been involved in the buying, selling, operating and producing private, state and federal oil and gas leases onshore and offshore of the United States.

2.    I am aware of the above captioned adversary proceeding and have reviewed the complaint and amended complaint filed by one or both of the Plaintiffs and the answer, amended answer, counterclaims and affirmative defenses filed in response to them.

3.    I have reviewed the Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment ("Plaintiffs' Brief"), and the Declaration of Seth Bullock in Support of Plaintiffs' Motion for Summary Judgment Pursuant to Fed.R.Civ.P.56 and Fed. R. Bankr. P. 7056 ("Bullock Declaration"). I have also reviewed the Declaration of Petru Corporation in Support of Plaintiffs' Motion For Summary Judgment Pursuant to Fed. R. Civ. P. 56 and Fed. R. Bankr. P. 7056 ("Petru Declaration").

4.    Except as otherwise expressly stated, the facts set forth herein are based upon my personal knowledge. I have reviewed BWAB's Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 and Fed. R. Bankr. P. 7056, and the statements of facts set forth therein are true and correct to the best of my knowledge.

2

**Exhibit**
**A**

5.      Through my management of BWAB, my role as Secretary-Treasurer and

co-owner of BWAB Incorporated, my personal involvement in the negotiation of the

business transactions between and among BWAB on the one hand, and Whiting

Petroleum Corporation ("Whiting") and/or Delta Petroleum Corporation on the other

since 1994, my extensive participation in the documentation of those transactions, and

my active participation in the business activities between and among BWAB, Whiting

and/or Delta since 1994, I became very knowledgeable about the documents attached

hereto as Exhibits 1 through 9, and also Exhibits A through E to the Bullock Declaration.

Contrary to the statements contained in paragraph 9 of the Bullock Declaration, Exhibit A

is not a copy of the Purchase Agreement, Exhibit B is not a copy of the Amendment and

Exhibit C is not a copy of the Conveyance Agreement.  Instead, each of such exhibits is a

copy of a Securities Exchange filing by Delta which contains among other things,

unsigned copies of such agreements or conveyances.  Although some of the Exhibits

attached to my Declaration contain Plaintiffs' or Defendant's bates stamp number, with

the exception of Exhibit 6, such documents are otherwise genuine, accurate copies of

identical records maintained by BWAB in the ordinary course of its business.  I could not

locate Exhibit 6 in BWAB's business records, but Exhibit 6 was produced by Plaintiffs

and it is an accurate copy of a document I signed on behalf of BWAB. Mr. Bullock was

not personally involved on behalf of any of the parties to these transactions and it is clear

to me from Mr. Bullock's Declaration that he has no personal knowledge of the meaning

of the language of the conveyance documents described in his and my Declarations or of

the intentions of the parties as to such language.

3

**Exhibit
A**

6.    For purposes of this Declaration, the term "Point Arguello Properties" shall mean the property described on Exhibit 1 hereto, which is also Exhibit A to the 1999 Delta NOI.

7.    In 1994, BWAB's affiliate BWAB Incorporated acquired an option to purchase a large number of properties from the Union Pacific Resources Corp, including the Point Arguello Properties.  The option to purchase such properties was later assigned to Whiting pursuant to a letter agreement dated July 28, 1994 ("Whiting Letter Agreement"), between Whiting and BWAB Incorporated.  A true and correct copy of the Whiting Letter Agreement is attached hereto as Exhibit 2. Based upon information contained in the 1994 BWAB ORRI (a copy of which is attached hereto as Exhibit 3), I have reason to believe that the Whiting Letter Agreement was subsequently amended, but BWAB cannot locate copies of any such amendment(s). I believe, however, that such amendments are not relevant to the matters discussed herein. Such amendments presumably could, however, be obtained from Whiting through discovery.

8.    As part of the consideration for the assignment of the option to Whiting, BWAB had the option of receiving an assignment of either an undivided 6.5% of the net rights acquired by Whiting, or "a proportionately reduced 3.5% **overriding royalty interest out of the net revenue interest acquired by Whiting**", after Whiting purchased the Point Arguello Properties from Union Pacific Resources Corp.  (Ex. 2 at ¶ 2, emphasis added).  The assignment was to be "in recordable form and containing warranties of title, by, through and under Whiting, but not otherwise." (Ex. 2 at ¶ 2). BWAB Incorporated also had the right to elect to have its overriding royalty interest "**conveyed to another of its affiliates**." (Ex. 6 at ¶ 6, emphasis added).

4

9.    The Whiting Letter Agreement also provided as to such overriding property interest, that:

> "Whiting shall receive all net revenues payable by the operator of all purchases of production from the Properties and attributable to the interest of BWAB and BWAB agrees to execute such division orders, transfer orders or other agreements as may be required by the operator or any purchasers of the oil, gas or other hydrocarbons produced from the Properties to effect the payment of all revenues accruing to BWAB's interest to Whiting. Within fifteen days after receipt by Whiting of such revenues from the operator or purchasers of production, Whiting will pay and account monthly to BWAB for its net share of revenues after **the deduction of all expenses, capital costs and taxes deducted by the operator or** paid by Whiting."

(Ex. 2 at ¶ 4, emphasis added).  Because BWAB later elected to receive the 3.5% overriding royalty interest, the emphasized language above did not become applicable.

10.    The Whiting Letter Agreement further provided in relevant part that: "If in the future, ….(ii)Whiting is late in its payments to BWAB on three consecutive occasions **BWAB may elect to have its net share of revenues paid directly to it by the operator or the purchasers of production from the Properties."**  (Ex. 2 at ¶ 5, emphasis added).

11.    Whiting exercised the option and acquired the Point Arguello Properties on or about December 16, 1994, pursuant to the Whiting Letter Agreement. Upon its acquisition of such properties, Whiting executed and delivered to BWAB, an affiliate of BWAB Incorporated, an Assignment of Overriding Royalty dated December 16, 1994 in the Point Arguello Properties ("1994 BWAB ORRI"). A copy of the 1994 BWAB ORRI was recorded in the Official Records of the County of Santa Barbara, California on January 25, 1995, a true and correct copy of which is attached hereto as Exhibit 3. The 1994 BWAB ORRI was also filed with the Minerals Management Service, Pacific OCS

**Exhibit
A**

Region, on January 11, 1995, a file stamped copy of which is attached hereto as Exhibit

4. Whiting acquired its interest in the Point Arguello Properties as a direct result of

BWAB's efforts. Both Whiting's interest and BWAB's 1994 ORRI in the Point Arguello

Properties were earned or purchased 5 years before Delta ever had any kind of ownership

interest.

      12.    The terms and conditions of the 1994 BWAB ORRI were consistent with

the Whiting Letter Agreement. As required by the Whiting Letter Agreement, the 1994

BWAB ORRI contained the following language or provisions:

    a.  "Assignment of Interest: Whiting does hereby **grant, convey, assign, set over and deliver to BWAB an overriding royalty** consisting of an undivided Three and One-Half Percent (3.5%) interest in Whiting's [*i.e.* not Delta's] Net Revenue Interest from the Subject Properties, to be determined as set forth below. As used herein, the term 'Net Revenues' to the BWAB Interest shall mean the difference between (A) the gross revenues received by Whiting from the sale of its fractional or percentage share of Hydrocarbons from the Subject Properties, **after the deduction of** all lessors royalties, **overriding royalties, and other burdens and payments out of the gross production that burden Whiting's [*i.e.* not Delta's] fractional or percentage share**, and (B) the sum of Whiting's fractional or percentage share of third party (i) transportation expenses, (ii) treatment and processing expenses, (iii) compression expenses, and (iv) severance taxes, occupation taxes, and other like taxes based on the production of Hydrocarbons...." (Ex. 4 at ¶ 1, emphasis and bracketed content added).

    b.  Although the conveyance contemplated that Whiting would initially receive BWAB's share of net revenues earned from production of oil and gas from the Point Arguello Properties, it specifically required: "On or before the 15th day of each calendar month commencing January 15, 1995, Whiting shall remit to BWAB, ...BWAB's Interest attributable to the Subject Properties as to revenues received by Whiting." (Ex. 4 at ¶ 2.b.). If BWAB did not timely receive payment from Whiting of BWAB's share of revenues from production for three consecutive months then: "BWAB shall have the right to require, where practicable, direct payments to BWAB by the operator(s) or purchasers(s) if...(ii) Whiting is late in making

6

**Exhibit**
**A**

payments to BWAB ... for three consecutive months." (Ex. 4 at ¶ 2.c.).

c.  Whiting received a right of first refusal to purchase the property conveyed by the 1994 BWAB ORRI in the event BWAB elected to transfer or convey its interest to a non BWAB affiliate. (Ex. 4 at ¶ 4).

d.  "Special Warranty of Title. Whiting warrants title to the BWAB Interest herein conveyed as against all persons claiming by, through or under Whiting, but not otherwise." (Ex. 4 at ¶ 6).

13.     The parties' intent to convey an overriding royalty interest to BWAB is clear from the express language used in the 1994 BWAB ORRI, *i.e.,* "Whiting does hereby **grant, convey, assign, set over and deliver to BWAB an overriding royalty**". This is language of conveyance, not merely of contract. Whiting also warranted the title of BWAB's override. The parties did not intend that BWAB receive a mere contract right to payment of cash proceeds as Mr. Bullock interprets the documents. Moreover, BWAB was given right to protect its interest including the right to demand its share of the revenues from the sale of oil and gas directly from the operator. I base my belief that the parties' intent concerning the conveyance was to convey an overriding royalty interest not only on my review of the plain language of the conveyance documents, but also on my personal knowledge of the circumstances surrounding that conveyance. BWAB would not have agreed to the conveyance if it merely gave BWAB a contract right.

14.     The parties also intended and is clearly expressed in the documents that the 1994 BWAB ORRI interest was subject only to existing landowner royalties and other lease burdens. The parties did not intend and the terms of the 1994 BWAB ORRI do not permit BWAB's ORRI to be unilaterally reduced by Whiting or a subsequent transferee. Mr. Bullock's conclusion in paragraphs 18 and 19 of his Declaration that BWAB has been overpaid since 1999 on its 1994 BWAB ORRI because of Delta's own

7

**Exhibit
A**

conveyances out of property acquired by Delta five years later is directly contrary to the language of the conveyance itself, contrary to the intentions of Whiting and BWAB, contrary to a 12 year course of conduct, and contrary to the BWAB/Whiting 1997 Agreement described in paragraph 15 below. I am aware that Plaintiffs claim that "[u]nder the 1994 Agreement, payments to BWAB were supposed to have been reduced by other **existing** burdens and encumbrances, but were not." (Plaintiffs' Brief at 19, *citing* the Bullock Declaration). Plaintiffs do not, however, dispute that the payments to BWAB for the 1994 BWAB ORRI have always been reduced by all required burdens and encumbrances existing in 1994. The only burdens and encumbrances that could possibly reduce the amount of the 1994 BWAB ORRI were those existing in 1994—not future burdens, not potential burdens, not imaginary burdens, and certainly not those created by a subsequent transferee. To the best of my knowledge, BWAB has been properly and consistently paid since at least 1997 when the parties reached agreement as to the appropriate percentage on which BWAB was to be paid in the BWAB/Whiting 1997 Agreement.

15.    During the fall of 1996, some or all of the leases comprising the Point Arguello Property were unitized into the Point Arguello Unit pursuant to a Unit Agreement dated effective October 1, 1996, between Whiting and a number of other working interest owners ("Unit Agreement"). The Unit Agreement is more fully described on page two of Exhibit 1, attached hereto. A unit agreement is an agreement pursuant to which a various number of working interest owners pool their leasehold interests together to be operated as one combined unit. Only owners of oil and gas leases are parties to such unit agreements. As a consequence of the unitization, BWAB and

8

**Exhibit
A**

Whiting negotiated the effect of that unitization on the calculation of the amounts earned by BWAB from the 1994 BWAB ORRI. Those negotiations resulted in an agreement dated June 25, 1997, which sets out in very specific detail BWAB's percentage interest in the production proceeds generated by Whiting's working interest in the Point Arguello Unit, out of which the 1994 BWAB ORRI is carved ("BWAB/Whiting 1997 Agreement"). A copy of the BWAB/Whiting 1997 Agreement is attached hereto as Exhibit 5. The information necessary for a determination and calculation of the amounts earned by the 1994 BWAB ORRI have at all times been in the possession of Whiting, Delta, or both, and not in the possession of BWAB.

16.    Following Whiting's delivery of the 1994 BWAB ORRI conveyance to BWAB, Whiting received—for the benefit of BWAB—BWAB's monthly share of proceeds from the sale of hydrocarbons (most, if not all, of which were oil) produced from the Point Arguello Properties, and delivered them directly to BWAB on a monthly basis until late in 1999 or early 2000. These sums included the royalties calculated pursuant to the BWAB/Whiting 1997 Agreement. Thereafter, presumably based upon the Purchase Agreement and Amendment (as defined in the Bullock Declaration) between Delta and Whiting, Whiting delivered such proceeds (as calculated pursuant to the BWAB/Whiting 1997 Agreement) to Delta for delivery to BWAB in the ordinary course of business. To the best of my knowledge, Whiting continues to do so. The documentation provided to BWAB by Delta confirms that the 1994 BWAB ORRI has been paid in accordance with its terms and the 1997 BWAB/Whiting Agreement and has not at any time been overpaid.

**Exhibit
A**

17.     BWAB has had no objection to such arrangement between Whiting and Delta as long as BWAB timely received its production proceeds.  BWAB was not a party to the Purchase Agreement and Amendment between Delta and Whiting.  BWAB has never released Whiting or the operator of the Point Arguello Properties from their obligations under the 1994 BWAB ORRI conveyance to pay to BWAB its share of production revenues owned pursuant to the 1994 BWAB ORRI.  If Delta continues to breach its agreement with Whiting, BWAB will pursue claims for damages against Whiting for all moneys Whiting has paid to Delta for payment to BWAB.  Further, BWAB has the right to demand of the operator to pay BWAB directly.  Delta has no say in the matter and no entitlement to any portion of the production proceeds attributable to the 1994 BWAB ORRI.  Delta's failure to pay the revenues owned by BWAB from its 1994 BWAB ORRI is a violation of the Purchase Agreement and Amendment and 1999 DELTA NOI.

