


# EXHIBIT D

# MINUTES OF THE BOARD OF DIRECTORS
# OF
# DELTA PETROLEUM CORPORATION

## JULY 30, 1999

The Board of Directors of Delta Petroleum Corporation ("Delta" or "Company") met at 10:00 a.m. at 555 17th Street, Suite 3310, Denver, Colorado 80202 with all directors present in person or by telephone.

Aleron H. Larson, Jr. and Roger A. Parker reviewed the status of the acquisition from Whiting Petroleum Corporation of interests in the Point Arguello and Rocky Point Units pursuant to the June 8, 1999 purchase and sale agreement between the two companies. The details of this acquisition are described in the Minutes for the May 30, 1999 Directors meeting.

As a result of a loan from Messrs. Parker and Larson to Delta of $1,000,000 the Company paid Whiting $1,000,000 on June 8, 1999. Thereafter management continued to negotiate with other parties, primarily Cardinal Investments (because of a no-shop agreement in effect during a part of the time) and to seek other sources of financing. The next installment payment of $2,000,000 is due August 2, 1999, which is the next business day after today. At this time, although management continues to negotiate with these parties, the Company has not received an offer from any of the parties.

Messrs. Parker and Larson, subject to board approval, have negotiated an agreement with Labyrinth Enterprises, LLC, to loan $2,000,000 to the Company, which loan will require the personal guarantees of Messrs. Parker and Larson. Copies of the Promissory Note, Guaranties of Performance by Messrs. Parker and Larson, UCC financing statement and Security Agreement, which will be delivered upon board approval, are attached hereto.

Directors Enright and Eckelberger, sitting concurrent herewith as the Incentive Plan Committee and as the Compensation Committee, have considered the current Company and oil and gas industry circumstances; the value to the Company of acquiring the Whiting properties; and the significant personal financial risk to Messrs. Parker and Larson in connection with their personal guarantees of an additional $2,000,000 loan to Delta, which, with the $1,000,000 previously loaned to Delta would give Messrs. Parker and Larson a total of $3,000,000 in personal liability on behalf of the Company.

More particularly Messrs. Enright and Eckelberger have noted:

1. The $2,000,000 payment is due to Whiting August 2, 1999 and if not made by that time the Company will lose the opportunity to acquire the Whiting interests. If the payment is made then, under the agreement with Whiting, Delta will be entitled to have assigned to it 50% of the interests in the form of either a working interest or an equivalent net operating profits interest ("NOPI"). It is in the best interest of the Company and all of its shareholders to acquire the Whiting interests for the reasons expressed in the May 20, 1999 minutes and also because, at the present time, oil prices have continued to rise and production operating expenses on the Point Arguello Unit have continued to fall thereby making these interests more profitable, valuable and desirable. Further, because the "effective date" of the purchase and sale agreement is April 1, 1999, revenues have continued to accrue to Delta since that date provided that Delta pays for and acquires the properties.

2. The Company still has no other prospects for the quick development of additional reserves and production of the magnitude presented by the acquisition of the Whiting interests.

3. Management has diligently attempted to obtain the funds required for the acquisition of the Whiting interests from outside sources within the time required for the next payment of $2,000,000 without success. Numerous sources have been contacted. The Company has negotiated with the people from Cardinal Investments and has provided them with extensive information and documentation relating to the Company and to the Whiting interests and, at the request of Cardinal Investments, granted them a two week "no shop" agreement which has expired. After the expiration of the "no shop" agreement, management continued negotiations with Cardinal and then either resumed negotiations or entered into negotiations with others. Engineering reserve reports and other information and documentation which is customarily required by investors has only recently been obtained. Additional information that would be helpful to investors relating to the additional drilling and development plans of the new operator (Plains Resources) will not be available until an August 10, 1999 Unit owners meeting. Management is generally aware of these plans but cannot verify them to investors until the August 10th meeting. While management believes that the entire purchase price for the Whiting interests will be obtained through equity, debt or a combination thereof within the time required for the balance of the payment to Whiting, nevertheless, the $2,000,000 payment is due on August 2, 1999 which is the next business day after today and no such funding source has yet committed or is expected to be found within the required time. Further, management believes that the Company will have a better negotiating advantage than it has had previously with existing or potential funding prospects if it has made the August 2nd payment.

