# ATTACHMENT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                      :
In re:                                                :     Chapter 11
                                                      :
DELTA PETROLEUM, <u>et al.</u>,                       :     Case No. 11-14006 (KJC)
                                                      :
            Debtors.                                  :     Jointly Administered
                                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x
DELTA PETROLEUM GENERAL                                :
RECOVERY TRUST, and PAR                               :
PETROLEUM CORPORATION,                                :
                                                      :     Adv. Pro No. 12-50898 (KJC)
            Plaintiffs,                                :
v.                                                    :
                                                      :
BWAB LIMITED LIABILITY COMPANY,                       :
                                                      X
        Defendant, Counterclaimant.


**BWAB'S REPLY MEMORANDUM IN SUPPORT OF ITS CROSS-MOTION**
**FOR SUMMARY JUDGMENT**

BENESCH, FRIEDLANDER, COPLAN &          JONES & KELLER, P.C.
ARONOFF LLP
                                        Barry L. Wilkie (Colo. Bar No. 10751)
Raymond H. Lemisch (No. 4204)           Stuart N. Bennett (Colo. Bar No. 5682)
222 Delaware Avenue, Suite 801          1999 Broadway, Suite 3150
Wilmington, DE 19801                    Denver, CO 80202
(302) 442-7010                          (303) 573-1600

                                        *Counsel to BWAB Limited Liability*
                                        *Company*

1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...…………………………………………………………………3

PRELIMINARY STATEMENT ...………………………………………………………………..4

ARGUMENT ...………………………………………………………………………………6

    A.    Plaintiffs' argument that the ORRIs are something other than real property
           interests fail …………………………………………………………………....6

    B.    Plaintiffs ignore the plain language of the NOI in claiming that the 1994
           ORRI was part of the bankruptcy estate…………………………………....10

    C.    Plaintiffs concede that their interpretation of the word "all" is contrary to
           cannons of contract interpretation…………………………………….…………10

    D.    Plaintiffs concede that they are judicially estopped from asserting the NOI is
           anything but interests in real property …………………………………...…...12

    E.    Plaintiffs concede that the Court should disregard Mr. Bullock's testimony……13

    F.    Plaintiffs' filings and the course of performance demonstrate BWAB
           could not have perfected the 1999 ORRI………………………………………..13

    G.    Plaintiffs misstate the nature of the NOI when attempting to escape the
           conclusion that it is either an interest in real property or an executory
           contract that has been rejected …………………………………………………..14

CONCLUSION …………………………………………………………………………………15

# TABLE OF AUTHORITIES

**Cases**

*La Laguna Ranch Co. v. Dodge*, 114 P.2d 351, 353 (Cal. 1941) ……………………..……….6, 7, 8

*Honolulu Oil Corp. v. Kennedy*, 251 F.2d 424, 429 (9th Cir. 1957) ………………...………6, 7, 9

*T-Vestco Litt-Vada v. Lu-Cal One Oil Co.*, 651 S.W.2d 284, 291 (Tex. Ct. App. 1983)....6, 7, 8, 9

*Tennant v. Dunn*, 110 S.W.2d 53, 56-57 (Tex. 1937) ………………………………..………...6, 7

*Schiffman v. Richfield Oil Co.*, 64 P.2d 1081, 1088-89 (Cal. 1937) …………………...…..8, 11

*Transamerican Natural Gas Corporation v. Finkelstein,* 933 S.W.2d 591, 593-94
   (Tex. Ct. App. 1996) ………………………………………………..………………....9

*Stewart Title Co. v. Herbert*, 6 Cal. App. 3d 957, 962-63 (Cal. Ct. App. 1970) ……………..11

*EOG Resources, Inc. v. Hanson Production Co.,* 94 S.W.3d 967, 700-01
   (Tex. Ct. App. 2002) ……………………………………………………………………11

*In re Exide Technologies*, 607 F.3d 957, 962 (3rd Cir. 2010) ………………………………14, 15

**Secondary Sources**

Martin J. McMahon, Annotation, *Oil and Gas Royalty as Real or Personal Property*,
56 A.L.R. 4TH 539 (originally published 1987) …………………………………………..9

7735623 v1

BWAB Limited Liability Company ("BWAB"), by and through its attorneys, and with reference to the capitalized terms in BWAB's Memorandum in Support of its Cross-Motion for Summary Judgment (Adv. D.I. 74), submits this Reply Memorandum in Support of its Cross-Motion for Summary Judgment.

