## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | | |
| In re: | : | Chapter 11 |
| | : | |
| DELTA PETROLEUM, <u>et al.</u>, | : | Case No. 11-14006 (KJC) |
| | : | |
| Debtors. | : | Jointly Administered |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | : | |
| DELTA PETROLEUM GENERAL RECOVERY TRUST, and PAR PETROLEUM CORPORATION, | : : : : | Adv. Pro. No. 12-50877 (KJC) |
| Plaintiffs, | : | |
| v. | : | |
| ALERON LARSON, JR., | : | |
| Defendant, Counterclaimant | : X | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |
| DELTA PETROLEUM GENERAL RECOVERY TRUST, and PAR PETROLEUM CORPORATION, | : : : : | Adv. Pro No. 12-50898 (KJC) |
| Plaintiffs, | : | |
| v. | : | |
| BWAB LIMITED LIABILITY COMPANY, | : | |
| Defendant, Counterclaimant. | : X | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION
TO STRIKE EXPERT REPORT AND PRECLUDE TESTIMONY
OF DEFENDANTS' PROPOSED EXPERT**

BWAB Limited Liability Company ("BWAB") and Aleron Larson, Jr. ("Larson," collectively, "Defendants") by and through their attorneys, and with reference to the capitalized terms in Plaintiffs' Motion to (1) Strike Expert Report and (2) Preclude Testimony of Defendants' Proposed Expert (Adv. D.I. 88, henceforth "Motion") and those previously defined in this case's briefing, submit this Response in opposition to the Motion.

## I.    PRELIMINARY STATEMENT

Defendants disclosed Robert T. Cosgrove as an expert witness and served his expert report ("Cosgrove Report") on June 28, 2013.  The Motion should be denied because Plaintiffs mischaracterize the Cosgrove Report—not a syllable of which is quoted in the Motion.  The Cosgrove Report contains numerous opinions concerning the oil and gas industry's practice based on Mr. Cosgrove's extensive experience in that industry and analyzes the facts of this case in light of industry practice.

Pursuant to the Court's December 26, 2012 Scheduling Order (Adv. D.I. 19)[1], amended by the Amendment to Scheduling and Mediation Orders on February 25, 2013 (Adv. D.I. 40) and further amended on May 16, 2013 by the Second Amendment to Scheduling Order (Adv. D.I. 66), Plaintiffs had until July 19, 2013, to disclose a rebuttal expert following Defendants' disclosure of Mr. Cosgrove.  Instead, Plaintiffs filed their Motion, likely because they could find no rebuttal expert willing to take a position contrary to the Cosgrove Report.  However, the authorities Plaintiffs cite in their Motion do not support the contention that broad exclusion of Mr. Cosgrove's testimony is appropriate.  In fact, in many of the cases that Plaintiffs cite, expert testimony was <u>allowed</u> in one respect or another.  As such, the Court must carefully consider the Cosgrove Report rather than apply the overbroad remedy that Plaintiffs request.

---

[1] The Scheduling Order appears as Adv. D.I. 20 in *Delta Petroleum General Discovery Trust, et al v. Aleron Larson, Jr.,* Adv. Pro. No. 12-50877(KJC)

{JK00497897.4}                                                2

By proceeding with their Motion rather than obtaining their own rebuttal expert, Plaintiffs have started down a path that is both procedurally and substantively fruitless. Plaintiffs' Motions for Summary Judgment and Defendants' Cross Motions for Summary Judgment are fully briefed, scheduled for oral argument, and await the Court's decision. Therefore, the issues for trial—if any—in this case have yet to be determined. At trial, the Court is perfectly capable of weighing Mr. Cosgrove's qualifications and credibility, as well as the admissibility, reliability, and sufficiency of his expert testimony. Therefore, the remedy of now precluding Mr. Cosgrove's testimony is inappropriate. More importantly, should the Court determine that this case cannot be resolved on summary judgment, Mr. Cosgrove's industry expertise will assist the ultimate determination of fact, Plaintiffs' mischaracterization of the Cosgrove Report notwithstanding. The Court should deny the Motion.

## II.   THE COSGROVE REPORT

The Cosgrove Report (attached hereto as Exhibit A) undertakes a number of different analyses:

- It examines the nature of the 1994 and 1999 ORRI conveyances in this case, and opines that they followed "common" oil and gas industry custom and the "transactions are entirely consistent with industry practice." Cosgrove Report at 4.

- It looks at eleven different characteristics of BWAB's 1994 ORRI to conclude that it is not only a "real property interest," but "an overriding royalty interest in accordance with common industry standards." Cosgrove Report at 5.