18.     During the latter half of 1999, pursuant to the Purchase Agreement and Amendment, as defined by the Bullock Declaration, Delta attempted to acquire Whiting's ownership interest in the Point Arguello Properties.

19.     BWAB assisted Delta in those efforts pursuant to an Agreement dated April 29, 1999, but made effective as of April 1, 1999 ("BWAB Fee Agreement").  A copy of the BWAB Fee Agreement is attached hereto as Exhibit 6.  According to the terms of the BWAB Fee Agreement, if Delta acquired a net operating interest in the property described on Exhibit A thereto, including the Point Arguello Unit, Delta would convey to BWAB an overriding royalty interest in the Point Arguello Property

10

**Exhibit
A**

"calculated as 3% of the actual gross revenue generated from and accrued to Delta's interest." (Ex. 6 at ¶ 3(2)).

20.     Due in part to the efforts of BWAB, Delta was able to enter into the Purchase Agreement and Amendment with Whiting.  If successfully closed, the transaction as initially contemplated by Delta, Whiting and BWAB, would have resulted in Delta's acquisition of all of Whiting's legal and beneficial interest in the Point Arguello Properties, including legal title.

21.     Whiting was unable, however, to obtain the consents of the other working interest owners in the Point Arguello Properties to the transfer of Whiting's legal ownership to the property because of concerns that Delta did not have the financial strength necessary to fulfill Whiting's working interest obligations, particularly those relating to plugging and abandonment of the offshore wells and platforms.  The other working interest owners had no objection, however, if Whiting conveyed to Delta all of its ownership in the Point Arguello Properties, **except for legal title.**

22.     As a result, the Purchase Agreement and Amendment was eventually closed in December of 1999, when Whiting executed and delivered to Delta a Conveyance and Assignment dated December 1, 1999, pursuant to which Whiting conveyed what was labeled a Net Operating Interest in the Point Arguello Properties to Delta (the "1999 Delta NOI").  A copy of the 1999 Delta NOI is attached hereto as Exhibit 7. The 1999 Delta NOI states in part: "Whiting Petroleum Corporation ... does hereby grant, convey, transfer and assign to Delta Petroleum Corporation... a net operating interest (as herein defined) in, to and under the following:..." (Ex. 7 at 1-2). The term Net Operating Interest is defined in the 1999 Delta NOI as the following:

11

**Exhibit**
**A**

a.  The net operating interest ("NOI") herein conveyed and assigned is
defined as the monthly payable positive or negative cash flow resulting
to the Interests from the following eight step calculation:

(i)      oil and gas sales revenue:
(ii)     **less** royalties and **overriding royalties**:
(iii)    Less Unit lease operating expenses;
(iv)     less severance, production or ad valorem taxes, if any;
(v)      less capital expenditures;
(vi)     less Unit fees to the Unit operator; and
(vii)    plus the positive or less the negative cash flow from the
Partnerships.
(viii)   plus or minus any other miscellaneous costs or revenues
that may be related to these interests or operations....

**In the event of positive cash flow, Assignor will pay the excess to
Assignee; in the event of a negative cash flow, Assignee will pay
the deficit to Assignor.**

(Ex. 7 at 2-3, emphasis added).

23.     The parties' intended and the definition of Net Operating Interest makes

clear that Whiting retained bare legal title to the Point Arguello Properties but conveyed

all of its beneficial interest to Delta except for previously granted royalties and overriding

royalties owed to third parties such as the 1994 BWAB ORRI.

24.     On December 1, 1999, as part of the closing of the Purchase Agreement

and Amendment, Delta executed and delivered an overriding royalty interest, carved out

of its newly acquired beneficial ownership interest in the Point Arguello Properties, to

BWAB ("1999 BWAB ORRI"), pursuant to the BWAB Fee Agreement.  A true and

accurate copy of the 1999 BWAB ORRI is attached hereto as Exhibit 8.

25.     When Delta acquired the 1999 Delta NOI, I was informed that Delta and

Whiting had agreed that Delta would not record such document in any county recording

office because of Whiting's concern that its other working interest owners would

consider such action as a conveyance of legal title in violation of its agreements with

**Exhibit
A**

them. To the best of my knowledge, Delta has never recorded or filed the 1999 Delta

NOI in any county recording office.

26.    For that reason, BWAB did not record the 1999 BWAB ORRI for the

same reason that Delta did not record the 1999 Delta NOI in any county recording office.

Moreover, recording the 1999 BWAB ORRI would be ineffective because Delta's

property interest was not recorded and BWAB's recordation would merely constitute a

"wild" deed outside of the legal chain of title. Whiting was notified and made aware of

Delta's delivery of the 1999 BWAB ORRI and conveyance of part of its newly acquired

interest in the Point Arguello Properties to BWAB.

27.    Following Delta's acquisition of its interest in the Point Arguello

Properties, Whiting distributed to Delta for distribution to BWAB  monthly revenues

owned by BWAB from its 1994 BWAB ORRI and its 1999 BWAB ORRI in the ordinary

course of business.  Delta in turn timely distributed such revenues to BWAB until

September of 2012.

28.    At all times during Delta's bankruptcy proceeding, Delta treated BWAB's

overriding royalties as real property interests.  Even after Delta filed bankruptcy on

December 16, 2011, Delta continued to deliver revenues owned by virtue of BWAB's

overriding royalties to BWAB in the ordinary course of business when they were

received from Whiting.  At no time did Delta have an ownership interest in those

revenues.

29.    BWAB did not have any prepetition claim against Delta at the time of the

proof of claim bar date in March of 2012.  The only way that BWAB would have had a

**Exhibit**

**A**

claim against Delta insofar as nonpayment of monies owned by BWAB by virtue of its

1994 BWAB ORRI and 1999 BWAB ORRI are concerned, is:

a.  First, the operator of the Point Arguello Properties must produce oil or gas from the Point Arguello Properties  which is attributable to BWAB's overriding royalty property interests;

b.  Second, such oil and gas production must be sold to a purchaser;

c.  Third, the proceeds from that sale must be delivered to Whiting;

d.  Fourth, the production proceeds from the sale of oil and gas production attributable to BWAB's overriding royalty property interests would have to be delivered to Delta for delivery to BWAB, and Delta would have to not deliver such proceeds to BWAB.  At that point, BWAB would have a claim against Delta for the unpaid amount and conversion of its property.

30.    It has customarily taken about two months after production of the oil and

gas by the operator for the sales proceeds to be delivered to Whiting, and another month

for Whiting to distribute the funds to Delta and Delta to distribute the funds to BWAB.

31.    BWAB did not have any claim whatsoever against Delta, pre-petition or

post-petition, as of August 31, 2012. The last payment of production revenues by Delta

to BWAB was a check dated August 21, 2012 and received on August 27, 2012. A true

and correct copy of the check and the detail which accompanied the check are attached

hereto as Exhibit 9. Notably, the check detail confirms BWAB as "owner".

32.    If Delta had not paid the revenues it received from Whiting during the

month before its bankruptcy that were owned by and were supposed to be distributed to

BWAB, I would have instructed our attorneys to file a proof of claim in the bankruptcy

case for any unpaid prepetition amount as a pre-petition claim and to assert a claim for

conversion of its property.

33.     If Delta received any revenues from Whiting during its bankruptcy proceeding that were supposed to be distributed to BWAB but were not, I would have instructed our attorneys to take all legal steps necessary in the bankruptcy proceeding to obtain payment of such amounts from Delta and would also have notified Whiting that Delta was no longer delivering the funds owned by BWAB to BWAB for which Whiting was responsible, and would have considered taking legal action against Whiting.

34.     At no time prior to the latter part of September of 2012 did Delta or Plaintiffs ever provide notice to BWAB that they disputed the 1999 BWAB ORRI, or any amounts owned or previously paid pursuant thereto. At no time prior to January 4, 2013, when Plaintiffs filed their amended complaint in this proceeding did Delta or Plaintiffs provide notice to BWAB that they disputed the 1994 BWAB ORRI, or any amounts owned or previously paid pursuant thereto.

35.     Delta's confirmed Plan and its Disclosure Statement made no mention of BWAB's overriding royalty interests, did not indicate that BWAB's property interests were disputed, and did not deal with BWAB's property interest. At no time prior to confirmation of its Plan did Delta commence an adversary proceeding to determine the validity, extent and priority of BWAB's property interests.

36.     At no time prior to early January of 2013 did Delta or Plaintiffs provide notice to BWAB of any alleged mistake by Delta in the calculation of the amounts paid to BWAB on account of the 1994 BWAB ORRI, nor did they explain how they made such mistake or even what the mistaken calculation was. BWAB did not learn of the Plaintiff's explanation of how the supposed mistake was calculated until February 12, 2013, when Plaintiffs served BWAB with Plaintiffs' Brief.

**Exhibit**
**A**

37.    Plaintiff's delay in bringing their claim for the alleged miscalculation is prejudicial to BWAB. Having received payments under the 1994 ORRI for many years, BWAB made decisions to invest or spend those payments which it may not have otherwise made in the absence of those payments. This prejudices BWAB. Furthermore, as Plaintiffs freely admit, they no longer have "payment records for before 2002..." Bullock Dec. at ¶ 23. Had Delta timely brought its miscalculation claim, these records – which very well may show there was no miscalculation at all – may still have been available. I am also informed that John Hazlett, the Whiting Vice President with whom I negotiated the 1994 BWAB ORRI and who signed the document on behalf of Whiting passed away sometime last summer or fall. That BWAB must now defend against the miscalculation claim in the absence of these records and without John Hazlett's testimony prejudices BWAB. In order for BWAB to properly defend these latest allegations concerning the recently-discovered so-called "mistake," it will be necessary to obtain testimony and documents from both Whiting and Plaintiffs. In addition, in the unlikely event that it is determined that there has been an overpayment, BWAB requires a reasonable opportunity to obtain the documents upon which Plaintiffs claim to be calculating their damages because such information is uniquely in the hands of Plaintiffs and/or Whiting. BWAB is seeking these documents through its pending discovery requests.

38.    At no time did BWAB participate in Delta's bankruptcy proceeding prior to being sued in this action because it had no reason to.

16

I declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge, information and belief, and after reasonable inquiry, the foregoing is true and correct.

Dated:          March 8, 2013
                Denver, Colorado


                                        Steven Roitman
                                        *Sole Managing Member of*
                                        *BWAB Limited Liability*
                                        *Company*

17

# **Exhibit 1**

My Commission Expires: February 28, 2003

                    s/Jean E. Solot
                    Notary Public

## EXHIBIT "A"
## POINT ARGUELLO FIELD
### Offshore California

Attached to and made a part of that certain CONVEYANCE AND ASSIGNMENT between Whiting Petroleum Corporation, Assigor, and Delta Petroleum Corporation, Buyer, effective April 1, 1999.

I.

All of Seller's right, title and interest in and to the following described partnerships:

1. Partnership Agreement-Point Arguello Pipeline Company dated August 2, 1984; Partnership Interest 5.8036%.

2. Partnership Agreement-Point Arguello Natural Gas Company dated September 1, 1984; Partnership Interest 6.0652%

3. Partnership Agreement for Ownership of Facilities- Gaviota Gas Plant Company dated October 1, 1984; Partnership

            Interest 5.7013%

        II.

| PROPERTY NAME | WORKING INTEREST | NET REVENUE INTEREST |
|---|---|---|
| Point Arguello Unit | .06065210 | .04842500 |

All of Seller's right title and interest in and to the leasehold estate created by the following described oil and gas leases:

A. Oil and Gas Lease dated July 1, 1981 from Bureau of Land Management to Chevron U.S.A. Inc. and Phillips Petroleum Company bearing Serial No. OCS-P 0451

## INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING DESCRIBED LAND:

The W/2 of Block 465, All that portion seaward of the three geographical mile line, OCS Official Protraction Diagram Nl 10-6 Santa Maria (CA 3- 1055).

B. Oil and Gas Lease dated September 1, 1979 from Bureau of Land Management to Chevron U.S.A. Inc., Phillips Petroleum Company, Champlin Petroleum Company and ICI Delaware Inc. bearing Serial No. OCS-P 0316.

**INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING DESCRIBED LAND:**

All of Block 55N-84W, OCS Leasing Map, Channel Island Area, CAL-Map No. 64 (CA 300316).

**WELLS:**

A-1, A-2, A-3, A-4, A-5, A-6, A-7, A-8, A-9, A-10, A- 11, A-12, A-13, A-14, A-15, A-16, A-16WB01, A-17, A-18, A-18WB01, A-19, B-1, (B-1WB-1, B-2, B-2WB01, B-3, B-6, B-8, B-9, B-9WB01, B-10, B-11, B-12, B-13, B-14, B-15, B-16, B-17, B-18, C-1, C-2, C-3, C-4, C-5, C-7, C-8, C- 9, C-10 and C-11.

Subject to the following:

a. Offset Development and Well and Linewell Agreement dated September 12, 1988 between Chevron, Phillips and Union Pacific Corp.;

b. Unit Agreement for Outer Continental Shelf Exploration, Development and Production Operations on the Point Arguello Unit dated effective October 1, 1996 between Chevron U.S.A., operator and Phillips Petroleum, Whiting Petroleum, Texaco Exploration and Production, Sun Operating Limit Partnership, Pennzoil Exploration and Production, Koch Industries, and Oxbow Energy parts of Blocks 5rN-84W and 55N-85W, Channel Island Area and Parts of Blocks 464 and 465, Santa Maria Basin Area, Offshore, California.

c. Unit Operating Agreement Point Arguello Unit, Pacific Offshore, California, dated effective October 1, 1996 between Chevron U.S.A. Inc., Phillips Petroleum Company, Whiting Petroleum Corporation, Texaco Exploration and Production Inc., Sun Operating Limited Partnership, by Oryx Energy Company, its Managing General Partner, Pennnzoil Exploration & Production Company and Oxbow Energy, Inc.