4. Messrs. Parker and Larson are willing to personally guarantee the Promissory Note to Labyrinth Enterprises, LLC from Delta (which personal guarantee is required by Labyrinth Enterprises LLC) under the following conditions.

   a) As consideration for their personal guarantees the Company will assign to each of the them a 1% overriding royalty interest in the Whiting interests, proportionately reduced to the interest actually acquired from Whiting, which interest will be assigned in the same manner and with the same document format as the overriding royalty payable to BWAB as part of its compensation for arranging the purchase of the Whiting interests. The assignment of the overriding royalty interests will be made at such time as the Company has received appropriate consent from Snyder Oil Corporation ("SOCO") under the various agreements among the Company, SOCO and the Trustee for Underwriters Financial Group, Inc. ("UFG") or at such time as such consent is not required. Until the assignment is made an amount equal to the net proceeds from each override will be paid from revenues received by the Company from the Whiting interests to Messrs. Parker and Larson in the form of additional salary or bonuses.

   b) Messrs. Parker and Larson do not wish to be personally liable for either the $1,000,000 previously loaned to the Company or the additional loan for $2,000,000 to be guaranteed beyond December 1, 1999. This is because of the uncertainties in the equity markets generally, Delta's market in particular, the oil and gas prices and the general economy all of which risks are greatly disproportionate to their relatively small interests in Delta. Further, it is particularly important to Messrs. Parker and Larson that they maintain a positive business and personal relationship with their funding source for the $3,000,000 which they have used for the benefit of Delta. Consequently, Messrs. Parker and Larson will require that if financing in the form of equity or debt which effectively eliminates their personal liability is not obtained by October, 1, 1999 then Messrs. Parker and Larson will have the right to cause the Whiting properties to be sold to a third party for a price which is solely determined by them without consent of the board of directors or shareholders with the proceeds therefrom first applied to the aggregate $3,000,000 of indebtedness against the properties. Any balance of proceeds from a sale in excess of the indebtedness and interest thereon will be retained by the Company.

5. It is found that the conditions and requirements of Messrs. Parker and Larson in Paragraph 4 a) and b) above in connection with their arrangement for the personal guarantees of the loans from Labyrinth Enterprises LLC are fair and reasonable under the circumstances and that by obtaining the financing that will allow the Company to proceed with the acquisition the Company is receiving fair value in exchange and that the entire transaction is in the best interest of the shareholders.

DEF00159

It is further noted that Messrs. Parker and Larson could have declined to provide their personal guarantees for the $2,000,000 and refrained from the loan arrangement for the previous $1,000,000 in which event the Company would not have been able to purchase this first 50% of the Whiting interests and Messrs. Parker and Larson would have been free to make such financial arrangements on their behalf for the purchase of these properties. By using their personal contacts, financing resources and borrowing power for the benefit of the Company they have or will forego using them for themselves and are thereby losing other potentially valuable financial opportunities.

With Messrs. Parker and Larson abstaining Messrs. Eckelberger and Enright approved the following resolution:

"Resolved, that the Company borrow $2,000,000 from Labyrinth Enterprises, LLC, under the terms set forth in the attached copies of the Promissory Note, Guarantees and related documents and that Aleron H. Larson, Jr. and Roger A. Parker or either of them are authorized to execute and deliver such documents to Labyrinth Enterprises, LLC", and

"Further resolved, that the Company assign a 1% overriding royalty interest, each, to Aleron H. Larson, Jr. and Roger A. Parker in the Whiting interests acquired and to be acquired by the Company, which overriding royalty interests shall be proportionately reduced to the interests acquired by the Company and that Aleron H. Larson, Jr. and Roger A. Parker or either of them are authorized to execute such form of assignment and other documents as are necessary to accomplish the creation and assignment of the overrides. The assignment of the overriding royalty interests will be made at such time as the Company has received appropriate consent from SOCO under the various agreements with SOCO and UFG or at such time as such consent is not required. Until the assignment is made an amount equal to the net proceeds from each override will be paid to Messrs. Parker and Larson in the form of additional salary or bonuses"; and

"Further resolved, that the Company grant to Messrs. Parker and Larson the right to cause the Whiting interests and the opportunity to acquire any remaining Whiting interests to be sold to a third party for a price and consideration which is solely determined by Messrs. Parker and Larson without further consent of the Board if financing in the form of equity and/or long term debt which eliminates their personal liability for the aggregate $3,000,000 for which they are now liable or which is otherwise acceptable to them is not obtained by October 1, 1999. Any balance of proceeds from a sale in excess of the aggregate indebtedness and interest thereon will be retained by the Company"; and

"Further resolved, that the Company enter into an agreement with Messrs. Parker and Larson in the form attached hereto and that Messrs. Parker and Larson or either of them are authorized to execute the agreement on behalf of Delta".

There being no further business the meeting was adjourned.

_____
Aleron H. Larson, Jr., Director
*with noted abstenence*

_____
Roger A. Parker, Director
*with noted abstension*

_____
Terry D. Enright, Director

_____
Jerrie F. Eckelberger, Director

DEF00161

There being no further business the meeting was adjourned.

_____
Aleron H. Larson, Jr., Director
with noted abstention

_____
Roger A. Parker, Director
with noted abstention

_____
Terry D. Enright, Director

_____
Jerrie F. Eckelberger, Director