## I.    PRELIMINARY STATEMENT

Plaintiffs Delta Petroleum General Recovery Trust and PAR Petroleum Corporation's (collectively, "Plaintiffs") Response in Opposition to BWAB's Cross-Motion for Summary Judgment (Adv. D.I. 84, "Response to CMSJ") and indeed Plaintiffs' Motion for Summary Judgment (Adv. D.I. 34-35) are based on the erroneous argument of counsel that  BWAB's 1994 Overriding Royalty and the 1999 Overriding Royalty are not overriding royalties at all, but are instead mere contract rights to payment from cash flows.  Plaintiffs have no authority for this proposition and ignore both the plain language of the Assignments and applicable law. Ironically, Plaintiffs repeatedly accuse BWAB of disregarding the plain language of the relevant conveyances at issue in this case when, in reality, it is Plaintiffs who ignore the plain language of the conveyances, even calling them contracts when they are obviously and irrefutably conveyances of overriding royalties.  Plaintiffs argue that despite the language of the conveyances there is no way to extract an "actual ORRI from these documents."  There is simply no basis in the law to distinguish these overriding royalties from "actual" overriding royalties.

As overriding royalties, the 1994 and 1999 Assignments are, under California law and the law of most other oil producing states, interests in real property, regardless of whether the conveyance is of an interest in the oil and gas in place, or only of the proceeds from the sale thereof and regardless whether payable from gross revenue or some net revenue interest, however defined.  In short, Plaintiffs' assertion that these Assignments are not "true overriding royalties" finds no support in the language of the documents, applicable law or industry custom

4

and practice. This erroneous assertion underlies all of Plaintiffs' claims. Summary judgment in BWAB's favor is therefore warranted on this basis alone.

Plaintiffs further disregard the plain language of the net operating interest ("NOI") that Whiting assigned to Delta in a ridiculous effort to claim that the 1994 ORRI was actually part of Delta's property and thus part of the Delta bankruptcy estate. A plain reading of the NOI assignment reveals that the interest Whiting assigned to Delta specifically excluded the 1994 ORRI.

Plaintiffs have not addressed why they are not judicially estopped from asserting that the interests are anything other than real property interests. Indeed, Plaintiffs' Response to the CMSJ is silent on the issue, so Plaintiffs appear to have conceded the point. Regardless, the parties actually involved in the transactions at issue considered the conveyances to be real property interests, used plain language describing them as real property interests, paid them as such both before and during Delta's bankruptcy, and described them as real property interests in bankruptcy schedules. Using solely the arguments of their present counsel—which find no support in either law or fact—Plaintiffs nevertheless argue the 1994 ORRI and 1999 ORRI are not real property interests. The Court should reject these arguments and grant BWAB's Cross-Motion.

Plaintiffs also argue that even if the 1999 ORRI is a real property interest, it is nevertheless avoidable under §544(a)(3) of the Bankruptcy Code because BWAB could somehow have perfected the interest by a quiet title action even though there is no evidence that there was ever any controversy between or among the parties as to the nature and extent of BWAB's property. To the contrary, Delta's bankruptcy filing and its actions before and during its bankruptcy proceeding confirm that BWAB was never presented with a dispute that could

5

have been the subject of a Court's declaration.  The 1999 ORRI was a conveyance which could

not have been perfected pursuant to California law, and thus cannot be avoided in bankruptcy.

Plaintiffs concede that their current interpretation of the word "all" in the 1994 ORRI

would lead to the absurd conclusion that Whiting could unilaterally reduce the conveyance once

it had been granted.  The Court should apply standard contract interpretation principles and

applicable legal precedent to reject that argument.  Moreover, even if such interpretation is

correct, Plaintiffs fail to explain or provide any evidence as to how Delta somehow acquired a

right to reduce property conveyed to BWAB by Whiting.