- It describes the "not uncommon" occurrence during the title review process to observe "instruments conveying overriding royalty interests which are subject to future modification." Cosgrove Report at 5. It states that, "[t]ypically," such interests are "instances in which the overriding royalty interest is convertible to a working interest after the payout of a well or, alternatively, when the overriding royalty interest is convertible to a greater or lesser interest after payout or other economic factors are reached with respect to a particular well. In each such instance where this occurs, the language of the instrument of conveyance specifically provides for such a future modification." *Id.* at 5-6. It concludes that

- the lack of this industry-standard language in the BWAB 1994 ORRI created a "fixed interest in BWAB as of January 1, 1994…." *Id.* at 6.

- It looks at seven features of BWAB's 1999 ORRI to conclude that it "would be considered an overriding royalty interest in accordance with common industry standards." Cosgrove Report at 7. The Cosgrove Report makes the same conclusion with respect to Larson's 1999 ORRI. *Id.* at 8.

- After discussing the oil and gas industry practice whereby "the owner of record title to a lease assigns the operating rights to a portion of the lease[,]" the Cosgrove Report concludes that the NOI is "a conveyance of operating rights equivalent to the conveyance of a working interest in the oil and gas leases described in the instrument." Cosgrove Report at 7.

The Cosgrove Report also details Mr. Cosgrove's experience, qualifications, and materials he considered in forming his opinions. Cosgrove Report at 1-2; *id.* at Exhibits A and B thereto.

### III.    ARGUMENT

**A. The Cosgrove Report offers valuable industry practice insight into the relevant conveyances in this case.**

"As a general matter, testimony based on industry practices is admissible under Federal Rule of Evidence 702 and indeed is 'common fare in civil litigation.'" *Colon v. Mountain Creek Waterpark*, 465 F. App'x 186, 192 (3d Cir. 2012) (citation omitted) (finding no abuse of discretion in permitting expert testimony); *see also In re Bros. Gourmet Coffees, Inc.*, 271 B.R. 456, 462 (Bankr. D. Del. 2002) (crediting expert whose opinion was offered as to the industry custom of payment for orders). Expert testimony can provide insight into contract interpretation. *First Nat. State Bank of New Jersey v. Reliance Elec. Co.*, 668 F.2d 725, 731 (3rd Cir. 1981) (finding no reversible error in permitting expert on the Uniform Commercial Code to testify as to trade usage of contract terms).

{JK00497897.4 }                                          4

Moreover, "[r]elevant factors in interpreting an ambiguous contract[2] include the general practice, custom, or usage in a particular industry." *Keegan v. Steamfitters Local Union No. 420 Pension Fund*, 211 F. Supp. 2d 632, 642-43 (E.D. Pa. 2002) (*citing McQuestion v. N.J. Transit Rail Operations, Inc.,* 30 F.3d 388, 391 (3rd Cir.1994)), *aff'd sub nom. Keegan v. Steamfitters Local Union No. 420 Pension Plan*, 67 F. App'x 744 (3rd Cir. 2003).

As outlined above in § II, *supra*, the Cosgrove Report is built upon Mr. Cosgrove's extensive experience in the oil and gas industry and his understanding of industry practice. In analyzing the relevant conveyances in this case, Mr. Cosgrove draws conclusions about how the oil and gas industry generally understands those conveyances. His insight stands in sharp contrast to Plaintiffs' declarant Seth Bullock's industry knowledge (or lack thereof). This contrast highlights the inappropriateness of Plaintiffs' reliance on Mr. Bullock's declaration in their Motions for Summary Judgment to support those motions.

Plaintiffs cannot gloss over Mr. Cosgrove's relevant industry knowledge by dismissing his Report as "nothing more than legal conclusions…." Motion at 2. Indeed, Mr. Cosgrove does not opine on the ultimate issues in this case, such as whether any of the interests should be avoided pursuant to the Bankruptcy Code and whether Plaintiffs' actions constitute the torts

---

[2] The Court has not yet determined if the conveyance contracts at issue in this case are ambiguous. Defendants have not yet offered Mr. Cosgrove as a trial witness in what will be a trial to the Court. Thus, the mere posture of this case and the Motion require denial of the Motion. *In re TW, Inc.*, 2005 WL 2671531 (Bankr. D. Del. Oct. 14, 2005) (denying motion to strike expert as party had not yet offered expert as trial witness); *In re SubMicron Sys. Corp.*, 2001 WL 34367358 (Bankr. D. Del. June 27, 2001) (denying pre-trial motion to strike expert in trial to court because "the court will consider the admissibility, reliability and sufficiency of any expert testimony during the trial."); *Suter v. Gen. Acc. Ins. Co. of Am.*, 2004 WL 3751734 (D.N.J. Sept. 30, 2004) (denying summary-judgment-stage motions to preclude expert testimony as "premature[,]" and deferring decision on possibly renewed future motions until "matter is deemed trial-ready"); *Telcordia Technologies, Inc. v. Lucent Technologies, Inc.*, 2006 WL 6499658 (D. Del. Nov. 15, 2006) (denying motion to preclude expert testimony as "premature" because deadline for motions in limine had not yet arrived). If the Court determines the conveyances at issue are ambiguous—which neither Plaintiffs nor Defendants are arguing now—only at that point will the parties present ambiguity arguments; this posture compels denial of the Motion. *Wonderland Nurserygoods Co., Ltd. v. Thorley Indus., LLC*, 2013 WL 2471801 (W.D. Pa. June 7, 2013) (denying motion to strike expert as "premature" as Plaintiff essentially sought "an advisory opinion with respect to hypothetical invalidity arguments that are not before the Court" and declining to exercise jurisdiction over "hypothetical arguments that Plaintiff believes Defendant may present at some future stage of this litigation.").