# **Exhibit 2**



July 28, 1994

BWAB Incorporated
ATTN:  Mr. Randall C. Roulier
          Mr. Steven A. Roitman
475 Seventeenth Street, Suite 1600
Denver, Colorado  80202

Re:    Acquisition of Union Pacific Resources Corp.
         Interest In Point Arguello Field, Off-
         shore Santa Barbara, CA
         Landa Unit, Bottineau County, ND
         Carlsbad Field, Eddy County, NM
         Panhandle Field, Wheeler County, TX
         House Creek Unit, Campbell County, WY
         West Prong Creek, Crook County, WY

Gentlemen:

    This Letter Agreement between BWAB Incorporated ("BWAB") and Whiting
Petroleum Corporation ("Whiting") covers the acquisition of certain oil and gas
interests from Union Pacific Resources Corp. ("UPRC"). In connection therewith, the
parties hereto agree that, pursuant to that certain Letter Agreement dated July 13,
1994, and attached as Exhibit "A", by and between BWAB and UPRC ("UPRC Letter
Agreement"), BWAB acquired the option to purchase all of UPRC's right, title and
interest in certain oil and gas leases, wells and associated personal properties and
fixtures, including pipelines and gas/oil plant (collectively, the "Properties") located
onshore and in federal waters offshore California, North Dakota, New Mexico, Texas
and Wyoming.  The parties hereto desire to formalize their agreement regarding the
transfer of the Option (hereinafter defined) to acquire the Properties from UPRC as
follows:

    1.    The effective date of this Letter Agreement shall be January 1, 1994.

**WHITING PETROLEUM CORPORATION**
MILE HIGH CENTER, 1700 BROADWAY, SUITE 2300, DENVER, COLORADO 80290-2301   (303) 837-1661   FAX (303) 861-4023
4804 REPUBLIC TOWERS II, 325 N. ST. PAUL ST., DALLAS, TX 75201   (214) 741-1650   FAX (214) 220-3940         DEF 00008

An IES INDUSTRIES Company



BWAB Incorporated
July 28, 1994
Page 2

2.    BWAB hereby grants, assigns, conveys and transfers to Whiting, one hundred percent (100%) of BWAB's option (the "Option") acquired pursuant to the UPRC Letter Agreement. In consideration of the conveyance by BWAB to Whiting of all the rights of BWAB in and to the option, and in further consideration of the on going evaluation and consultation services to be provided by BWAB, Whiting does hereby agree to: (i) acquire the Properties pursuant to Exhibit "A"; (ii) reimburse BWAB for its finder's fee to John Atencio and its Ryder Scott and George Straughn engineering costs to a maximum of $225,000; (iii) grant BWAB an option until September 30, 1994 to acquire, effective January 1, 1994, up to an undivided 25% of the Properties from WPC for a purchase price based on $5,750,000 for 25%; and, (iv) to assign to BWAB, by October 15, 1994, but effective January 1, 1994, at BWAB's option: (a) an undivided 6.5% of the net rights acquired by Whiting in the Properties after the exercise of BWAB's option; or, (b) a proportionately reduced 3.5% overriding royalty interest out of the net revenue interest acquired by Whiting after the exercise of BWAB's option, in either case (a) or (b) by an assignment in recordable form and containing warranties of title by, through and under Whiting, but not otherwise.

3.    Notwithstanding that the rights and liabilities of the parties hereunder shall be several and not joint or collective or that this agreement and all activities hereunder shall not constitute a partnership, the parties agree that this agreement results in a partnership for United States Federal Income Tax purposes. The parties agree not to elect to be, or have the arrangement evidenced hereby excluded from, the application of all or any part of Sub-chapter K of Chapter I of Sub-title A of the Internal Revenue Code of 1986, as amended, or similar provisions of any applicable United States state law. Whiting shall cause annual returns to be prepared with regard to the tax partnership and will provide BWAB with all returns and reports filed by it with the Internal Revenue Service in connection therewith. BWAB shall reimburse Whiting for all costs incurred by it in connection with the preparation and filing of such returns and reports.

4.    Whiting shall receive all net revenues payable by the operator of all purchases of production from the Properties and attributable to the interest of BWAB and BWAB agrees to execute such division orders, transfer orders or other agreements as may be required by the operator or any purchasers of the oil, gas or other hydrocarbons produced from the Properties to effect the payment of all revenues accruing to BWAB's interest to Whiting. Within fifteen days after receipt by Whiting of such revenues from the operator or purchasers of production, Whiting will pay and account monthly to BWAB for its net share of revenues after the deduction of all expenses, capital costs and taxes deducted by the operator or paid by Whiting.



**Exhibit
A**

DEF 00009

BWAB Incorporated
July 28, 1994
Page 3

5.     If in the future, there is a:  (i) change in the management of Whiting; or (ii) Whiting is late in its payments to BWAB on three consecutive occasions BWAB may elect to have its net share of revenues paid directly to it by the operator or the purchasers of production from the Properties.  A change in management of Whiting will be deemed to occur when David A. Frawley, the President of Whiting, ceases to be President.  Whiting will use its best efforts to cause such direct payments.

6.     It is understood that BWAB may elect to have its undivided 6.5% interest or its proportionately reduced 3.5% overriding royalty interest earned under paragraph 2 herein conveyed to another BWAB affiliate, or to a non-affiliated third party.  In the event of an assignment to a non-affiliated party Whiting shall have a preferential right to purchase under the same price, terms and conditions, offered by the non-affiliated third party.  BWAB's option to acquire an undivided 25% interest in the Properties granted under paragraph 2 herein may be assigned without a preferential right to Whiting.

7.     Whiting shall provide to BWAB and BWAB's employees, agents, officers and directors (or any other designated representative of BWAB) full access, during all business hours throughout the term of this Letter Agreement, originals or copies of all of the files, correspondence, contracts, commitments, data printouts, computer software, accounting records, land records and legal materials relating to the interests and specifically the BWAB interest, which shall include any documents or files created or executed after the date hereof, as well as all contracts, understandings and agreements by and between Whiting and UPRC.

8.     By October 14, 1994, Whiting shall deliver BWAB, at BWAB's option, in cash an amount equal to 6.5% of all net revenue (after all expenses and capital costs), or 3.5% of the revenues attributable to the net revenue interests of UPRC after applicable production and ad valorem taxes, with regard to the net interests (i.e. after any exercise of BWAB's option) received by Whiting at the closing from UPRC, which is attributable to the period from the effective date through the closing.

9.     Whiting represents and warrants that it is a corporation formed under the laws of the State of Delaware, and is in good standing and has all requisite authority to enter into this Letter Agreement and this Letter Agreement has been duly executed by Whiting.

10.     This letter shall be binding upon and shall inure to the benefit of the successors and assigns of BWAB and Whiting and shall be governed by, construed and enforced in accordance with the laws of the State of Colorado.  Venue for any action brought or maintained to enforce or interpret this Letter Agreement shall lie with the City and County of Denver, Colorado.



**Exhibit
A**

DEF 00010

BWAB Incorporated
July 28, 1994
Page 4

If this Letter Agreement conforms to your understanding of our agreement, please execute in the space provided below.

This Letter Agreement shall be null and void if an executed copy is not received by Whiting by 5:00 p.m. July 30, 1994.

Very truly yours,

WHITING PETROLEUM CORPORATION

By: _David A. Frawley_
David A. Frawley, President

11:40 Am    ACCEPTED AND AGREED TO THIS
__30th__ DAY OF JULY, 1994.

BWAB INCORPORATED

By: _Randall C. Roulier_
Signature of Authorized Officer

_Randall C. Roulier_
Printed or Typed Name of Authorized Officer

_President_
Title

JJV/glv:BWAB.L03/JJV805

ATTACHMENT



**Exhibit
A**

DEF 00011

FROM                                    1994  7-28    14:42    #641 P.02/07

**BWAB INCORPORATED**

July 13, 1994

Mr. W.M. Searcy
Manager of Acquisitions
Union Pacific Resources Company
P.O. Box 7
Fort Worth, Texas 76101-0007

RE: Revised Proposal for Purchase of Certain Assets

Dear Mr. Searcy:

BWAB Incorporated and/or its Assigns ("BWAB") hereby offers Twenty-Two Million
Seven Hundred Fifty Thousand Dollars ($22,750,000) to purchase all property
interests, assets and rights owned by Union Pacific Resources Company ("UPRC")
in the oil and gas leases, wells, and related production facilities in the
following areas: Landa, North House Creek, Carlsbad East, Panhandle-Wheeler,
Prong Creek (non-operated), Point Arguello and Rocky Point. Such interests,
assets and rights shall specifically include the wells/facilities listed on
Exhibit A attached hereto.

BWAB's offer assumes an effective date for such a sale of January 1, 1994 and
purchase by BWAB by ~~August 31,~~ *September 15,* 1994. Any such purchase by BWAB shall include any
surface rights, all contractual rights, wells, oil and gas pipelines, treating
and compressor facilities and all other real and personal properties and fixtures
appurtenant thereto or used in connection therewith which are currently owned by
UPRC in subject areas, including royalty and overriding royalty interests.

BWAB's offer to purchase said interests and rights is conditioned upon:

1.    UPRC having good and marketable title to said property interests,
assets and rights to the reasonable satisfaction of BWAB specifically
including the determination that the assets are free of material title
defects, claims, encumbrances or contingent liabilities.

2.    Agreement between BWAB and UPRC regarding the establishment of an
appropriate time period after closing during which financial adjustment to
the purchase price can be made for environmental liabilities attributable
to the period before BWAB acquires ownership of the property interests and
assets.  BWAB is agreeable to a "basket" or "deductible" approach on the
Point Arguello and Rocky Point properties whereby BWAB will be responsible
for the first $500,000 layer of any such liabilities which are identified
at any time within three years after the closing of this purchase and sale
transaction and UPRC shall bear responsibility for any excess liability.
Liabilities identified after that time shall be the sole responsibility of
BWAB.  On all of the other properties to be purchased, BWAB will agree
that it must identify any environmental liabilities attributable to UPRC's
ownership of such properties within six months after closing; the "basket"
concept described above shall not apply to the properties and related pre-
ownership liabilities.

3.    BWAB and UPRC finalizing negotiations regarding the sharing/
participation by UPRC in potential "upside" at the Point Arguello field.
Both parties agree that the underlying theory of the "upside" sharing
arrangement is that UPRC's participation will be based on a percentage

**Exhibit**

DEP 00001

FROM :                                                          1994  7-28    14:43    #641 P.03/07



the excess cash flow  over the amounts indicated on the schedule attached hereto as Exhibit "B", which schedule was derived from the Ryder Scott Report "Case 5" dated June 9, 1994.  The sharing will be based on the actual net cash flow from Point Arguello field, including any future development wells, but after consideration of workover and capital expenditures, in excess of the cumulative projected cash flows pursuant to the attached schedule.  Payments will be made on an annual basis and UPRC will be entitled to 25% of the excess cash flow until BWAB has received $17,500,000 and 50% of excess cash flow thereafter; however, this "upside" sharing arrangement shall be limited to a five year period of time.

4.    The completion of an environmental review of the Point Arguello and Rocky Point properties within three weeks of the execution of this letter agreement, which review shall be acceptable to BWAB.  The review shall be conducted by a firm mutually acceptable to both UPRC and BWAB and shall be at the sole expense of BWAB.

5.    UPRC's and BWAB's respective final Board of Director approvals.

This offer is also expressly conditioned on the negotiation and execution of a mutually acceptable Purchase & Sale Agreement and closing pursuant to the terms of such Purchase & Sale Agreement on or before August 31, 1994, unless additional time is needed to comply with the rules, regulations, laws and acts of governmental bodies (to include Hart-Scott Rodino Act) or unless additional time is needed under controlling joint operating agreements or other similar arrangements.  BWAB agrees to deposit $750,000 upon execution of the Purchase & Sale Agreement which shall be non-refundable if the transaction does not close due to BWAB's failure to perform in accordance with such Agreement.

UPRC agrees that the above stated purchase price and the other terms of this transaction are confidential, and further agrees not to disclose or cause to be disclosed such purchase price or said terms to any third party except for such disclosures as may be required by law or required to notify parties possessing rights of first refusal.

Unless revoked in writing prior thereto, this offer shall expire on July 15, 1994 at 5:00 P.M. Central Time, unless by that time an original of this letter, properly executed in the space provided below by an appropriate representative of UPRC, has been delivered at the letterhead address.

If you have any questions concerning this purchase offer, please call us at (303) 295-7444.