Plaintiffs' claims—likely concocted by Plaintiffs' attorneys without legal or factual

support—cannot withstand scrutiny.  The Court should not tolerate Plaintiffs' frivolous attempt

to take what is not rightfully theirs.  The Court should therefore grant the Cross-Motion.

## II.     ARGUMENT

### A.     Plaintiffs' argument that the ORRIs are something other than real property interests fails.

Where a lessor of an oil and gas lease "assigns to third persons fractional interests in the

royalties which he has reserved to himself, the holder of such a fractional interest acquires an

interest in real property, an incorporeal hereditament analogous to the right to receive future

rents of real property."  *La Laguna Ranch Co. v. Dodge*, 114 P.2d 351, 353 (Cal. 1941).  Where

a lessee of an oil and gas lease assigns an overriding royalty interest to another, or reserves an

overriding royalty interest to itself, the overriding royalty interest is likewise a real property

interest under California law, as well as Texas, another leading oil-producing state.  *Id.*;

*Honolulu Oil Corp. v. Kennedy*, 251 F.2d 424, 429 (9th Cir. 1957); *T-Vestco Litt-Vada v. Lu-Cal

One Oil Co.*, 651 S.W.2d 284, 291 (Tex. Ct. App. 1983); *Tennant v. Dunn*, 110 S.W.2d 53, 56-

57 (Tex. 1937).  Whiting, as a working interest owner, did exactly that—conveying an overriding

7735623 v1

royalty interest to BWAB as evidenced by the plain language of the 1994 ORRI. *See* Adv. D.I.

35 at 6 (the 1994 ORRI conveyed "'an overriding royalty'"); *compare with id.* at 12 (conceding

that Delta's conveyance of the 1999 ORRI, by comparison, "appears to convey a true overriding

royalty interest" solely because it granted an interest in the "'oil and gas leases and lands'").

That the 1994 ORRI was payable out of gross production after deduction of certain expenses

with respect to the production of oil and gas is of no moment with respect to the real or personal

nature of the property interest.  Overriding royalties may be paid out of gross production, or net

revenue derived from gross production, without changing their character from an overriding

royalty to something else.  Indeed, although there is some authority to the contrary, the "better

view" is that even a net profits interest in an oil and gas property is an interest in real property.

*T-Vestco Litt-Vada*, 651 S.W.2d at 291-92 (*citing* 2 Williams and Meyers, Oil and Gas Law §

424.1 at 440).  *T-Vestco Litt-Vada* in fact adopts this "better view":

> Whether the interest created by the [contracts in dispute] is an overriding royalty
> or a net profits interest is not a matter we are required to decide. . . it is plain that
> the instruments creating the interest do not purport to transfer . . . the underlying
> leases or any oil and gas in place, or a fractional part thereof.  **We conclude,**
> **however, that the interest conveyed . . . is nevertheless an interest in land.**

651 S.W.2d at 292 (*citing Tennant*, 110 S.W.2d at 56-57) (emphasis added).

It is also irrelevant that the ORRIs do not purport to convey ownership rights to "any pre-

existing thing (*e.g.*, land or hydrocarbons in place)."  Response to CMSJ at 9.  Indeed, such an

ownership right would be an assignment that would "'make the assignee a tenant in common[,]'"

as contrasted to an assignment whereby the assignor retains "'in himself the operating rights

contained in the profit a prendre, conveying to the assignee merely a fractional share of the oil

and gas produced in the form of an overriding royalty.'"  *Honolulu Oil Corp.*, 251 F.2d at 429

(*quoting La Laguna Ranch*, 114 P.2d at 354).  This "overriding royalty" is "an interest in real

property." *Id.* (*citing, inter alia, La Laguna Ranch*). *See also T-Vestco Litt-Vada,* 651 S.W.2d at