BWAB and Larson have alleged. Rather, he provides relevant testimony concerning the conveyances at issue in light of industry practice. As such, Mr. Cosgrove does not attempt to usurp the Court's role in any respect, and his report should not be stricken nor should his expert testimony be excluded.

### B. Plaintiffs' own authorities show that wholesale exclusion of Mr. Cosgrove's testimony is inappropriate.

Plaintiffs' sought remedy of wholesale exclusion of Mr. Cosgrove's testimony is facially overbroad. That legal conclusions can be drawn from the facts in this case does not make Mr. Cosgrove's opinions concerning those facts insufficient under F.R.E. 702. The cases on which Plaintiffs rely in support of their Motion do not support the wholesale exclusion of Mr. Cosgrove's expert opinions. Each of cases allow an expert to offer opinions with respect to the facts and/or industry practices, and only excised the "legal conclusion" portion of the offered expert's testimony after careful analysis of the relevant issues.

Plaintiffs cite *Marx & Co. v. The Diners' Club, Inc.,* 550 F.2d 505, 509-12 (2nd Cir. 1977), for the general proposition that the "trial court erred in permitting attorney to give 'expert' testimony concerning contractual interpretation, which usurped function of trial judge. . . ." Motion at 4. That Plaintiffs cite to four pages of the opinion without any greater degree of specificity indicates that the citation is a broad generalization of the *Marx & Co.* court's actual holding and Plaintiffs' characterization of the *Marx & Co.* expert testimony as merely "contractual interpretation" is inaccurate. The expert's testimony was described by the Court of Appeals as "legal opinions as to the meaning of the contract terms at issue." *Id.* at 509 (referring to the expert's testimony as to his opinion as to the meaning of "best efforts" in the context of a covenant to register shares of stock). The Court further characterized the expert's testimony as going beyond construction of the contract. According to the Court, the expert "repeatedly gave

his conclusions as to the legal significance of various facts adduced at trial." *Id.* at 510. The expert was permitted to testify as to the date by which Diners' Club's should have fulfilled its contractual obligation to register Plaintiff's shares, whether Diners' Club used its best efforts to register the shares and whether Diner's Club had any legal excuse for not registering the shares sooner. Such testimony was considered by the Court to be nothing more than an expression by the witness as to how the case should be decided. *Id.* (*citing* MCCORMICK ON EVIDENCE, § 12, at 27).

More germane to Plaintiffs' Motion is the Second Circuit's acknowledgement that in the securities field, as in taxation, there are areas relating to practices and usages of a trade to which an expert can testify. The Second Circuit gave as examples of proper subjects of expert testimony "the nature of an option contract" or of a "convertible stock". Just as expert testimony is useful to the specialized issues and unique jargon in the securities industry, so too is expert testimony useful in equally specialized and unique oil and gas industry issues. *See Phillips Oil Co. v. OKC Corp.,* 812 F.2d 265, 282 (5th Cir. 1987) ("What better way is there to discover the technical meaning [of terms in an oil and gas farmout agreement] than through the use of Federal Rule of Evidence 702."). Therefore, Mr. Cosgrove's proposed opinions as to the nature and attributes of the overriding royalty and net operating interests at issue in this case and whether these contracts would be considered real property interests by knowledgeable and experienced persons in the industry are in fact proper subjects of expert testimony.

Plaintiffs also rely on *U.S. ex rel Mossey v. Pal-Tech, Inc.*, 231 F. Supp. 2d 94 (D.D.C. 2002). Motion at 4. The District Court in *Mossey* struck an expert report that copied "language directly from the Federal Acquisition Regulations ("FAR") to explain [the expert's] conclusions that the [contract] . . . was not a personal services contract." *Id.* at 98. The Court characterized

the expert's report as nothing more than definitions of legal and regulatory terms coupled with the expert's opinions on how those terms affected the contract. *Id.* The Court held that terms of art taken directly from regulations are nothing more than legal conclusions and cited Plaintiffs' other case, *Marx & Co. v. Diners' Club, Inc.,* for the proposition that expert testimony <u>not</u> on common industry practices but on legal opinions is inadmissible. However, *Mossey* offers no more support for Plaintiffs' Motion than *Marx & Co.* The opinions tendered by Mr. Cosgrove—which are indeed based on oil and gas industry practices—bear no resemblance to the offending opinions in *Marx & Co.* and *Mossey*.