Very truly yours,

BWAB INCORPORATED

BY _____
    Randall C. Roulier
    President

AGREED AND ACCEPTED TO THIS _____ DAY OF ~~JUNE~~ JULY, 1994 ON BEHALF OF UNION PACIFIC RESOURCES COMPANY

BY _____  KPF

TITLE _Vice President - Corporate Development_

                                    Exhibit
                                      A

DEF 00002

FROM :                      T    ) '                    1994.    )28    14:43    #641 P.04/07

EXHIBIT "A"

```
*******************************************************************************
PROPERTY                                              GWI        NRI
*******************************************************************************
LANDA MADISON UNIT - BOTTINEAU, ND              0.9000000   0.7285950
-------------------------------------------------
CLEVN ET 1 44-27
CLEVN A 11-35
CLEVN B 1X 42-34
GRANN ET 1 33-27
THOMPSON 2A 22F-34
THOMPSON A 31-34
THOMPSON 11-34 #5
THOMPSON 4X
TRELSTAND 1 24-27
TRELSTAND 2 13-27
```

*Grana Co. Sec.28  163N, 74W SESE GeoResources 12.2437 WI 9. 1825%*

```
E. CARLSBAD FIELD - EDDY, NM
-------------------------------------------------
TOOTHMAN GAS COM                                0.9619700   0.7542200
PECOS FED                                       0.8127800   0.6736700
STATE 36 1                                      1.0000000   0.8750000
STATE 36 2                                      1.0000000   0.8750000
NIX YATES                                       0.8127500   0.6175900
REEVES FED 1                                    1.0000000   0.8450000
REEVES FED 2                                    1.0000000   0.6450000
WILSON GAS COM.                                 0.8127800   0.6766500
BJ GARNER                                       0.9965400   0.8403000
BAUMGARTNER FED COM 1                           0.2500000   0.2187500
GOVT AD LEASE                             TO BE DETERMINED   ALL RIGHT TITLE & INTEREST
GOVT AE LEASE                             TO BE DETERMINED   ALL RIGHT TITLE & INTEREST
ELIZANDO A FEDERAL                        TO BE DETERMINED   ALL RIGHT TITLE & INTEREST
```

*HUNKER Com. 1  Sec. T21S - 27E*

*.7.1826*

```
PANHANDLE FIELD - WHEELER COUNTY, TX
-------------------------------------------------
WILLIAMS GW 10A                                 1.0000000   0.8750000
WILLIAMS GW 11                                  1.0000000   0.8750000
WILLIAMS GW 12                                  1.0000000   0.8750000
WILLIAMS GW 14                                  1.0000000   0.8750000
WILLIAMS GW 6                                   1.0000000   0.8750000
WILLIAMS GW 7                                   1.0000000   0.8750000
WILLIAMS GW 8                                   1.0000000   0.8750000
IDES 1                                          1.0000000   0.8750000
IDES 2                                          1.0000000   0.8750000
IDES 3                                          1.0000000   0.8750000
```

**Exhibit**
**A**

DEF 00003

EXHIBIT "A"

****************************************************************************************************
PROPERTY                                                      GWI          NRI
****************************************************************************************************
PRONG CREEK - CROOK COUNTY, WY
----------------------------------------------------------------
DAVIS SCHURICHT                                    TO BE DETERMINED      ALL RIGHT TITLE & INTEREST
LANGSDORF                                          TO BE DETERMINED      ALL RIGHT TITLE & INTEREST
SCHURICHT #11-7    NW NW 7 50N 67W                 TO BE DETERMINED      ALL RIGHT TITLE & INTEREST


PRONG CREEK WEST RECOVERY UNIT - CROOK COUNTY, WY        .0.1236444    0.0994389
----------------------------------------------------------------
WEST PRONG FED 1-35    N6 INJ
WEST PRONG FED 2-35
WOOD 1-35    INJ
WEST PRONG FED 3-35
WEST PRONG FED 5-35
WEST PRONG FED 6-35


HOUSE CREEK FIELD - CAMPBELL COUNTY, WY
----------------------------------------------------------------
NORTH HOUSE CREEK UNIT                             0.0453820    0.0380350


**Exhibit
A**

DEF 00004

EXHIBIT "A" CONTINUED

POINT PEDERNAL OPERATING AGREEMENT
SCHEDULE OF OWNERSHIP OF OIL AND GAS INTERESTS

| Tract Number | Description of Land | Number of Acres | Lease Serial Number | Primary Term Expiration Date of Lease | Basic Royalty Owner and Royalty | Lessee of Record and Lease Working Interest Percentage | Overriding Royalty Owner and Gross (Net) Percentage |
|---|---|---|---|---|---|---|---|
| 1. | Block 6XXX(E/W) O.P.D. NI 10-6, Santa Maria | 1,337.94 | OCS-P 0847 | 06/20/86 | USA 16-2/3% | Chevron Phillips | 20% 30% | None |
| 2. | Block 821 O.P.D. NI 10-6, Santa Maria | 1,574.59 | OCS-P 0848 | 06/20/86 | USA 16-2/3% | Chevron Phillips | 30% 30% | None |
| 3. | Block 862 (E/2) O.P.D. NI 10-6, Santa Maria | 2,193.13 | OCS-P 0851 | 06/20/86 | USA 16-2/3% | Chevron Union Pacific | 22,245% 22,245% 11.1125% | None |
| 4. | Block 866 O.P.D. NI 10-6, Santa Maria | 4,016.11 | OCS-P 0852 | 06/20/86 | USA 16-2/3% | Chevron Phillips Union Pacific | 22,245% 22,245% 11.1125% | None |
| 5. | Block 867 O.P.D. NI 10-6, Santa Maria | 2,129.10 | OCS-P 0853 | 06/30/86 | USA 16-2/3% | Chevron Phillips Union Pacific | 1.1125% | None |
| 6. | Block 534-E/W Man NI 10-6 | 4,285.03 | OCS-P 1117 | 02/22/83 | USA 16-2/3% | Phillips | 100% | None |
| 7. | Block 534-E/W Man NI 10-6 | 1,923.30 | OCS-P 0318 | 02/18/83 | USA 16-2/3% | Phillips | 100% | None |
|  | Total | 17,524.15 |  |  |  |  |  |

PIPELINE INTERESTS

| | | |
|---|---|---|
| SAPCO OIL PIPELINE AND PLANT | 5.8 = | |
| PANCL GAS PIPELINE | 6.07 = | |
| HARPOON PIPELINE COMPANY | 23.62 = | |
| GAVIOTA GAS PLANT | 5.7 = | |

Point Arguello Leases:

Tract P0316        20%        1/6 Royalty
Tract P0461     11.1125%      1/6 Royalty
Tract P0462     11.1125%      1/6 Royalty

Exhibit
A

DEF 00005

# EXHIBIT "B"

TO LETTER AGREEMENT DATED JUNE 27, 1994
BY AND BETWEEN
BWAB INCORPORATED AS BUYER AND
UNION PACIFIC RESOURCES COMPANY AS SELLER

| YEAR | NET CASH FLOW - POINT ARGUELLO FIELD | |
| --- | --- | --- |
| | ANNUAL | CUMULATIVE |
| 1994 | $ 7,998,355 | $ 7,998,355 |
| 1995 | 4,652,643 | 12,650,998 |
| 1996 | 3,874,561 | 16,525,549 |
| 1997 | 3,771,419 | 20,296,968 |
| 1998 | 2,803,125 | 23,100,093 |

# Exhibit 3

WHEN RECORDED RETURN TO:

BWAB Limited Liability Company
475 17th Street
Suite 1600
Denver, Colorado 80202-4026

95-004'~¢         | Rec Fee      26.00
                  | AU2           2.00
    Recorded      | Check        28.00
 Official Records |
    County of     |
  Santa Barbara   |
 Kenneth A Pettit |
    Recorder      |
 8:02am 25-Jan-95 |   PUBL    BF    8

FEB 03 1995

## ASSIGNMENT OF OVERRIDING ROYALTY

THIS ASSIGNMENT made and entered into this 16 day of December, 1994, between WHITING PETROLEUM CORPORATION, a Delaware corporation, whose address is 1700 Broadway, Suite 2300, Denver, Colorado 80290-2301 ("Whiting"), and BWAB LIMITED LIABILITY COMPANY, a Colorado limited liability company, whose address is 475 Seventeenth Street, Denver, Colorado 80202 ("BWAB"):

### RECITALS

A.    Whiting, as Buyer, has entered into a certain Asset Purchase and Sale Agreement with Union Pacific Resources Company ("UPRC"), as Seller, dated October 6, 1994, as supplemented by a letter agreement dated October 6, 1994, and amended by an Amendment to Asset Purchase and Sale Agreement dated November 4, 1994 (as supplemented and amended, the "UPRC Agreement"). In the UPRC Agreement, UPRC agreed to sell and Whiting agreed to buy certain producing, non-producing, and undeveloped oil and gas properties, including the Leases, Wells, and Units which are described on Exhibit A attached hereto and made a part hereof. The Leases, Wells, and Units described on Exhibit A are referred to herein as the "Subject Properties."

B.    The conveyances and assignments of interests from UPRC and Whiting contemplated by the UPRC Agreement are effective as between those parties as of 7:00 a.m. local time with respect to such interests on January 1, 1994 (the "Effective Date").

C.    Whiting and BWAB Incorporated entered into a certain Letter Agreement dated July 28, 1994, and amendments to Sections 2(iv), 8, and 2(iii) thereto (the "Letter Agreement"), in anticipation of the transactions contemplated by the UPRC Agreement. BWAB has succeeded to the interests of BWAB Incorporated under the Letter Agreement. The Letter Agreement gives BWAB certain alternative means of participation in the properties which are the subject of the UPRC Agreement. BWAB has elected to acquire a 3.5 percent overriding royalty interest, subject to certain third party costs, in the net revenue interests attributable to the Subject Properties as provided herein.

NOW, THEREFORE, for Ten Dollars and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Whiting and BWAB agree as follows:

012\67806.5

**Exhibit
A**

DEF 00020

1.   <u>Assignment of Interest.</u>  Whiting does hereby grant, convey, assign, set over and deliver to BWAB an overriding royalty consisting of an undivided Three and One-Half Percent (3.5%) interest in Whiting's Net Revenue Interest from the Subject Properties, to be determined as set forth below.  As used herein, the term "Net Revenues" to the BWAB Interest shall mean the difference between (A) the gross revenues received by Whiting from the sale of its fractional or percentage share of Hydrocarbons from the Subject Properties, after the deduction of all lessors royalties, overriding royalties, and other burdens and payments out of gross production that burden Whiting's fractional or percentage share, and (B) the sum of Whiting's fractional or percentage share of third party (i) transportation expenses, (ii) treatment and processing expenses,  (iii) compression expenses, and (iv) severance taxes, occupation taxes, and other like taxes based on the production of Hydrocarbons.  The deductions set forth in items 1(B)(i), (ii), (iii), and (iv) will not include expenses or tariffs charged by the Point Arguello Pipeline Company (PAPCO), the Point Arguello Natural Gas Line Company (PANGL), Gaviota Gas Plant Company (GGP) or by Whiting or its Affiliates.  As used herein the term "Hydrocarbons" shall mean crude oil, natural gas, casinghead gas, coalbed methane, condensate, helium, sulphur, $SO_2$, $CO_2$, natural gas liquids, and other gaseous and liquid hydrocarbons or any combination thereof.  The interest conveyed and assigned to BWAB in this paragraph 1 is referred to herein as the "BWAB Interest."

2.   <u>Payment.</u>  It is intended that Whiting will receive the full fractional or percentage share acquired by Whiting from UPRC of all net revenues payable by the operator(s) of the Subject Properties and by the purchaser(s) of production from the Subject Properties.  BWAB agrees to execute such division orders, transfer orders, and other agreements and instruments as may reasonably be required by any such operator or purchaser to effect payment of all such revenues to Whiting.

   a.   Payment has been made to BWAB for the BWAB Interest with respect to the Subject Properties for the period from the Effective Date through August 31, 1994, concurrently with the execution hereof.  BWAB acknowledges receipt of such payment.

   b.   On or before the 15th day of each calendar month commencing January 15, 1995, Whiting shall remit to BWAB, at the address set forth above, BWAB's Interest attributable to the Subject Properties as to revenues received by Whiting prior to the 25th day of the prior calendar month.  (The payment due January 15, 1995, shall cover revenues received by Whiting during the period September 1, 1994, through December 25, 1994.)

   c.   Paragraph 2(b) above notwithstanding, BWAB shall have the right to require, where practicable, direct payments to BWAB by the operator(s) or purchaser(s) if (i) David A. Frawley is no longer the President of Whiting, or (ii) Whiting

012\67806.5

2

DEF 00021

is late in making payments to BWAB under Paragraph 2(b) for three consecutive months.

3.    Inspection.  BWAB and its authorized employees, agents and consultants shall have the right, at BWAB's cost and expense, during normal office hours and on reasonable notice, to inspect, audit and copy all records of Whiting relating to the Subject Properties and the determination of Net Revenues attributable thereto.

4.    Preferential Right of Purchase.  Whiting shall have a preferential right of purchase as to the BWAB Interest, or any portion thereof, which preferential right of purchase shall apply to all the transfers, assignments or conveyances by BWAB other than transfers, assignments or conveyances to a BWAB Affiliate.  If at any time, BWAB shall receive a bona fide offer from a third party to purchase the BWAB interest, or any part thereof, which offer BWAB desires to accept, BWAB shall promptly deliver a full and complete copy of such offer to Whiting.  Whiting may, at any time, within five (5) business days following receipt of such offer, elect to purchase the BWAB Interest, or such portion thereof, on the same terms and conditions as set forth in such offer.  If Whiting does not elect to purchase the BWAB Interest, or such portion thereof, within the specified period, BWAB shall be free for a period of sixty (60) days thereafter to accept the third-party offer.  BWAB shall simultaneously provide Whiting with a copy of any offer made by BWAB to a third party (other than an Affiliate) to sell, transfer, assign, or convey the BWAB Interest, or any part thereof, and Whiting shall have the same preferential right of purchase as if such offer were an acceptable offer made to BWAB by such third party.  If an acceptable third-party offer to BWAB, or an offer by BWAB, shall include property in addition to the BWAB Interest, or any portion thereof, the purchase price for the BWAB Interest, or such portion thereof, shall be that part of the purchase price set forth in such offer which the value of the BWAB Interest, or such portion thereof, shall bear to the value of all of the property subject to such offer.  As used in this paragraph, the term "Affiliate" shall mean a corporation or other entity that controls, is controlled by, or is under common control with BWAB.

5.    Powers Reserved to Whiting.  Whiting reserves to itself both power and right, at its option, to pool or combine the Subject Properties, or any part thereof, with other properties, leases, wells, and units.

6.    Special Warranty of Title.  Whiting warrants title to the BWAB Interest herein conveyed as against all persons claiming by, through or under Whiting, but not otherwise.

7.    Tax Partnership.  Notwithstanding that the rights and liabilities of the parties hereunder shall be several and not joint or collective or that this assignment and all activities hereunder shall not constitute a partnership, the parties agree that this agreement results in a partnership for United States Federal Income Tax purposes.  The

Exhibit
A

DEF 00022

parties agree not to elect to be, or have the arrangement evidenced hereby excluded from, the application of all or any part of Sub-chapter K of Chapter I of Sub-title A of the Internal Revenue Code of 1986, as amended, or similar provisions of any applicable United States state law.  Whiting shall cause annual returns to be prepared with regard to the tax partnership and will provide BWAB with all returns and reports filed by it with the Internal Revenue Service in connection therewith.  BWAB shall reimburse Whiting for all costs incurred by it in connection with the preparation and filing of such returns and reports.

        8.    <u>Further Assurances</u>.  Whiting and BWAB agree to execute and deliver such other and additional instruments and documents as may reasonably be required to effectuate the understandings set forth herein.

        9.    <u>Successors</u>.  This agreement shall be binding upon and inure to the benefit of the successors and assigns of the parties hereto.

        10.    <u>Governing Law</u>.  This agreement shall be governed by and construed in accordance with the laws of the State of Colorado.

        IN WITNESS WHEREOF, the parties hereto have caused this Assignment to be executed on the date set forth above.