292.  By focusing on whether BWAB held an ownership right concerning a "pre-existing thing,"

(Response to CMSJ at 9) or "a right in the oil and gas itself" (*id.* at 7), Plaintiffs appear to urge a

distinction concerning the nature of oil royalty assignments that was rejected in California long

ago:

> The rights of the holders of royalty assignments to an interest in the proceeds
> of oil produced by an assignee of the leasehold should not depend on whether
> the assignment is of a percentage of the oil 'to be produced, saved, and
> sold,'… or is of a percentage of the net proceeds as in the instant case.
> Purchasers of royalty interests are generally investors who are not prepared to
> accept delivery of oil in kin[d], or to market their interest in the output of the
> well….
>
> Where royalty assignments are made by a lessee, the holders thereof have an
> interest in oil produced by an assignee of the leasehold covering the land from
> which the oil is to be produced who acquires the leasehold with notice, or in
> the proceeds thereof. The royalty assignee's interest in the proceeds must be
> upheld **whether the assignment is of oil to be produced saved and sold, or
> of proceeds of such oil**. It is unnecessary here to decide whether the royalty
> assignee, before sale, has title to an undivided interest in the oil produced
> where the assignment is of a percentage of the proceeds, as in the instant case.

*Schiffman v. Richfield Oil Co.*, 64 P.2d 1081, 1088-89 (Cal. 1937) (emphasis added). Plaintiffs'

counsel's argument is thus contrary to  decades-old decisions of the courts of California and

Texas and the general precepts of oil and gas law described by William and Meyers in their

treatise on oil and gas law.

Plaintiffs nevertheless argue BWAB's 1994 ORRI is not a real property interest but

instead "a derivative interest in a defined net cash flow[,]" and/or "an interest *derived* from the

net revenue calculation."  Response to CMSJ at 6 (emphasis in original).  Plaintiffs' counsel's

italicization of words does not transform the plain language of the 1994 ORRI into something

other than the assignment of "fractional interests in the royalties" or the conclusion that it is

anything else besides "an interest in real property…." *La Laguna Ranch Co.*, 114 P.2d at 353.

There is literally no authority under the law of either California, Colorado or Texas that supports Plaintiffs' counsel's derivative argument—one that seems to have been invented out of whole cloth by Plaintiffs' counsel and not recognized by a single court in any of the potentially persuasive jurisdictions.

Likewise, an overriding royalty interest remains an interest in real property regardless of whether it is calculated on the basis of net profits, net revenue, or gross revenue. *Honolulu Oil Corp.* 251 F.2d at 429; *T-Vestco Litt-Vada*, 651 S.W.2d at 291-92; *Transamerican Natural Gas Corporation v. Finkelstein,* 933 S.W.2d 591, 593-94 (Tex. Ct. App. 1996) (construing rights under an overriding royalty interest equivalent to 1/16 of the net revenue interest). The only difference is the amount of the interest, not the nature of the interest. Plaintiffs cite no authority to the contrary. Indeed, all overriding royalty interests—and even a landowner's royalty—are in some way "derived" from cash flow from the production of oil and gas (*i.e.* the proceeds from the sale of production of oil from real property). That does not change their nature from realty to personalty. If the Court were to accept Plaintiffs' argument about "derived" interests, there could be *no* "genuine ORRIs" (Response to CMSJ at 18) at all. While the real or personal nature of oil and gas royalties differs to some extent based on other issues (*e.g.* venue analysis, for purposes of taxation, whether the royalty is accrued or unaccrued), at least one exhaustive secondary source does not appear to cite to any case which distinguishes the real or personal nature of the property interest based on whether it is calculated based on net profits, net revenue, or gross revenue. *See* Martin J. McMahon, Annotation, *Oil and Gas Royalty as Real or Personal Property*, 56 A.L.R. 4TH 539 (originally published 1987). The issue is the interest granted to the assignee by the assignor, not the alleged "novel" nature of the interest granted to Delta under the NOI. Whether the NOI is unusual does not make the ORRIs into something that they are not.