Plaintiffs also cite *Berckeley Inv. Group., Ltd. v. Colkitt*, 455 F.3d 195 (3rd Cir. 2006). *See* Motion at 4. *Berckeley* relies on *First National State Bank v. Reliance Elec. Co.,* 668 F. 2d 725, 731 (3rd Cir. 1981), cited at page 4, *supra*, where the Third Circuit agreed with the district court's decision permitting an expert on the Uniform Commercial Code to testify as to the established custom in the banking industry even though the customs and practice implicated legal duties. 455 F.3d at 217-18. The *Berckeley* court rejected the bank's argument that the expert's testimony on the Uniform Commercial Code amounted to a legal conclusion and ultimately determined that the expert's "background testimony could be helpful to the jury." *Id*. at 218. In reaching this conclusion, *Berckeley* also relied on *U.S. v. Leo*, 941 F.2d 181 (3rd Cir. 1991), which rejected a similar challenge to an expert testifying concerning industry custom and practice with respect to the performance of contracts in compliance with the Armed Services Procurement Act.

Moreover, *Berckeley* observed that "the line between admissible and inadmissible expert testimony as to the customs and practices of a particular industry often becomes blurred when the testimony concerns a party's compliance with customs and practices that implicate legal

duties. 455 F.3d at 218. *Berckeley* held the proffered expert, a former SEC lawyer, could provide helpful and admissible evidence as to the "customs and business practices in the securities industry," as to the availability of an exemption from registration under Section 4(1) of the Securities Act for Regulation S securities purchased offshore, held for a requisite 40 days and resold in the United States which would provide important context for the jury to decide whether the defendant acted with requisite scienter to evade the registration requirements. *Id.* Mr. Cosgrove can likewise provide such "important context" in light of his expertise in the oil and gas industry, and his testimony should not be excluded.

The other cases that Plaintiffs cite do not support a blanket exclusion of experts, but rather carefully carved out areas for proper testimony. *See Dow Chem. Canada Inc. v. HRD Corp.*, 656 F. Supp. 2d 427, 435 (D. Del. 2009) (cited by the Motion at 5, holding that an expert was competent to testify concerning content of patent applications, including the claim scope); *Cryovac Inc. v. Pechiney Plastic Packaging, Inc.*, 430 F. Supp. 2d 346, 365 (D. Del. 2006) (cited by the Motion at 5, permitting an expert to opine on damages, excluding expert's advocacy of legal positions or contract validity, and denying a motion to exclude the expert's opinions "in all other respects"); *Watkins v. New Castle Cnty.*, 374 F. Supp. 2d 379, 392-93 (D. Del. 2005) (precluding a witness from testifying as to legal conclusions on standard of reasonable conduct, and "in all other respects" denying a motion to exclude the expert).

As quoted above, the Third Circuit has recognized that "the line between admissible and inadmissible expert testimony as to the customs and practices of a particular industry often becomes blurred when the testimony concerns a party's compliance with customs and practices that implicate legal duties." *Berckeley*, 455 F.3d at 218. However, the blurriness of the line does not demand blanket prohibition of expert testimony. Rather, the Court should carefully police

that line, and admit testimony which could be helpful. A careful review of the Cosgrove Report will show that it contains opinions concerning the conveyances at issue based on industry custom and practice which are based in part on the industry's understanding of the legal effect of the language used. Mr. Cosgrove's insight should not be discarded wholesale as Plaintiffs urge. As the Court will be the trier of fact in this matter, if the Court ultimately determines the proffered testimony is not helpful, it will be able to make that determination at the time the testimony is offered. There is no basis to strike Mr. Cosgrove's report or exclude his potential testimony at this time.

### IV.    CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion.

Dated: August 2, 2013

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

By:    */s/ Raymond H. Lemisch*
Raymond H. Lemisch, Esquire (No. 4204)
222 Delaware Avenue, Suite 801
Wilmington, DE 19801
(302) 442-7010 telephone
(303) 442-7012 facsimile
rlemisch@beneschlaw.com

– and –

Barry L. Wilkie, Esq.
Stuart N. Bennett, Esq.
**JONES & KELLER, P.C**
1999 Broadway, Suite 3150
Denver, CO 80202
(303) 573-1600 telephone
(303) 573-8133 facsimile
bwilkie@joneskeller.com
sbennett@joneskeller.com

*Counsel to BWAB Limited Liability Company and Aleron Larson, Jr.*