WHITING PETROLEUM CORPORATION,
A Delaware corporation

By _John R Hazlett_____
    John R. Hazlett, Vice President -  Land

BWAB LIMITED LIABILITY COMPANY,
A Colorado limited liability company

By_Randall C. Roulier_____
    Randall C. Roulier, Manager

DEF 00023

STATE OF COLORADO )
                 : ss.
COUNTY OF Denver

    The foregoing instrument was acknowledged before me this 16th day of December, 1994, by John R. Hazlett, the Vice President, of Whiting Petroleum Corporation, a Delaware corporation.

                                                       
NOTARY PUBLIC
Residing at:    GLORIA L. VASQUEZ
                  1700 BROADWAY, SUITE 2300
                  DENVER, COLORADO 80290-2301

My Commission Expires:
MARCH 02 1995

STATE OF COLORADO        )
                           : ss.
COUNTY OF DENVER    )

    The foregoing instrument was acknowledged before me this 16th day of December, 1994, by Randall C. Roulier, the Manager of BWAB Limited Liability Company, a Colorado limited liability company.

                                                         
NOTARY PUBLIC
Residing at:    Judith K. Dayton
                  1700 Broadway, Suite 2300
                  Denver, CO  80290
My Commission Expires:      My Commission Expires October 31, 1998
10/31/98

Exhibit
A

DEF 00024

EXHIBIT "A"
POINT ARGUELLO FIELD
Offshore California

Attached to and made a part of Assignment of Overriding Royalty between WHITING PETROLEUM CORPORATION, Assignor, and BWAB LIMITED LIABILITY COMPANY, Assignee, dated this 16th day of December, 1994.

I.

Well Name

OCS P-0452 - No Wells Committed
                to Rocky Point Unit

Lease

A.  Oil and Gas Lease dated July 1, 1981 from Bureau of Land Management to Chevron U.S.A. Inc. and Phillips Petroleum Company, bearing Serial No. OCS-P 0452

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING DESCRIBED LAND:

Block 466, All that certain portion seaward of the three geographical mile line, OCS Official Protraction Diagram NI 10-6, Santa Maria.

Subject to the following:

a.  Unit Operating Agreement dated February 1, 1985 between Chevron, operator and  Phillips and Champlin as non-operators covering the Rocky Point Unit;

b.  Unit Agreement dated February 1, 1985 between Chevron, operator and Phillips and Champlin as non-operators, covering the Rocky Point Unit;

c.  Letter Agreement dated February 6, 1985 between Chevron, Champlin and Phillips amending the Unit Operating Agreement.

DEF 00025

**II.**

<u>Well Name</u>

**OCS P-0451 - Well C-7**
**OCS P-0451 - Well C-8**
**OCS P-0451 - Well B-7**

<u>Lease</u>

A.    Oil and Gas Lease dated July 1, 1981 from Bureau of Land Management to Chevron U.S.A. Inc. and Phillips Petroleum Company bearing Serial No. OCS-P 0451

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING DESCRIBED LAND:

Block 465, All that portion seaward of the three geographical mile line, OCS Official Protraction Diagram NI 10-6, Santa Maria.

<u>Subject to the following:</u>

a.    Offset Development Well and Linewell Agreement dated September 12, 1988 between Chevron, Phillips and Union Pacific Corp.;

b.    Unit Operating Agreement dated February 1, 1985 between Chevron, operator and Phillips and Champlin, as non-operators, covering the Rocky Point Unit;

c.    Unit Agreement dated February 1, 1985 between Chevron, Phillips and Champlin covering the Rocky Point Unit;

d.    Letter Agreement dated February 6, 1985 between Chevron, Champlin and Phillips amending the Unit Operating Agreement of Rocky Point Unit.

DEF 00026

III.

<u>Well Name</u>

**OCS P-0316
Wells B-1, B-2, B-3, B-4, B-5, B-6,
B-8, B-9, B-10, B-11, B-12, B-13**

Hermosa Platform

<u>Lease</u>

A.  Oil and Gas Lease dated September 1, 1979 from Bureau of Land Management to Chevron U.S.A. Inc., Phillips Petroleum Company, Champlin Petroleum Company and ICI Delaware Inc. bearing Serial No. 003-P 0316

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING DESCRIBED LAND:

All Block 55N-84W, OCS Leasing Map, Channel Island Area, CAL-Map No. 64.

<u>Subject to the following:</u>

a.    Operating Agreement dated July 1, 1979 between Chevron, operator and Phillips and Champlin as non-operators, covering all of Block 55 N-84W and the Hermosa Platform;

DEF 00027

# Exhibit 4

MMS Filing

## ASSIGNMENT OF OVERRIDING ROYALTY

THIS ASSIGNMENT made and entered into this _16_ day of December, 1994, between WHITING PETROLEUM CORPORATION, a Delaware corporation, whose address is 1700 Broadway, Suite 2300, Denver, Colorado 80290-2301 ("Whiting"), and BWAB LIMITED LIABILITY COMPANY, a Colorado limited liability company, whose address is 475 Seventeenth Street, Denver, Colorado 80202 ("BWAB"):

### RECITALS

A.    Whiting, as Buyer, has entered into a certain Asset Purchase and Sale Agreement with Union Pacific Resources Company ("UPRC"), as Seller, dated October 6, 1994, as supplemented by a letter agreement dated October 6, 1994, and amended by an Amendment to Asset Purchase and Sale Agreement dated November 4, 1994 (as supplemented and amended, the "UPRC Agreement"). In the UPRC Agreement, UPRC agreed to sell and Whiting agreed to buy certain producing, non-producing, and undeveloped oil and gas properties, including the Leases, Wells, and Units which are described on Exhibit A attached hereto and made a part hereof. The Leases, Wells, and Units described on Exhibit A are referred to herein as the "Subject Properties."

B.    The conveyances and assignments of interests from UPRC and Whiting contemplated by the UPRC Agreement are effective as between those parties as of 7:00 a.m. local time with respect to such interests on January 1, 1994 (the "Effective Date").

C.    Whiting and BWAB Incorporated entered into a certain Letter Agreement dated July 28, 1994, and amendments to Sections 2(iv), 8, and 2(iii) thereto (the "Letter Agreement"), in anticipation of the transactions contemplated by the UPRC Agreement. BWAB has succeeded to the interests of BWAB Incorporated under the Letter Agreement. The Letter Agreement gives BWAB certain alternative means of participation in the properties which are the subject of the UPRC Agreement. BWAB has elected to acquire a 3.5 percent overriding royalty interest, subject to certain third party costs, in the net revenue interests attributable to the Subject Properties as provided herein.

NOW, THEREFORE, for Ten Dollars and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Whiting and BWAB agree as follows:

**Exhibit
A**

DEF 00028

MANAGEMENT SERVICE
PACIFIC OCS REGION
RECEIVED

JAN 1 1 199

ENVIRONMENTAL EVALUATION
CAMARILLO, CA.

**Exhibit
A**

DEF 00029

1.    <u>Assignment of Interest</u>.  Whiting does hereby grant, convey, assign, set over and deliver to BWAB an overriding royalty consisting of an undivided Three and One-Half Percent (3.5%) interest in Whiting's Net Revenue Interest from the Subject Properties, to be determined as set forth below.  As used herein, the term "Net Revenues" to the BWAB Interest shall mean the difference between (A) the gross revenues received by Whiting from the sale of its fractional or percentage share of Hydrocarbons from the Subject Properties, after the deduction of all lessors royalties, overriding royalties, and other burdens and payments out of gross production that burden Whiting's fractional or percentage share, and (B) the sum of Whiting's fractional or percentage share of third party (i) transportation expenses, (ii) treatment and processing expenses, (iii) compression expenses, and (iv) severance taxes, occupation taxes, and other like taxes based on the production of Hydrocarbons.  The deductions set forth in items 1(B)(i), (ii), (iii), and (iv) will not include expenses or tariffs charged by the Point Arguello Pipeline Company (PAPCO), the Point Arguello Natural Gas Line Company (PANGL), Gaviota Gas Plant Company (GGP) or by Whiting or its Affiliates.  As used herein the term "Hydrocarbons" shall mean crude oil, natural gas, casinghead gas, coalbed methane, condensate, helium, sulphur, $SO_2$, $CO_2$, natural gas liquids, and other gaseous and liquid hydrocarbons or any combination thereof.  The interest conveyed and assigned to BWAB in this paragraph 1 is referred to herein as the "BWAB Interest."

2.    <u>Payment</u>.  It is intended that Whiting will receive the full fractional or percentage share acquired by Whiting from UPRC of all net revenues payable by the operator(s) of the Subject Properties and by the purchaser(s) of production from the Subject Properties.  BWAB agrees to execute such division orders, transfer orders, and other agreements and instruments as may reasonably be required by any such operator or purchaser to effect payment of all such revenues to Whiting.

a.    Payment has been made to BWAB for the BWAB Interest with respect to the Subject Properties for the period from the Effective Date through August 31, 1994, concurrently with the execution hereof.  BWAB acknowledges receipt of such payment.

b.    On or before the 15th day of each calendar month commencing January 15, 1995, Whiting shall remit to BWAB, at the address set forth above, BWAB's Interest attributable to the Subject Properties as to revenues received by Whiting prior to the 25th day of the prior calendar month.  (The payment due January 15, 1995, shall cover revenues received by Whiting during the period September 1, 1994, through December 25, 1994.)

c.    Paragraph 2(b) above notwithstanding, BWAB shall have the right to require, where practicable, direct payments to BWAB by the operator(s) or purchaser(s) if (i) David A. Frawley is no longer the President of Whiting, or (ii) Whiting

012\67806. 5

2

DEF 00030



MINERALS MANAGEMENT SERVICE
PACIFIC OCS REGION
RECEIVED

JAN 1 1 1995

ENVIRONMENTAL EVALUATION
CAMARILLO, CA

**Exhibit
A**

DEF 00031

is late in making payments to BWAB under Paragraph 2(b) for three consecutive months.

3.   Inspection.  BWAB and its authorized employees, agents and consultants shall have the right, at BWAB's cost and expense, during normal office hours and on reasonable notice, to inspect, audit and copy all records of Whiting relating to the Subject Properties and the determination of Net Revenues attributable thereto.

4.   Preferential Right of Purchase.  Whiting shall have a preferential right of purchase as to the BWAB Interest, or any portion thereof, which preferential right of purchase shall apply to all the transfers, assignments or conveyances by BWAB other than transfers, assignments or conveyances to a BWAB Affiliate.  If at any time, BWAB shall receive a bona fide offer from a third party to purchase the BWAB interest, or any part thereof, which offer BWAB desires to accept, BWAB shall promptly deliver a full and complete copy of such offer to Whiting.  Whiting may, at any time, within five (5) business days following receipt of such offer, elect to purchase the BWAB Interest, or such portion thereof, on the same terms and conditions as set forth in such offer.  If Whiting does not elect to purchase the BWAB Interest, or such portion thereof, within the specified period, BWAB shall be free for a period of sixty (60) days thereafter to accept the third-party offer.  BWAB shall simultaneously provide Whiting with a copy of any offer made by BWAB to a third party (other than an Affiliate) to sell, transfer, assign, or convey the BWAB Interest, or any part thereof, and Whiting shall have the same preferential right of purchase as if such offer were an acceptable offer made to BWAB by such third party.  If an acceptable third-party offer to BWAB, or an offer by BWAB, shall include property in addition to the BWAB Interest, or any portion thereof, the purchase price for the BWAB Interest, or such portion thereof, shall be that part of the purchase price set forth in such offer which the value of the BWAB Interest, or such portion thereof, shall bear to the value of all of the property subject to such offer.  As used in this paragraph, the term "Affiliate" shall mean a corporation or other entity that controls, is controlled by, or is under common control with BWAB.

5.   Powers Reserved to Whiting.  Whiting reserves to itself both power and right, at its option, to pool or combine the Subject Properties, or any part thereof, with other properties, leases, wells, and units.

6.   Special Warranty of Title.  Whiting warrants title to the BWAB Interest herein conveyed as against all persons claiming by, through or under Whiting, but not otherwise.

7.   Tax Partnership.  Notwithstanding that the rights and liabilities of the parties hereunder shall be several and not joint or collective or that this assignment and all activities hereunder shall not constitute a partnership, the parties agree that this agreement results in a partnership for United States Federal Income Tax purposes.  The

012\67806.5

3

DEF 00032



MINERALS MANAGEMENT SERVICE
PACIFIC OCS REGION
RECEIVED

JAN 11 1995

ENVIRONMENTAL EVALUATION
CAMARILLO, CA

**Exhibit
A**

DEF 00033

parties agree not to elect to be, or have the arrangement evidenced hereby excluded from, the application of all or any part of Sub-chapter K of Chapter I of Sub-title A of the Internal Revenue Code of 1986, as amended, or similar provisions of any applicable United States state law.  Whiting shall cause annual returns to be prepared with regard to the tax partnership and will provide BWAB with all returns and reports filed by it with the Internal Revenue Service in connection therewith.  BWAB shall reimburse Whiting for all costs incurred by it in connection with the preparation and filing of such returns and reports.

        8.    <u>Further Assurances</u>.  Whiting and BWAB agree to execute and deliver such other and additional instruments and documents as may reasonably be required to effectuate the understandings set forth herein.

        9.    <u>Successors</u>.  This agreement shall be binding upon and inure to the benefit of the successors and assigns of the parties hereto.

        10.    <u>Governing Law</u>.  This agreement shall be governed by and construed in accordance with the laws of the State of Colorado.

        **IN WITNESS WHEREOF**, the parties hereto have caused this Assignment to be executed on the date set forth above.

WHITING PETROLEUM CORPORATION,
A Delaware corporation

By _John R. Hazlett_
John R. Hazlett, Vice President - Land


BWAB LIMITED LIABILITY COMPANY,
A Colorado limited liability company

By _Randall C. Roulier_
Randall C. Roulier, Manager


012\67806.5

4

DEF 00034



MINERALS MANAGEMENT SERVICE
PACIFIC OCS REGION
RECEIVED

JAN 1 1 1995

ENVIRONMENTAL EVALUATION
CAMARILLO, CA

**Exhibit
A**

DEF 00035

STATE OF COLORADO )
             : ss.
COUNTY OF ~Denver~

      The foregoing instrument was acknowledged before me this 1~st~ day of
~December~, 1994, by John R. Hazlett, the Vice President, of Whiting Petroleum
Corporation, a Delaware corporation.