**B.      Plaintiffs ignore the plain language of the NOI  in claiming that the 1994 ORRI was part of the bankruptcy estate.**

Plaintiffs cite a portion of the 1994 ORRI concerning Whiting's successors to argue that the 1994 ORRI is within "the reach of the Bankruptcy Code…."  Response to CMSJ at 9. However, Delta did <u>not</u> acquire the 1994 ORRI in its transaction with Whiting, as the NOI <u>specifically excluded</u> then-existing overriding royalty interests.  The Roitman Declaration at ¶ 22 quotes the applicable provisions of the NOI which <u>excludes</u> "royalties and overriding royalties…."  Indeed, Plaintiffs admit that with respect to Delta's NOI, the 1994 ORRI exists and is accounted for "*before* Delta's interest comes into existence…."  Response to CMSJ at 8 (emphasis in original).  As such, Delta did <u>not</u> purchase the "cash flow" to which the 1994 ORRI pertains when it acquired the NOI.  The property description attached as Exhibit A to the NOI (Roitman Dec. at Exh. 1) also describes the interests being conveyed as a gross working interest of 6.06521% in the Arguello Unit and a 4.8425% Net Revenue Interest.  The difference between the gross revenue interest and the net revenue interest is 20.16%, which is the total  of the federal government's 1/6th royalty (16.667%) plus the 3.5% 1994 BWAB royalty.  Both the federal government's royalty and BWAB's royalty were plainly excluded from the Net Operating interest that Whiting conveyed to Delta. The 1994 ORRI is no more subject to avoidance, elimination or "stripping", under the Bankruptcy Code, than would be the federal government's landowner royalty.  Neither of the royalties were ever the debtor's property.

**C.      Plaintiffs concede that their interpretation of the word "all" is contrary to cannons of contract interpretation.**

Plaintiffs admit that their most recent interpretation of the word "all" in the 1994 ORRI would result in the conveyance of "an interest that could diminish over time…."  Response to CMSJ at 13.  As such, Plaintiffs do not shy away from the logical conclusion that, under their

reading, the very day after Whiting conveyed the 1994 ORRI to BWAB, Whiting could have effectively taken it away.  Plaintiffs offer no authority for their current interpretation, which is in fact contrary to the parties' course of conduct for well over a decade as well as the law:

> The purchaser of royalty assignments makes a highly speculative investment. The well may never be brought into production, or may soon fail. In consideration of investing his funds in an enterprise with a high risk of total loss, the purchaser of a royalty interest receives an assignment of a percentage of the oil to be produced, or the proceeds therefrom, which is expressly…or impliedly, as in the instant case, for the continuance of the lease.

> It is certainly not within the contemplation of the royalty holder that in addition to the other risks involved, the lessee may at any time terminate the royalty holder's interest by assigning the lease, and leave the royalty holder either remediless or with a claim for a share of the price received by the lessee for the transfer of the leasehold, or a claim for monetary damages…. <u>He has bargained for an interest in the oil produced during the term of the lease, or in the proceeds therefrom, and that is what he should receive</u>. The law is not powerless to protect him through a lack of exact precedent.

*Schiffman*, 64 P.2d at 1089 (emphasis added); *see also Stewart Title Co. v. Herbert*, 6 Cal. App. 3d 957, 962-63 (Cal. Ct. App. 1970) (interpreting "all" in "consideration of the entire contract" and in light of the intention of the parties to reject an "unreasonable" literal interpretation).

There is no evidence that Whiting and BWAB intended BWAB's 1994 ORRI to be unilaterally decreased by Whiting at any time in the future.  More importantly, Whiting has never done so and Plaintiffs fail to explain how Delta somehow obtained such right.  On the contrary, the Court has ample evidence that the 1994 ORRI was <u>not</u> intended to be reduced by Whiting's subsequent conveyances.  Adv. D.I. 44 at 32-34; Adv. D.I. 75 at 24-26.  The interpretation urged by Plaintiffs is also contrary to a decision of the Texas Court of Appeals in *EOG Resources, Inc. v. Hanson Production Co.,* 94 S.W.3d 967, 700-01 (Tex. Ct. App. 2002), wherein the Court of Appeals affirmed a trial court's holding that the overriding royalty percentage reserved in an assignment was fixed and determined on the date assigned, notwithstanding that modifications by the lessee and lessor to the underlying lease would have entirely eliminated the overriding

11

royalty holder's interest. *Id.* Subsequent acts by the lessee to modify the lease after having granted an overriding royalty simply could not extinguish the overriding royalty.