                        _Gloria L. Vasquez_
                    NOTARY PUBLIC
                    Residing at: _GLORIA L VASQUEZ_
                              1700 BROADWAY, SUITE 2300
                              DENVER, COLORADO 80290-2301

My Commission Expires:
   **MARCH 02 1995**


STATE OF COLORADO       )
                        : ss.
COUNTY OF            )

      The foregoing instrument was acknowledged before me this 16th day of
~December~, 1994, by Randall C. Roulier, the Manager of BWAB Limited Liability
Company, a Colorado limited liability company.

                        _Judith K. Dayton_
                    NOTARY PUBLIC
                    Residing at: _Judith K. Dayton_
                              1700 Broadway, Suite 2200
                              Denver, CO 80290
                              My Commission Expires October 31, 1998

My Commission Expires:
   _10/31/98_

012\67805.5

5

DEF 00036



MINERALS          ENT SERVICE
                  REGION
                  VED

       N 0 0 1995

   RONMENTAL EVALUATION
      CAMARILLO, CA

**Exhibit
A**

EXHIBIT "A"
POINT ARGUELLO FIELD
Offshore California

Attached to and made a part of Assignment of Overriding Royalty between WHITING PETROLEUM CORPORATION, Assignor, and BWAB LIMITED LIABILITY COMPANY, Assignee, dated this 16th day of December, 1994.

I.

Well Name

**OCS P-0452** - No Wells Committed
to Rocky Point Unit

Lease

A. Oil and Gas Lease dated July 1, 1981 from Bureau of Land Management to Chevron U.S.A. Inc. and Phillips Petroleum Company, bearing Serial No. OCS-P 0452

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING DESCRIBED LAND:

Block 466, All that certain portion seaward of the three geographical mile line, OCS Official Protraction Diagram NI 10-6, Santa Maria.

Subject to the following:

a.    Unit Operating Agreement dated February 1, 1985 between Chevron, operator and Phillips and Champlin as non-operators covering the Rocky Point Unit;

b.    Unit Agreement dated February 1, 1985 between Chevron, operator and Phillips and Champlin as non-operators, covering the Rocky Point Unit;

c.    Letter Agreement dated February 6, 1985 between Chevron, Champlin and Phillips amending the Unit Operating Agreement.



MINERALS MANAGEMENT SERVICE
PACIFIC OCS REGION
RECEIVED

JAN 1 1 1995

ENVIRONMENTAL EVALUATION
CAMARILLO, CA

Exhibit
A

DEF 00039

**II.**

<u>Well Name</u>

**OCS P-0451 - Well C-7**
**OCS P-0451 - Well C-8**
**OCS P-0451 - Well B-7**

<u>Lease</u>

      A.   Oil and Gas Lease dated July 1, 1981 from Bureau of Land Management to Chevron U.S.A. Inc. and Phillips Petroleum Company bearing Serial No. OCS-P 0451

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING DESCRIBED LAND:

      Block 465, All that portion seaward of the three geographical mile line, OCS Official Protraction Diagram NI 10-6, Santa Maria.

<u>Subject to the following:</u>

a.    Offset Development Well and Linewell Agreement dated September 12, 1988 between Chevron, Phillips and Union Pacific Corp.;

b.    Unit Operating Agreement dated February 1, 1985 between Chevron, operator and Phillips and Champlin, as non-operators, covering the Rocky Point Unit;

c.    Unit Agreement dated February 1, 1985 between Chevron, Phillips and Champlin covering the Rocky Point Unit;

d.    Letter Agreement dated February 6, 1985 between Chevron, Champlin and Phillips amending the Unit Operating Agreement of Rocky Point Unit.

DEF 00040

MINERALS MANAGEMENT SERVICE
PACIFIC OCS REGION
RECEIVED

JAN 1 1 1995

ENVIRONMENTAL EVALUATION
CAMARILLO, CA

**Exhibit
A**

DEF 00041

III.

Well Name

**OCS P-0316**
**Wells B-1, B-2, B-3, B-4, B-5, B-6,**
**B-8, B-9, B-10, B-11, B-12, B-13**

Hermosa Platform

Lease

      A.  Oil and Gas Lease dated September 1, 1979 from Bureau of Land Management to Chevron U.S.A. Inc., Phillips Petroleum Company, Champlin Petroleum Company and ICI Delaware Inc. bearing Serial No. 003-P 0316

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING DESCRIBED LAND:

      All Block 55N-84W, OCS Leasing Map, Channel Island Area, CAL-Map No. 64.

Subject to the following:

a.    Operating Agreement dated July 1, 1979 between Chevron, operator and Phillips and Champlin as non-operators, covering all of Block 55 N-84W and the Hermosa Platform;

DEF 00042



MINERALS MANAGEMENT SERVICE
PACIFIC OCS REGION
RECEIVED

JAN 11 1995

ENVIRONMENTAL EVALUATION
CAMARILLO, CA

**Exhibit
A**

DEF 00043

# **Exhibit 5**



**WHITING**

June 24, 1997

BWAB Incorporated
Suite 1600
475 Seventeenth Street
Denver, Colorado 80202

Attention: Randall C. Roulier
                  President

Re: Point Arguelio Unitization

Dear Randy,

I am in receipt of your letter dated June 11, 1997 and your telephone message requesting field production data supporting Bruce Williams dilution calculations. Enclosed for your review is Whiting's net production by platform for the months July 1996 thru December 1996. Bruce computed the dilution for the period Sept vs. Oct (.7168480) and for July 1996 thru December 1996(.74593). **This will document our agreement that BWAB agrees to reduce its overriding royalty by 14.15760% or one-half of the dilution at equalization on October 1, 1996 effective Unitization.** Unitization has allowed the working interest owners to shift to a non-competitive mode resulting in the unit owners concentrating on maintaining production which is to BWAB's benefit as well as Whiting's.

I have computed your new interest on a tract basis for adjustment purposes and on a unit basis effective with the MMS taking all of its royalty in kind.

New tract basis : Before MMS Royalty- $(.035/.7168480 \times .8584240) = .0419124$
New tract basis : After MMS Royalty- $(.0291667/ .7168480 \times .8584240) = .0349271$

New unit basis : Before MMS Royalty- $(6.06521\% \times .035/. 716848 \times .858424) = .0025421$
New unit basis : After MMS Royalty- $(6.06521 \times .833333 \times .035 / .7168480 \times .858426) = .0021184$

Example:
     WPC gross working interest barrels.
     Old: $100,000$ bbls x $.0291667 = 2,916.67$ bbls.
     NEW: $100,000$ bbls x $.716848$x $( .0291667/ .716848 \times .858424 = .0349271) = 2503.74$

**WHITING PETROLEUM CORPORATION**
MILE HIGH CENTER, 1700 BROADWAY, SUITE 2300, DENVER, COLORADO 80290-2301   (303) 837-1661   FAX (303) 861-4023
ONE PARK TEN PLACE, SUITE 390, HOUSTON, TX 77084-5053   (713) 578-2025   FAX (713) 578-6830

DEF 00154

An IES INDUSTRIES Company
**Exhibit
A**

bbls.

> UNADJUSTED: 100,000 bbls x .716848 x .0291667= 2090.81 bbls.
> DIFFERENCE: 2916.67-2090.81= 825.86 bbls x .5= 412.93 bbls.
> CORRECTION: 2090.81 bbls + 412.93 bbls = 2503.74 bbls
>
> New Unit  BBLS.
> 100,000 bbls / .0606521 x.716848 x .0021184 = 2503.73 bbls

We have also agreed that if Rocky Point is ever drilled your interest will be .035 of WPC's unit net revenue interest reduced by the 14.1576% dilution factor. However, the BWAB ori's will only cover the lands acquired from Union Pacific Resources Corp.

If the MMS should ever grant the working interest owners a reduced royalty then your interest will be calculated on the new unit basis with .833333 being replaced by the new net revenue interest, e.g. .875 if the MMS royalty becomes 12.5%..

If you are in agreement with these interest calculations please sign and return one copy  and I will ask Christy to revise our revenue division of interests.

Please sign and return one copy  of this letter if you agree.


Yours very truly,

John R. Hazlett
Vice President Land


AGREED TO THIS    DAY JUNE 1997
AND EFFECTIVE OCTOBER 1, 1997.

BWAB Incorporated

Randall C. Roulier- President

DEF 00155

| | Hidalgo | Hermosa | Harvest | Total | WPC Net Pre-Unit | WPC Net Post-Unit | % of Total | 3rd qtr |
|---|---|---|---|---|---|---|---|---|
| Jul-96 | 117.560 | 471.261 | 553.947 | 1142.768 | 94.252 | | 8.25% | |
| Aug-96 | 137.537 | 406.698 | 515.607 | 1059.842 | 81.340 | | 7.67% | 8.13% |
| Sep-96 | 130.832 | 449.344 | 481.984 | 1062.160 | 89.869 | | 8.46% | |
| Oct-96 | 126.898 | 385.447 | 461.689 | 974.034 | | 59.077 | 6.07% | |
| Nov-96 | 124.555 | 341.677 | 419.994 | 886.227 | | 53.752 | 6.07% | |
| Dec-96 | 117.425 | 314.488 | 454.299 | 886.212 | | 53.751 | 6.07% | |
| | | | | | | | | |
| | | Dilution (1-post/pre) - (Oct/Sept only) | | | | 0.283152 | | |
| | | | | | | | | |
| | | Dilution (1-post/pre) - (4th qtr/3rd qtr) | | | | 0.254069 | | |

DEF 00156

**Exhibit
A**

# **<u>Exhibit 6</u>**

## AGREEMENT

This agreement is made and entered into effective April 1, 1999 by and between BWAB LIMITED LIABILITY COMPANY ("BWAB") and DELTA PETROLEUM CORPORATION ("DELTA").

## RECITALS

DELTA desires to acquire certain oil and gas properties, facilities, pipelines and related equipment and contracts as described on Exhibit "A" attached hereto and incorporated herein by reference and in connection therewith, desires that BWAB assist in such acquisition pursuant to the terms hereof.

NOW, THEREFORE, in consideration of the premises and mutual promises herein made, and in consideration of the representations, warranties and covenants herein contained, the parties agree as follows:

1) COMPENSATION: DELTA agrees to pay BWAB a fee (the "Fee") as described in Paragraph 3 hereof in consideration of BWAB's direct efforts in finding, evaluating and assisting in negotiations to acquire the Property to be acquired by DELTA or its affiliates and joint venturers.

2) BWAB's SERVICES:  For the purposes of this Agreement, the term "direct efforts" shall mean BWAB's actions taken as the "procuring cause" of the acquisition, including but not limited to, the initial contact with the proposed seller, the transfer to DELTA of technical information with respect to the Properties including an economic evaluation, and BWAB's continuing interaction with the proposed seller and DELTA until consummation of the purchase.

3) FEE SCHEDULE: DELTA shall pay BWAB the following fee:

1) 200,000 shares of restricted common stock in Delta Petroleum Corporation.  The shares will be issued in proportion to the percentage interest DELTA acquires, whether such interest is a working interest, net operating interest and/or any other type of ownership interest and;

2) A proportionately reduced 3.0% overriding royalty interest out of the net revenue interest acquired by Delta, in recordable form and containing warranties of title by, through and under Delta, but not otherwise. Should DELTA acquire a net operating interest, BWAB's overriding royalty interest will be calculated as 3.0% of the actual gross revenue generated from and accrued to DELTA's interest.

4) PAYMENT OF FEE; CONDITIONS TO PAYMENT:  DELTA shall not be obligated or liable to BWAB for payment of the Fee unless BWAB's efforts hereunder result directly in negotiations  between the seller and DELTA leading to (i) the closing(s) of the purchase of the Properties by DELTA within 18 months of the initial presentment of the Properties by BWAB to DELTA; or (ii) the execution of a binding purchase and sale agreement therefore within such time which is subsequently consummated within a reasonable time. DELTA shall pay BWAB the Fee or cause the Fee to be paid at the closing of the

1

DPT000344

**Exhibit
A**

.transaction giving rise to the Fee.  If, for any reason whatsoever, including the fault or default of the seller or DELTA, purchase of the Properties is not consummated, then DELTA shall not be obligated or liable to BWAB hereunder or otherwise for payment of the Fee.

5)  CONFIDENTIALITY: DELTA and BWAB shall keep the terms of this transaction and Agreement confidential.  BWAB agrees not to disclose to other potential purchasers the identity of the Properties presented by BWAB until such time DELTA notifies BWAB that it is no longer pursuing the said acquisition. DELTA may make such disclosures of information, about the Properties to its employees and employees of its subsidiaries or affiliates, and agents, advisors or representatives who assist DELTA in analyzing, evaluating or financing the Properties (collectively, the "Representatives") so long as the disclosed information is to be used solely for such analysis or evaluation.  DELTA shall have no obligation to keep confidential any:

   i)  Information which at the time of disclosure was developed by DELTA or its Representatives, and which is already in the possession of DELTA or its Representatives,

   ii)  Information which at the time of disclosure hereunder was in the public domain or which after disclosure hereunder becomes a part of the public domain through no action or failure to act of DELTA or its Representatives, and

   iii)  Information which at the time of disclosure hereunder was or is thereafter lawfully acquired by DELTA or its Representatives from a source other than DELTA, provided such other source was not under an obligation or confidence to BWAB with respect thereto and did not acquire such information directly or indirectly from BWAB.·

6)  EXCLUSIVE PRESENTMENT: BWAB represents that the Properties have not been and will not be presented by BWAB to any third party, except as provided herein. If at any time DELTA abandons its efforts to purchase the asset, DELTA shall give notice within 24 hours to BWAB of such abandonment and BWAB shall be free to present the Property to other potential purchasers.

7)  COVENANT NOT TO CIRCUMVENT: DELTA agrees not to circumvent or bypass BWAB's rights hereunder, without paying a fee to BWAB, by attempting to acquire the Properties from the seller identified by BWAB for a period of 18 months from the date BWAB initially presents the Properties to DELTA.