Moreover, Plaintiffs' argument that "it would make little sense for [the 'all'] term to apply only to existing burdens and payments, since, at the time the 1994 Assignment was executed, it appears there were no other burdens and payments on Whiting's interests[,]" (Response to CMSJ at 12) is founded on a fundamental error: in 1994, Whiting's interest was at least burdened by the Federal Government's 16.667% landowner royalty.   It is thus perfectly reasonable to give reasonable meaning to the word "all" without turning the 1994 ORRI into an illusory conveyance (as Plaintiffs urge).

### D.     Plaintiffs concede that they are judicially estopped from asserting the NOI is anything but interests in real property.

In response to Plaintiffs' Motion for Summary Judgment, BWAB described the series of filings which demonstrate that at all times before this dispute was created by Plaintiffs or their attorneys, Plaintiffs asserted the NOI was an interest in real property. *See* Adv. D.I. 44 at 21-23. In reply, Plaintiffs cited inapplicable authority concerning why the doctrine of judicial estoppel should not be applied against them, and BWAB demonstrated why these authorities were of no help to Plaintiffs.  Cross Motion at 28 (discussing the inapplicable and sole authorities Plaintiffs cited).  The Response to CMSJ <u>does not even attempt</u> to resurrect Plaintiffs' argument against the application of the doctrine of judicial estoppel.  Plaintiffs therefore have conceded that they are barred from taking the opposite position concerning the NOI that they took throughout the bankruptcy.  Plaintiffs change their tune now due to expediency, not principle.  Indeed, at <u>no time</u> in this adversary proceeding have Plaintiffs explained why Delta repeatedly and consistently referred to the NOI as an interest in real property during the bankruptcy.  As the 1999 ORRI was carved from the NOI, it too should be deemed an interest in real property.

12

### E.  Plaintiffs concede that the Court should disregard Mr. Bullock's testimony.

BWAB has repeatedly demonstrated that Mr. Bullock lacks competency to offer any evidence in this dispute.  Adv. D.I. 44 at 38-40; Adv. D.I. 75 at 32-33.  In response, Plaintiffs do nothing to defend his ability to testify in this matter.  Response to CMSJ at 11.  As such, the Court should not credit the pure speculation that he offered in his declaration in support of Plaintiffs' Motion for Summary Judgment.

### F.  Plaintiffs' filings and the course of performance demonstrate BWAB could not have perfected the 1999 ORRI.

Plaintiffs argue that their own manufactured "immediate controversy" (Response to CMSJ at 16) concerning whether BWAB was entitled to record the 1999 ORRI conferred standing upon BWAB in a declaratory judgment action.  However, there has never been a legitimate controversy concerning the nature of BWAB's interest or whether BWAB could have recorded it.  It was paid for over a decade.  Adv. D.I. 44 at ¶ 25.  Checks paying the interest indicated BWAB was an "owner."  Adv. D.I. 44 at ¶ 30.  Delta's bankruptcy schedules listed BWAB as a "Royalty Interest Owner," *not* a contract interest owner.  D.I. 140 at 217; D.I. 492 at 146.  Moreover, BWAB was *not* deemed a "disputed" "Royalty Interest Owner".  D.I. 140 at 217; D.I. 492 at 146 ("disputed" column in scheduled left unchecked).  Delta sought and received the Court's permission to pay ORRI owners, then made payments to BWAB pursuant to those orders.[1]  D.I. 9, 66, 296; Adv. D.I. 44 at ¶ 25.  No one questioned BWAB's ownership until, apparently, Plaintiffs' new counsel got involved either shortly before or immediately after Plan confirmation.  Mr. Bullock testified that as CFO of Delta he was not even aware of an issue relating to the Point Arguello properties until the end of the bankruptcy in August 2012 when someone (he could not or would not recall whom) brought it to his attention.  Bullock Tr. 15:1-

---

[1] Indeed, Delta's payment of all that was then-owed to BWAB through the Confirmation Date is precisely why BWAB had no "claim" at any point during Delta's bankruptcy.