8)  RELATIONSHIP AND AUTHORITY:  This Agreement does not create a partnership, agency, master-servant, joint venture, or other such relationship between the parties other than as· independent contractors, and BWAB shall have no authority to enter into contracts or agreements on behalf of DELTA, and no authority to bind DELTA.

2

DPT000345

## 9) MISCELLANEOUS

9.1)   Expenses - The parties hereto shall pay all of their own expenses relating to the transactions contemplated by this Agreement, including, without limitation, out of pocket expenses and the fees and expenses of their respective counsel, accountants and financial advisers.

9.2)   Governing Law - The interpretation and construction of this Agreement, and all matters relating hereto, shall be governed by the laws of the State of Colorado.

9.3)   Captions - The Section captions used herein are for reference purposes only, and shall not in any way affect the meaning or interpretation of this Agreement.

9.4)   Notices - Any notices or other communications required or permitted hereunder shall be sufficiently given if delivered in person or by registered or certified mail, postage prepaid, addressed as follows:

If to BWAB LLC:

BWAB Limited Liability Company
475 17th Street, Suite 1390
Denver, CO 80202
Attn: Steven A. Roitman

If to DELTA:

Delta Petroleum Corporation
555 17th Street, Suite 3310
Denver, CO 80202
Attn: Roger A. Parker

or such other address as shall be furnished in writing by any such party, and such notice or communication shall be deemed to have been given as of the date so delivered or mailed.

9.5)   Parties in Interest -   This Agreement may not be transferred, assigned, pledged or hypothecated by any party hereto, other than by operation of law or with the consent of the other party. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns.

9.6)   Counterparts - This Agreement may be executed in two or more counterparts, all of which taken together shall constitute one instrument.

9.7)   Entire Agreement - This Agreement contains the entire understanding of the parties hereto with respect to the Property and supersedes and replaces any and all prior

3

DPT000346

**Exhibit
A**

agreements and understandings between the parties with respect to such subject matter.

9.8)  <u>Amendments</u> - This Agreement may not be changed orally, but only by an agreement in writing signed by the parties hereto; provided, however, that any provision of this Agreement can be waived, amended, supplemented or modified by a written agreement between BWAB and DELTA.

9.9)  <u>Severability</u> - In the event any provision in this Agreement shall be held invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions hereof will not in any way be affected or impaired thereby.

AGREED TO AND ACCEPTED THIS 29th DAY OF April , 1999.

DELTA PETROLEUM CORPORATION          BWAB LIMITED LIABILITY COMPANY

Roger A. Parker                                      Steven A. Roitman
President                                             Principal — MANAGING MEMBER

4

DPT000347

**Exhibit**
**A**

# EXHIBIT A

## THE INTERESTS

| INTERESTS | WORKING INTEREST | NET REVENUE INTEREST |
|---|---|---|
| Point Arguello Pipeline Company | 6.06521% | 6.06521% |
| Point Arguello Natural Gas Line Company | 6.06521% | 6.06521% |
| Gaviota Gas Plant Company | 6.06521% | 6.06521% |
| Point Arguello Unit | 6.06521% | 4.8425%(a)(b) |
| OCS-P BLK 452 & 453 | 100% | 83.33% |

(a)  Net of BWAB's ORRI

(b)  Does not reflect MMS royalty reduction

DPT000348

Exhibit
A

# **<u>Exhibit 7</u>**

## CONVEYANCE AND ASSIGNMENT

WHITING PETROLEUM CORPORATION, a Delaware corporation, and WHITING PROGRAMS, INC., a Delaware corporation (collectively, the "Assignor") whose address is 1700 Broadway, Suite 2300, Denver, Colorado 80290, for TEN DOLLARS ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, hereby grant, convey, transfer and assign to DELTA PETROLEUM CORPORATION, a Colorado corporation ("Assignee"), whose address is 3310 Qwest Tower, 555 Seventeenth Street, Denver, Colorado 80202, a net operating interest (as herein defined) in, to and under the following:

(a) The oil, gas and mineral leases described on Exhibit "A" attached hereto (collectively, the "Leases"), including, without limitation working interests, overriding royalty interests, royalty interests and any other interests of a similar nature affecting the lands covered by the Leases (collectively, the "Lands".)

(b) The wells described on Exhibit "A" or which are located on the Lands (collectively, the "Wells").

(c) All unitization, communitization, pooling, agreements, working interest units created by operating agreements, partnership agreements and orders covering the Leases and Lands, or any portion thereof, and the units and pooled or communitized areas created thereby, including the Federal units created by the Unit Agreements described on Exhibit "A" (collectively, the "Units") and the four partnerships created by the Partnership Agreements described on Exhibit "A" i.e., PAPCO, PANGL, GGP and PATC (collectively, the "Partnerships").

(d) The tangible personal property, tools, machinery, materials, pipelines, plants, gathering systems, equipment, fixtures and improvements, which are incident or attributable to the Leases, Lands, Wells or Units with the production, treatment, sale or disposal of hydrocarbons or water produced therefrom or attributable thereto, on the Effective Time (collectively, the "Equipment").

(e) The licenses, permits, contracts, agreements and other instruments owned by Seller (other than bonds posted by Seller) which concern and relate to any of the Leases, Lands, Wells, Units and/or Equipment, INSOFAR AND ONLY INSOFAR as same concern or relate to the Leases, Lands, Wells, Units and/or Equipment, or the operation thereof; including, without limitation, oil, gas and condensate purchase and sale contracts; permits,; rights-of- way; easements; licenses; servitudes; estates; surface leases; farmin and farmout agreements; division orders and transfer orders; bottomhole agreements; dry hole agreements; area-of- mutual interest agreements; salt water disposal agreements; acreage contribution agreements; operating agreements; balancing agreements and unit agreements; pooling agreements; pooling orders; communitization agreements; processing, gathering, compression and transportation agreements; facilities or equipment leases relating thereto or used or held for use in connection with the ownership or operation thereof or with the production, treatment, sale or disposal of hydrocarbons; and all other contracts and agreements related to the Leases, Lands, Wells, Units and/or Equipment.

**Exhibit
A**

DEF 00095

(f) Originals or copies of all computer tapes and discs, files, records, information or data relating to the Interests in the possession of Seller, including, without limitation, title records (including abstracts of title, title opinions, certificate of title and title curative documents), accounting records and files, contracts, correspondence, production records, electric logs, core data, pressure data, decline curves, graphical production curves, drilling reports, well completion reports, drill stem test charts and reports, engineering reports, regulatory reports, and all related materials, INSOFAR AND ONLY INSOFAR as the foregoing items constitute materials that may be lawfully conveyed to Buyer (i.e., the materials are not subject to a proprietary agreement precluding their transfer to Buyer), and, to the extent transferable, all other contract rights, intangible rights (excluding Seller's trademarks and service marks), inchoate rights, choses in action, rights under warranties made by prior owners, manufacturers, vendors or other third parties, and rights accruing under applicable statutes of limitation or prescription, attributable to the Interests.

(g) All payments, and all rights to receive payments, with respect to the ownership of the production of hydrocarbons from or the conduct of operations on the Interests accruing after the Effective Time.

All of the properties, rights, and interests described in paragraphs (a) through (g) above are referred to herein as the "Interests."

This Conveyance and Assignment shall be effective as of April 1, 1999, at 7:00 a.m., local time (referred to herein as the "Effective Time").

The net operating interest ("NOI") herein conveyed and assigned is defined as the monthly payable positive or negative cash flow resulting to the Interests from the following eight step calculation:

(i) oil and gas sales revenue;
(ii) less royalties and overriding royalties;
(iii) less Unit lease operating expenses;
(iv) less severance, production or ad valorem taxes, if any;
(v) less capital expenditures;
(vi) less Unit fees to the Unit operator; and
(vii) plus the positive or less the negative cash flow from the Partnerships.
(viii) plus or minus any other miscellaneous costs or revenues that may be related to these interests or operations

After taking into account Assignor's retention of net abandonment costs (i.e. cost of abandonment less equipment salvage value) under Section 9.1 of that certain Purchase and Sale Agreement dated as of June 8, 1999, as amended by an Amendment to Purchase and Sale Agreement dated as of June 8, 1999, between Assignor and Assignee (as amended, the "Agreement"), and the maximum payment of $2,000,000 by Assignor to purchase the Preferred Stock to fund the Deficit as such terms are defined in Section 9.2 of such Agreement, the above eight step calculation may result in positive cash flow or negative cash flow. In the event of

DEF 00096

positive cash flow, Assignor will pay the excess to Assignee; in the event of a negative cash flow, Assignee will pay the deficit to Assignor.

This Conveyance and Assignment is delivered pursuant to and subject to the Agreement. The Agreement contains certain covenants and obligations which survive the delivery of, and shall not be deemed merged into, this Conveyance and Assignment as and to the extent provided in the Agreement.

Dated this 1st day of December, 1999, but effective as of the Effective Time.

```
        Attest:                     WHITING PETROLEUM CORPORATION

        s/Patricia J. Miller        By:s/John R. Hazlett
        Patricia J. Miller             John R. Hazlett, Vice President
        Corporate Secretary

        Attest:                     WHITING PROGRAMS, INC.

        s/Patricia J. Miller        By:s/John R. Hazlett
        Patricia J. Miller             John R. Hazlett, Vice President
        Corporate Secretary

        Attest:                     DELTA PETROLEUM CORPORATION

        s/Aleron H. Larson, Jr.     By:s/Roger A. Parker
        Aleron H. Larson, Jr.          Roger A. Parker, President


        STATE OF COLORADO     )
             CITY AND         )    ss.
        COUNTY OF DENVER      )
```

The foregoing instrument was acknowledged before me this 1st day of December, 1999, by John R. Hazlett, Vice President of Whiting Petroleum Corporation and Whiting Programs, Inc., both Delaware corporations.

My Commission Expires: February 28, 2003

```
                    s/Jean E. Solot
                    Notary Public


        STATE OF COLORADO      )
             CITY AND          )  ss.
        COUNTY OF DENVER       )
```

The foregoing instrument was acknowledged before me this 1st day of December, 1999, by Roger A. Parker as the President of Delta Petroleum Corporation, a Colorado corporation.

DEF 00097

My Commission Expires: February 28, 2003

*s/Jean E. Solot*
*Notary Public*

### EXHIBIT "A"
### POINT ARGUELLO FIELD
#### Offshore California

Attached to and made a part of that certain CONVEYANCE AND ASSIGNMENT between Whiting Petroleum Corporation, Assignor, and Delta Petroleum Corporation, Buyer, effective April 1, 1999.

I.

All of Seller's right, title and interest in and to the following described partnerships:

1. Partnership Agreement-Point Arguello Pipeline Company dated August 2, 1984; Partnership Interest 5.8036%.

2. Partnership Agreement-Point Arguello Natural Gas Company dated September 1, 1984; Partnership Interest 6.0652%

3. Partnership Agreement for Ownership of Facilities- Gaviota Gas Plant Company dated October 1, 1984; Partnership

Interest 5.7013%

II.

| PROPERTY NAME | WORKING INTEREST | NET REVENUE INTEREST |
|---|---|---|
| Point Arguello Unit | .06065210 | .04842500 |

All of Seller's right title and interest in and to the leasehold estate created by the following described oil and gas leases:

A. Oil and Gas Lease dated July 1, 1981 from Bureau of Land Management to Chevron U.S.A. Inc. and Phillips Petroleum Company bearing Serial No. OCS-P 0451

### INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING DESCRIBED LAND:

**Exhibit A**

The W/2 of Block 465, All that portion seaward of the three geographical mile line, OCS Official Protraction Diagram N1 10-6 Santa Maria (CA 3- 1055).

B. Oil and Gas Lease dated September 1, 1979 from Bureau of Land Management to Chevron U.S.A. Inc., Phillips Petroleum Company, Champlin Petroleum Company and ICI Delaware Inc. bearing Serial No. OCS-P 0316.

**INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING DESCRIBED LAND:**

All of Block 55N-84W, OCS Leasing Map, Channel Island Area, CAL-Map No. 64 (CA 300316).

**WELLS:**

A-1, A-2, A-3, A-4, A-5, A-6, A-7, A-8, A-9, A-10, A- 11, A-12, A-13, A-14, A-15, A-16, A-16WB01, A-17, A-18, A-18WB01, A-19, B-1, (B-1WB-1, B-2, B-2WB01, B-3, B-6, B-8, B-9, B-9WB01, B-10, B-11, B-12, B-13, B-14, B-15, B-16, B-17, B-18, C-1, C-2, C-3, C-4, C-5, C-7, C-8, C- 9, C-10 and C-11.

Subject to the following:

a. Offset Development and Well and Linewell Agreement dated September 12, 1988 between Chevron, Phillips and Union Pacific Corp.;

b. Unit Agreement for Outer Continental Shelf Exploration, Development and Production Operations on the Point Arguello Unit dated effective October 1, 1996 between Chevron U.S.A., operator and Phillips Petroleum, Whiting Petroleum, Texaco Exploration and Production, Sun Operating Limit Partnership, Pennzoil Exploration and Production, Koch Industries, and Oxbow Energy parts of Blocks 5rN-84W and 55N-85W, Channel Island Area and Parts of Blocks 464 and 465, Santa Maria Basin Area, Offshore, California.

c. Unit Operating Agreement Point Arguello Unit, Pacific Offshore, California, dated effective October 1, 1996 between Chevron U.S.A. Inc., Phillips Petroleum Company, Whiting Petroleum Corporation, Texaco Exploration and Production Inc., Sun Operating Limited Partnership, by Oryx Energy Company, its Managing General Partner, Pennnzoil Exploration & Production Company and Oxbow Energy, Inc.

**Exhibit
A**

DEF 00099

# **Exhibit 8**

Ex. A

## ASSIGNMENT OF OVERRIDING ROYALTY INTEREST
### (The "ASSIGNMENT")

This Assignment is made and entered into this 1st day of December, 1999, between DELTA PETROLEUM CORPORATION, a Colorado corporation, whose address is 555 17th Street, Suite 3310, Denver, Colorado, 80202, hereinafter referred to as Assignor, and BWAB LIMITED LIABILITY COMPANY, a Colorado limited liability company, whose address is 475 17th Street, Suite 1390, Denver, Colorado, 80202, hereinafter referred to as Assignee.