16:5, attached as Exh. A, hereto.  It is entirely unclear against whom BWAB would bring a

declaratory judgment action or for what purpose, Delta did not dispute BWAB's ownership and

neither did Whiting.  It was only after BWAB explained how its 1999 ORRI could not be

avoided under Section 544 that Plaintiffs—or, more likely, Plaintiffs' counsel—fabricated a

dispute.

> **G.**     **Plaintiffs misstate the nature of the NOI when attempting to escape the conclusion that it is either an interest in real property or an executory contract that has been rejected.**

Plaintiffs assert that the "NOI is a fully executed contract that requires only the payment

of money[,]" and that, therefore, "there was no need for the debtor to accept, reject, or elect to

allow that contract to ride through the bankruptcy."  Response to CMSJ at 16 n. 5.  Plaintiffs

oversimplify the distinction between an executory and non-executory contract as well as the

relationship between Whiting and Delta.  The authority that Plaintiffs themselves cite makes

clear that the distinction is dependent on a state of affairs where, aside from one party paying the

other, "'**all** the elements of performance have been accomplished….'"  *Id.* (emphasis added,

citation omitted).  Indeed, an executory contract "is a contract under which the obligation of both

the bankrupt and the other party to the contract are so far underperformed that the failure of

either to complete performance would constitute a material breach excusing the performance of

the other."  *In re Exide Technologies*, 607 F.3d 957, 962 (3rd Cir. 2010).

The plain language of the NOI demonstrates that, if not a real property interest, it was an

executory contract that has been rejected, because Whiting and Delta owed each other <u>ongoing

mutual</u> obligations, and either party could fail to perform and thus materially breach the contract.

Indeed, pursuant to the NOI, "in the event of positive cash flow, [Whiting] will pay the excess to

[Delta]; in the event of a negative cash flow, [Delta] will pay the deficit to [Whiting]."  Adv. D.I.

44 at 12.  As such, if not an interest in real property, the NOI is an executory contract because

14

**both** Whiting **and** Delta (*i.e.* "both parties") have "unperformed obligations that would constitute a material breach if not performed….'" *In re Exide*, 607 F.3d at 962 (citation omitted).  If not an interest in real property, the NOI is an executory contract that has been rejected.  Adv. D.I. 44 at 21.

### III.    CONCLUSION

For the foregoing reasons, and those set forth in BWAB's Cross Motion, the Court should enter summary judgment in BWAB's favor and against Plaintiffs with respect to Plaintiffs' claims and BWAB's counterclaims.

Dated:          July 12, 2013

<div style="margin-left:40%">

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

By:    */s/ Raymond H. Lemisch*
Raymond H. Lemisch, Esquire (No. 4204)
222 Delaware Avenue, Suite 801
Wilmington, DE 19801
(302) 442-7010 telephone
(303) 442-7012 facsimile
rlemisch@beneschlaw.com

– and –

Barry L. Wilkie, Esq.
Stuart N. Bennett, Esq.
**JONES & KELLER, P.C**
1999 Broadway, Suite 3150
Denver, CO  80202
(303) 573-1600 telephone
(303) 573-8133 facsimile
bwilkie@joneskeller.com

*Counsel to BWAB Limited Liability Company*

</div>

# EXHIBIT A

Case 12-50877-KJC   Doc 85-1   Filed 07/12/13   Page 18 of 21

Page 1

                IN THE UNITED STATES BANKRUPTCY COURT
                  FOR THE DISTRICT OF DELAWARE

Case No. 11-14006(KJC)      (Jointly Administered)
Adv. Pro No. 12-50898(KJC)
Adv. Pro No. 12-50877(KJC)

IN RE:

DELTA PETROLEUM CORPORATION, et al.,

Debtors,

DELTA PETROLEUM GENERAL RECOVERY TRUST and PAR PETROLEUM
CORPORATION,

Plaintiffs,

v.