NOW THEREFORE, IN CONSIDERATION of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, Assignor does, by these presents, assign, transfer and convey unto Assignee, an OVERRIDING ROYALTY INTEREST of three percent (3.0%) in and to the oil and gas leases and lands described on Exhibit "A" attached hereto and by this reference made a part hereof (the "Leases"), which shall burden all the oil, gas and other leased minerals produced, saved and sold from or allocated to the lands covered by said Leases, and any extensions or renewals thereof. Said Overriding Royalty Interest shall be subject to the following terms and conditions:

1.    The Overriding Royalty Interest shall be free and clear of all development, production and operating expenses, however, said interests shall bear and pay currently its portion of the costs of transportation, compression, dehydration, and similar costs, gross production, severance, ad valorem taxes and all other taxes assessed against the gross production subject to said Overriding Royalty Interest.

2.    It is agreed that nothing contained herein shall impose upon Assignor, or its successors or assigns, any duty or obligation to develop or operate the Leases or any wells located thereon, or maintain the Leases by payment of delay rentals, minimum royalties, shut-in royalty payments or any other similar payments necessary to keep the Leases in effect.

3.    Assignor shall have the exclusive right, as set forth in the Leases, to pool said Leases and the lands covered thereby, or any part thereof, with other lands and leases into voluntary units, or units established by any governmental agency having jurisdiction over said Leases and lands, and if said Leases are so pooled, the Overriding Royalty Interest shall burden only the production allocated to the Leases and lands by virtue of the allocation provisions of the pooling and/or unitization agreements governing the development of the unit or pooled area.

4.    The Overriding Royalty Interest conveyed herein shall burden only the interest of Assignor, and its successors and assigns, in the Leases and shall be reduced to the proportion that the leasehold interest of Assignor in said Leases bears to the total leasehold estate in the lands covered by the Leases. In addition, the Overriding Royalty Interest shall be subject to further proportionate reduction should the Leases cover less than the full, undivided oil, gas and mineral estate in the lands covered thereby.

-1-

Bq. Arsuello Fld.
Offshore CA

DEF 00113

**Exhibit A**

5.    This Assignment is made with no representations or warranties of title either express or implied and shall be binding upon and inure to the benefit of Assignor and Assignee and their respective successors, representatives and assigns.

6.    In the event Assignor is required to assign in an arms length transaction some fractional undivided interest in the Leases in order to obtain access to Point Arguello Unit offshore drilling platform(s) for the drilling of wells on the Leases, the Overriding Royalty Interest shall be proportionately reduced; provided, however, that any oil and gas interest or other thing of value of any nature, whether similar or dissimilar, received by Delta in any such transaction shall be subject to this Overriding Royalty Interest.

7.    In the event any action of any governmental unit (whether federal or state and whether legislative, executive or judicial) precludes the orderly development of, and production of hydrocarbons and other minerals from, the Leases and Assignor receives compensation therefor, Assignee shall receive in respect of the Overriding Royalty Interest a proportionate part of such compensation which proportion shall be in the same ratio as the value of the Overriding Royalty Interest in the Leases reasonably expected had orderly development and production not been interrupted bears to the value of the expense interest in the Leases giving consideration to the expenses which would have been incurred by Assignor in deriving the value attributable to the expense interest had orderly development and production not been interrupted.

EXECUTED this____day of December, 1999, but effective for all purposes as of April 1, 1999 at 7:00 AM at the location of the Leases, hereinafter referred to as the EFFECTIVE DATE.

**ASSIGNOR:**

DELTA PETROLEUM CORPORATION

By: _____

Title:  President_____

Attest:
(Seal)

By: _____

Title: Secretary_____

**ASSIGNEE:**

BWAB LIMITED LIABILITY COMPANY

By: _____
       Steven A. Roitman
       Manager

-2-

DEF 00114

## ACKNOWLEDGMENTS

State of Colorado        }
                            }

County of Denver        }

The foregoing instrument was acknowledged before me this 1st day of December, 1999 by Roger A. Parker to me known to be the President of DELTA PETROLEUM CORPORATION, a Colorado corporation, for the purposes and in the capacity stated therein as the free act and deed of said Corporation.

My Commission Expires:    5/18/01

Sheryl K. Shelton
Notary Public: Sheryl K. Shelton
Address: 9800 S. Rock Dove Lane
Highlands Ranch, Colorado 80126

State of Colorado        }
                            }

County of Denver        }

The foregoing instrument was acknowledged before me this 1st day of December, 1999 by Steven A. Roitman, to me known to be the Manager of BWAB LIMITED LIABILITY COMPANY, a Colorado Limited Liability Company, for the purposes and in the capacity stated therein as the free act and deed of said Limited Liability Company.

My Commission Expires: _____

William G. Mills II
Notary Public: William G. Mills II
7946 East Mexico Avenue
Denver, Colorado 80231

NOTARY PUBLIC
WILLIAM G. MILLS II
STATE OF COLORADO

My Commission Expires Dec. 10, 2001

-3-

DEF 00115

**Exhibit A**

**EXHIBIT "A"**
**POINT ARGUELLO FIELD**
**Offshore California**

Attached to and made a part of that certain PURCHASE AND SALE AGREEMENT between Whiting Petroleum Corporation, Seller, and Delta Petroleum Corporation, Buyer, dated the ___ day of June, 1999.

I.

All of Seller's right, title and interest in and to the following described partnerships:

1.  Partnership Agreement-Point Arguello Pipeline Company dated August 2, 1984; Partnership Interest 5.8036%.

2.  Partnership Agreement-Point Arguello Natural Gas Company dated September 1, 1984; Partnership Interest 6.0652%.

3.  Partnership Agreement for  Ownership of Facilities-Gaviota Gas Plant Company dated October 1, 1984; Partnership Interest 5.7013%.

II.

LEASE:

All of Seller's right, title and interest in and to the leasehold estate created by the following described oil and gas lease:

A.  Oil and Gas Lease dated July 2, 1981 from Bureau of Land Management to Chevron U.S.A. Inc. and Phillips Petroleum Company, bearing Serial No. OCS-P 0452

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING DESCRIBED LAND:

Block 466, All that certain portion seaward of the three geographical mile-line, OCS Official Protraction Diagram NI 10-6, Santa Maria.  (CA3-2056).

Subject to the following:

a.  Unit Operating Agreement dated February 1, 1985 between Chevron, operator and Phillips and Champlin as non-operators covering the Rocky Point Unit;

b.  Unit Agreement dated February 1, 1985 between Chevron, operator and Phillips and Champlin as non-operators, covering the Rocky Point Unit;

c.  Letter Agreement dated February 6, 1985 between Chevron, Champlin and Phillips amending the Unit Operating Agreement.

LEASE:

All of Seller's right, title and interest in and to the leasehold estate created by the following described oil and gas lease:

DEF 00116

A.    Oil and Gas Lease dated May 19, 1981 from Bureau of Land Management
To Chevron U.S.A. Inc. and Phillips Petroleum Company bearing Serial
No. OCS-P 0453.

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING
DESCRIBED LAND:

Block 467, all that certain portion seaward of the three geographical mile line,
OCS Official Protraction Diagram NI 10-6, Santa Maria

Subject to the following:

a.    Lease Operating Agreement dated July 1, 1981;

b.    Unit Agreement dated February 15, 1985;

c.    Rocky Point Unit Operating Agreement dated February 1, 1985.

LEASE:

A.    Oil and Gas Lease dated July 1, 1981 from Bureau of Land Management to
Chevron U.S.A. Inc. and Phillips Petroleum Company bearing Serial No.
OCS-P 0451.

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING
DESCRIBED LAND:

The E/2 of Block 465, All that portion seaward of the three geographical mile line;
OCS Official Protraction Diagram NI 10-6 Santa Maria (CA 3-1055).

Subject to the following:

a.    Offset Development Well and Linewell Agreement dated September 12, 1988 between Chevron,
Phillips and Union Pacific Corp.;

b.    Unit Operating Agreement dated February 1, 1985 between Chevron, operator and Phillips and
Champlin, as non-operators, covering the Rocky Point Unit;

c.    Unit Agreement dated February 1, 1985 between Chevron, Phillips and Champlin covering
the Rocky Point Unit;

d.    Letter Agreement dated February 1, 1985 between Chevron, Champlin and Phillips amending
the Unit Operating Agreement of Rocky Point Unit.

III.

| PROPERTY NAME | Working Interest | Net Revenue Interest |
|---|---|---|
| Point Arguello Unit | .06065210 | .04842500 |

All of the Seller's right title and interest in and to the leasehold estate created by the following described oil
and gas leases:

A.    Oil and Gas Lease dated July 1, 1981 from Bureau of Land Management
To Chevron U.S.A. Inc. and Phillips Petroleum Company bearing

**Exhibit
A**

DEF 00117

Serial No. OCS-P 0451.

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING DESCRIBED LAND:

The W/2 of Block 465, All that portion seaward of the three geographical mile line, OCS Official Protraction Diagram NI 10-6 Santa Maria (CA 3-1055).

B.    Oil and Gas Lease dated September 1, 1979 from Bureau of Land Management to Chevron U.S.A. Inc., Phillips Petroleum Company, Champlin Petroleum Company and ICI Delaware Inc. bearing Serial No. OCS-P 0316.

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING DESCRIBED LAND:

All of Block 55N-84W, OCS Leasing Map, Channel Island Area, CAL-Map No. 64 (CA 300316).

<u>WELLS:</u>

A-1, A-2, A-3, A-4, A-5, A-6, A-7, A-8, A-9, A-10, A-11, A-12, A-13, A-14, A-15, A-16, A-16WB01, A-17, A-18, A-18WB01, A-19, B-1, B-1WB01, B-2, B-2WB01, B-3, B-6, B-8, B-9, B-9WB01, B-10, B-11, B-12, B-13, B-14, B-15, B-16, B-17, B-18, C-1, C-2, C-3, C-4, C-5, C-7, C-8, C-9, C-10, and C-11.

Subject to the following:

a.    Offset Development Well and Linewell Agreement dated September 12, 1988 between Chevron, Phillips and Union Pacific Corp.;

b.    Unit Operating Agreement dated February 1, 1985 between Chevron, operator and Phillips and Champlin, as non-operators, covering the Rocky Point Unit;

c.    Unit Agreement dated February 1, 1985 between Chevron, Phillips and Champlin covering the Rocky Point Unit;

d.    Letter Agreement dated February 6, 1985 between Chevron, Champlin and Phillips amending the Unit Operating Agreement of Rocky Point Unit;

e.    Operating Agreement dated July 1, 1979 between Chevron, operator and Phillips and Champlin as non-operators, covering all of Block 55N-84W and the Hermosa Platform;

f.    Unit Agreement for Outer Continental Shelf Exploration, development and Production Operations on the Point Arguello Unit dated effective October 1, 1996 between Chevron U.S.A., operator and Phillips Petroleum, Whiting Petroleum, Texaco Exploration and Production, Sun Operating Limited Partnership, Pennzoil Exploration and Production, Koch Industries, and Oxbow Energy parts of Blocks 55N, 84W and 55N, 85W, Channel Islands Area and Parts of Blocks 464 and 465, Santa Maria Basin Area, Offshore California.

**Exhibit
A**

DEF 00118

# **Exhibit 9**

*RO 657*

THIS CHECK HAS A COLORED FACE ON WHITE STOCK AND AN ARTIFICIAL WATERMARK ON THE BACK

**DELTA PETROLEUM CORPORATION**
Debtor in Possession (Case No. 11-14006 Bankr. D. Del.)
**DISTRIBUTION ACCOUNT**
370 SEVENTEENTH STREET, SUITE 4300
DENVER, COLORADO 80202

**BANK OF OKLAHOMA**
Payable Through Bank of Oklahoma, Bartlesville OK
86-1057/1031

Check No.   **091156**

PAY
EXACTLY **$52,602dols49cts**
FIFTY-TWO THOUSAND SIX HUNDRED TWO DOLLARS AND 49 CENTS

| CHECK NUMBER | DATE | PAY EXACTLY |
| --- | --- | --- |
| 091156 | AUG 21 2012 | $52,602.49 |

VOID AFTER 120 DAYS
Inquiries, please call (303) 575-0371

TO
THE
ORDER
OF

**BWAB LIMITED LIABILITY COMPANY**
475 17TH STREET, SUITE 1390
DENVER, CO  80202

⑈091156⑈ ⑆103101055⑆ 209028373⑈

**RECEIVED**
**AUG 27 2012**

**Exhibit**
**A**

DEF 00138

**DELTA PETROLEUM CORPORATION**
370 SEVENTEENTH STREET, SUITE 4300
DENVER, COLORADO 80202

Page 1 of 1

| PAYEE NUMBER | PAYEE NAME | CHECK DATE | CHECK NUMBER | CHECK TOTAL |
|---|---|---|---|---|
| 13671 | BWAB LIMITED LIABILITY COMPANY | Aug-21-2012 | 091155 | $52,602.49 |

| WELL# DATE | TYP PC INT PRICE | WELL NAME QUANTITY | VALUE | GROSS DEDUCTIONS | NET | STATE COUNTY INTEREST | PAID INT | OWNER VALUE | DEDUCTIONS | NET SHARE |
|---|---|---|---|---|---|---|---|---|---|---|
| 55 05/12 | O1 OR 101.03 | POINT ARGUELLO UNIT 127525.35 | 2283892.56 | 207994.39 | TRN1. 2675908.17 | FD SANTA BARBARA OFFSHORE 0.00414980 | 0.00414980 | 53465.58 | 863.09 | TRN1 52602.49 |

|  | OWNER GROSS | OWNER NET DEDUCTIONS | OWNER NET TOTALS |
|---|---|---|---|
| CURRENT CHECK | 53465.58 | 863.09 | 52602.49 |
| YEAR TO DATE | 448125.53 | 5133.17 | 442992.36 |

— PRODUCTS/DEDUCTIONS —

O1 - OIL OFFSHORE / TRN1 - TRANSPORTATION-OFFSHORE /

TOTAL CHECK AMOUNT        52602.49

DETACH AND RETAIN FOR TAX PURPOSES

**Exhibit**
**A**

DEF 00139