BWAB LIMITED LIABILITY COMPANY,

Defendant.

and

DELTA PETROLEUM GENERAL RECOVERY TRUST and PAR PETROLEUM
CORPORATION,

Plaintiffs,

v.

ALERON LARSON, JR.,

Defendant.

_____

DEPOSITION OF:  R. SETH BULLOCK - June 7, 2013

_____

In Re: Delta Petroleum Corp. (Debtor)    R. SETH BULLOCK    6/7/2013

Case 12-50877-KJC    Doc 851-1    Filed 07/12/13    Page 19 of 21

Page 2

```
 1              PURSUANT TO NOTICE, the deposition of
    R. SETH BULLOCK was taken on behalf of the Defendants
 2  at 1999 Broadway, Suite 3150, Denver, Colorado 80202,
    on June 7, 2013, at 9:02 a.m., before Rita DeRouen,
 3  Registered Professional Reporter and Notary Public
    within Colorado.

 4

 5

 6

 7              A P P E A R A N C E S

 8  For the Plaintiffs:

 9          DAVID R. PEHLKE, ESQ.
            Skadden, Arps, Slate, Meagher & Flom, LLP
10          155 North Wacker Drive
            Chicago, Illinois  60606
11

12  For the Defendants:

13          STUART N. BENNETT, ESQ.
            Jones & Keller, P.C.
14          1999 Broadway
            Suite 3150
15          Denver, Colorado  80202

16

17

18

19

20

21

22

23

24

25
```

1      Q.   (BY MR. BENNETT)   In connection with your

2   review of cash flow from Point A, did you have

3   occasion to review the contracts relating to Point A?

4      A.   Not until we were made aware of the issue

5   we're discussing here.

6      Q.   How did you become aware of the issue

7   relating to Point A?

8      A.   I, again, don't recall.  It could have

9   been an attorney mentioned something or it came up

10  during the course at really the end of the bankruptcy

11  that there was a potential, again, issue with the

12  interests in Point A.

13     Q.   So you don't know how that issue was first

14  -- first came to your attention?  You don't know how

15  the issues of the cash flows of Point A first came to

16  your attention?

17         MR. PEHLKE:  Objection; that

18  mischaracterizes.

19     A.   I mean, clearly I was told at some point.

20  But you've got to keep in mind, in bankruptcy,

21  particularly at the end of a case, there's a lot going

22  on, and it was one task amongst many.  So I was

23  clearly aware of it, I was clearly made aware of it,

24  but I can't tell you specifically who or when or what

25  I was told.

In Re: Delta Petroleum Corp. (Debtor)    ROSEN BULLOCK    6/7/2013

Case 12-50877-KJC   Doc 8551   Filed 07/12/13   Page 21 of 21

Page 16

 1          Q.    (BY MR. BENNETT)   And in terms of timing

 2     of when you became aware of an issue relating to Point

 3     A, it was toward the end of the bankruptcy?

 4          A.    Yes.

 5          Q.    And by the end, would you agree with me

 6     that the end was sort of August of 2012?

 7          A.    Yes.

 8          Q.    Did you have any role in the preparation

 9     of the schedules when Delta first filed bankruptcy?

10     Its bankruptcy schedules is what I mean.

11               MR. PEHLKE:   Objection to foundation,

12     form, it's vague.

13          A.    Yes.

14          Q.    (BY MR. BENNETT)   You're aware of a filing

15     that is made when the company filed bankruptcy called

16     the Schedule of Assets and Liabilities?

17          A.    Yes.

18          Q.    And you had some role in the preparation

19     of those schedules?

20          A.    Yes.

21          Q.    You have a stack of exhibits in front of

22     you; if you will turn to those, they should be in

23     numerical order.   And I'll direct your attention to

24     Exhibit 33.   Exhibit 33 is excerpts of the Schedule of

25     Assets and Liabilities and Statement of Financial